IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THOMAS R, MILLER,
appellant,

: Cv. A. NOS 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 THRU 592-
: 12-0047

V.

: 1:08-CV-137 (GMS)

STATE OF DELAWARE
appellee.

## MEMORANDUM OF LAW PETITION TO GROUND ONE.

```
FILED
APR 11 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

DD scanned

Thomas R Miller
THOMAS R, MILLER
DCC
1181 PADDOCK RD
SMYRNA, DEL 19977

DATED: April 9, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS R. MILLER
appellant,

V.

STATE OF DELAWARE.
appellee.

C.r.A.NOS S92-12-0044 Thru S92-12-0047

1:08-CV-137 (GMS)

## GROUND ONE (a) supporting facts)

Appellant claims that both convictions and sentences are illegal behind the lost waiver of indictment that was not Filed within the prescribe time (30) days from arrest, which was November 29, 1992. The Superior Court lost subject matter jurisdiction in the very beginning of this case. The waiver of indictment was Filed in the prothonotary's Office of Superior Court on September 19, 1995 exactly 2 years 9 months after the statue of limitation was up, which is 2 years. The Superior Court lost all jurisdiction over appellant and continued to sentence him twice is an abuse of discretion that resulted in substantial prejudice to appellant, which violated his 6th amendment, 8th amendment of cruel and unusual punishment, aswell as the 14th amendment which infringe his constitutional rights to due process.

TABLE OF CONTENT

Delaware cases

in State v. Cornell Del. Super May 26 1970)no 779 Crim.A. (1969)    3

State v. Smith not reported in And 1993 WL 542029(Del. Super; Nov 19 1993    4

smokes v. City of Wilmington, Del. Super. Ct 282 A.2d 634 (1971)    4

preston v. State, Del. Supr, 338 A.2d 562 (1975).

in re Opinions of the justices, 47 Del.117,88 A.2d 128 Sup. Ct. (1952)    6

In re Jessup 50 Del. 530,136 A.2d 207 Super. Ct. (1957)    6

State v. cloud, 52 Del. 439, 159 A.2d 588 (Sup. Ct. 1951    6

State v. Williams Del. Gen. Sess. 1949 6 terry 61,45 Del. 61, 69 A.2d 299    6

In re Application of ward, 46 Del. 430, 84 A.2d 598 (Super. Ct. 1951    6

U.S. Cases

in Ornelas v. United States, 11 th cir. 840 F.2d 890 (1988)    2

United States v. Davis, 487 F.2d 112, 116 5th cir 1973, 415 U.S. 981 1974    4

U.S. V. Dixon, 308 F. 3d 229, 236 3d cir 2002)    4

In Ex Parte McClusky (C.C. ArK)40 F. 71, 74    5

see Ex Parte Bain, 121 U.S. 1.6.7 S.Ct. 781, 784 30 L.Ed. 849 (1887)    7

In People ex rel. Battista v.Christian 249 N.Y. 314,164 N.E. 111, 6 A.L.R. 793.    7

U.S. v. Gill 55 F.2d 399 D.C. N.M. 1931.    7

U.S. 24 S. Ct. 826, 828    7

United States v. Maxwell, 3 Dill. 275; Fed. Cas. No. 15, 750 ' United States v. Reid, 12 How, 361, 13 L.Ed. 1023; United States v. Baugh (C.C.)1 F. 784, 788. section 555, title 18 U.S.CA.    8

vol. II Sec. 1780 United States v. Maxwell, Fed. Cas.No. 15 750; Weeks v. United States(C.C.A.2) 216 F. 292, 295 L.R.A. 1915 B, 651, Ann.Cas. 1917 C, 524' United States v.shepard, 1 Abb. N.S. :    8 431
Fed. Cas. No 16, 273    8

Weeks v. United States, supra; United States v. shepard, supra. United states v. Thompson, 251 U.S. 407, 40 S.Ct 289 641. L.Ed 333.    8

B1. Comm; book IV, P. 310; C.J. 564, United States v. Shepard, Supra; Weeks v. United States, supra;    10

4B1 Comm. 308, 309, 311; 1 Chit. cr. Law 845, 846, 849, 856.

In Common wealth v. Twitty 876 A.2d 433, 2005 PA Super193-    3

State and Federal Amendments and Constitution                    PAGE

14th due process————————————————— 4
6th, 14th, 5th, 8th— — — — — — — — — 5
5th —————————————————————— 7
5th ————————————————————— 8
5th ————————————————————— 10
6th, 14th ———————————————————— 11

   <u>Rules</u>

Del C. 2902, 11 Del. C. 205 (b)(3)————————————— 1
Del. C. 2902 ————————————————————— 3
11 Del. C. ¼ 205 (b)(3), 11 Del.C. §§ 207, 208, 11 Del.C. 205——————— 4
Article, 1, section 8. Delaware Constitution of 1897——————— 5
Del. Const, Art I s 8 ———————————————— 6
See Exhibit A-1 one waiver of indictment——————————— 1
See Exhibit A.2 one document statue ———————————— 1
See Exhibit A-3 one court docket pg 14, and (2) letters——————— 1
See Exhibit A-4 one information sheet— — ——————— 2

                                                I I

On November 29, 1992 appellant was arrested on felony charges. The information that went into the arrest warrant was insufficient.

On December 3, 1992 an waiver of indictment was signed by appellant. See Exhibit (A-1) one waiver of indictment dated 12-3-92. The waiver of indictment could not be located on the prescribed filing time December 28, 1992, (30) days from arrest. On January 8, 1993, a written arraignment, pleading not guilty was filed pursuant to Rule 10(c). Please see Exhibit (A-2) one document statue of decision from Superior Court which start from page 3 to page 8). See page 3 8-9-10 lines down from ground one. (Quoting) A review of the Court's docket reveals that an executed waiver of indictment was not filed with information on December 28, 1992. (continuing) The Court should have picked up this error; (end of quote). Please see end line page 3 and top of page 4 (The Court) (quote) for the reason stated below, I find that, by the defendant's conduct, there was a defacto waiver of his right to be indicted and that the defect in the record should not result in this defendant having another trial. (end of quote). The Superior Court is admitting a defacto waiver, an error, in which raises jurisdictional questions. See Exhibit (A-3) one court docket pg 14, and (2) letters from Judge Graves dated June 16, 1995 and June 19, 1995, advising appellant that the unfiled waiver was found. On September 19, 1995 an evidentiary hearing was held to the issue of jurisdiction, The December 3, 1992 waiver of indictment was introduced, and filed in Superior Court. See (page 5) also page 7 - 7 lines down (Quote) A written waiver document has now been produced and filed with the court. (end of quote), exactly 2 years 9 months past the statue of limitation which is 2 years. as set in Del.C. 2902, 11 Del. C. 205 (b)(3). This waiver of indictment constitutes the legal transfer from being indictment to be tried off of information without it, the

(1)

the information is invalid. The waiver of indictment should be Filed with the information from the Deputy attorney generals office, to the prothonotary office on December 28, 1992. (The Question) is did the Superior Court, and States Deputy attorney generals office have jurisdiction to try convict, and subsequently sentence appellant twice? No either had jurisdiction in which they lost subject matter jurisdiction in the very beginning when the waiver was not Filed in (30) days prescribe time from arrest. (de facto) means illegitimate but in effect, (such as) this waiver of indictment. See Exhibit(A-4) one information sheet thats not dated and not Filed on December 28, 1992. This information sheet is invalid. There was an mixup an information sheet and waiver of indictment from a prior arrest, and not this conviction. Please see page 7 - 25 lines down (Quote) I Find that the Failure to obtain the express waiver was a technical violation, (Cont page 8) which did not deprive the Court of jurisdiction (end of quote). The Superior Court is contradicting himself earlier in his ruling it was an error, now at the end of his ruling on the issue of jurisdiction, it is a technical violation. In Ornelas v. United States, 11th Cir. 840 F.2d 890(1988). Under these Facts the Failure to formalize same should not be a ground for a new trial. The Court is getting technical violation from the Ornelas case, and placing it in appellants case, as if it relates to this case before you. This Ornelas case is in total opposition of this case, and serves no purpose. The Court misapplied the law, knowing what he was doing. (Reason) Ornelas and his co-defendants went to trial with an indictment that charged them with conspiracy to import cocain and Marijuana into the United States and various related substantive offense. The trial was in its second day, the appellant ornelas and his co-defendants had apparantly concluded that rather risking a jury verdict they would be better off accepting the deal the prosecutor had offered them. Shortly after the noon recess the prosecutor and defense counsel in the presence of defendants notified the Court that the Government had reached a plea-agreement. Mr. Ornelas during his trial, accepted a plea-agreement and changed his plea for a dismissal of indictment and willing to plead to a less serious charge (meaning) he

had to waive his indictment and plead to an information. He accepted his plea, before he waived his indictment. In his argument the court ruled a mere technical violation of rule (7b). It was not an error that warrants relief pursuant to 28 U.S.C. § 2255 (1982). In fact ornelas express waiver was never lost, the term obtain was not to gain possession of, but instead to be widely accepted behind the plea-agree-ment during trial; after he accepted the plea. However this is not the case before you, appellant Miller waiver of indictment could not be located in the very beginning and was not filed in Superior Court until 2 years 9 months past the statue of limitation. The Court chose ornelas case pursuant to his ruling of appellants case, which serves no purpose an misapplication of the law, is an abuse of discretion on Superior Court. In Common wealth v. Twitty 876 A.2d 433, 2005 PA Super 193 The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial has abused its discretion. An abuse of discretion is not merely an error of judgement, but is rather the overriding or misapplication of the of the law, or the exercise of judgement that is manifestly unreason-able, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Such as this case before you, In the Courts ruling which is on record. (end of Emphasis added).

In State v. Cornell Del. Super. May 26, 1970) no 779. Crim. A. 1969); Statue of limitations as set out in Del. C. § 2902 applies that section describes a two year statue of limitation for all non capital crimes and read as follows, no person shall be prosecuted, cried, or punished for any crime or offense not capitol unless the indictment is found or the information is instituted within two years next after such offense is committed. The State had the opportunity to either re-indict or charge information to cure its deficiency when the error was first learned. However, doing so as Argued above would have shown that they were without adequate jurisdiction to conviction the defendant initially, some 2 year years later, but the state prosecution failed to do so.

State v. Smith not reported in A.2d 1993 WL 542009 (Del. Super. Nov 19 1993)(No. CR.A. IN 93-0416 49A, 9300 4273 see United State v. Davis, 487 F.2d 112, 116 5th cir. 1973) Cert. denied, 415 U.S. 981 (1974) (holding that the commencement of prosecution is controled exclusively by the applicable statue of limitations). Eleven Del. C. §§ 205(b)(3) provides a two year statue of limitations from the alleged violation is committed.

The prosecution is barred to reindict or prosecute appellant Miller.

11 Del. C. §§ 207 and 208 describe those situations where a prosecutor is barred by a former prosecution for the same and different offenses, respectively;, That also precludes the prosecution for a lesser included offense, May not commence outside the time limits for a prosecution on that offense by original indictment or information, 11 Del. C. §§ 205. It became obvious to the Court that it was a plain error and the Court failed to correct it, which affected all of appellants rights to fairness and honesty. This also is an prejudicial error aswell.

In the Delaware Supreme Court ruling on Lester Cane, (Cite as 560 A.2d 1063) (quoting) Applying these standards, we first construe section 205 to be jurisdictional in *1066 nature.

[6] Sound policy also supports the rule that a prosecution for a lesser included offense may not commence outside the time limits for a prosecution on that offense by original indictment or information.

As is aptly stated in the Commentary to the Delaware Criminal Code:

Several important policies underlie a statue of limitations in criminal cases. The most persuasive is the fact that after a certain time, evidence tending to prove or disprove criminal liability becomes stale. Witnesses die, move away, or forget, physical evidence disintegrates, and it becomes impossible to ascertain what actually happened. Statues of limitations may also be viewed as statues of repose. Even a person who has committed a criminal act is entitled, after the passage of some time, to conduct his

(4)

affairs on the assumption that they will not be disrupted by a criminal prosecution. This is particularly true in the case of someone who has ceased to engage in criminal activity and is leading a law-abiding life. (Emphasis added) The State and Court lost jurisdiction over appellant Miller.

And prosecution without information is jurisdictional defect. Smokes v. City of Wilmington, Del. Super; Ct 282 A.2d 634 (1971).

Appellant, claims that the lost, and delay of the waiver of indictment violated his due process, and he suffered prejudice do to the delay. See Preston v. State, Del. Supr; 338 A.2d 562 (1975).

Plain Error. An error that is so obvious and prejudicial that an appellant Court should address it despite the parties failure to raise a proper objection. A plain error is often said to be so obvious and substantial that failure to correct it would infringe a party's due process rights and damage the integrity of the judicial process. ____ Also termed fundamental error; error of apparant record.

See U.S. v. Dixon, 308 F.3d 229, 236 3d Cir. 2002 under the plain error standard an appellant Court May exercise its discretion to order reversal of a conviction only if the error seriously affects the fairness, integrity or public reputation of Judicial proceedings.

(Emphasis added) Appellant Miller contends when Superior Court stated error in his decision in this case behind the lost waiver of indictment (Jurisdiction),

(5)

it became obvious to the Court that it was a plain error once he recognize it, and ruled on it (Sua sponte).

This violates appellant constitutional Rights to 6th, and 14th amendment behind the State whom violated the procedures of Superior Court Criminal Rule 7 thru 9 that information be "promptly" Filed Following a defendants arrest.

Jurisdiction, and Jurisdiction in the Subject matter cover sentences under Rule 35(a), aswell as the nature of the entire case. Both Sentences violated appellant 8th amendment right to cruel and unusual punishment, when neither state or Superior Court had authority and Jurisdiction over appellant, which they lost in the very beginning of this case.

Appellant claims that his State and Federal constitutional rights to be Free from illegal detention was violated.

In Ex Parte McClusky (C.C.Ark) 40 F. 71, 74 the court said that the provisions of the Fifth Amend that "no" person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury provides for a requisite to jurisdictional and that a party cannot waive a constitutional right when it effect is to give a Court jurisdiction.

Article. I, section 8. Delaware Constitution of 1897...

Section 8. No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the actual service in time of war or public danger; and no person shall be for the same offense twice put in jeopardy of life or limb; nor shall any man's property be taken or applied to public use without the consent of his representatives, and without compensation being made.

Appellant claims the charges that stem from his arrest are serious Felony charges, inwhich should have went infront of a Grand Jury to weigh out the evidence required on all sexual assaut cases of physical evidence, before it reached the Deputy attorney Generals office. The Deputy attorney General office cannot force a defendant to waive his indictment, inorder to be tried of information,

(5)

or in the words, or in lieu of being

once felony charges are placed on the defendant, the presentment of to grand jury is enshrined in the Del. Const., Art. I §8 (Theres a must) appellant Millers innocence of the charges, would been established at that early stage of this case, before it reached the office of the Deputy attorney general, fail to indict defendant on felony charges is dismissal of all.

The effect of this section is to establish the grand jury as a constit-utional body and to preserve the historical and highly prized safeguard of grand jury action with its common-law powers and attributes, except as modified by other provisions of the Constitution. In re Opinions of the Justices, 47 Del. 117, 88 A. 2d 128 (Sup. Ct. 1952).

To the person subject to trial by Delaware Courts for an indictable offense, the right to grand jury presentment is enshrined in Del. Const, art. I, §8, and the powers and attributes of the grand jury are as they were at common law. In re Petition of Jessup, 50 Del. 530, 136 A. 2d 207 (Super. Ct. 1957).

In Superior Court there must be presentment. — All crimes in Delaware are indictable offenses in the sense that, if prosecution is commenced in the Superior Court, there must be first a presentment to the grand jury. State v. Cloud, 52 Del. 439, 159 A. 2d 588 (Sup. Ct. 1951).

In the Constitution of 1792, Del. C. Ann, however, we think the basic law concerning prosecution for crime was changed by Article I, Section 8 which, for the first time, provided that 'no person shall for any indictable offense be proceeded against criminally by information,*** This conclusion is strengthened by the absence from the 1792 constitution of any exceptions to the requirement of Article I, Section 8, such as are now found in the Constitution of 1897.

State v. Williams Del. Gen. Sess. 1949 (6 terry 61, 45 Del. 61, 69 A. 2d 299

* 63 'No person shall be prosecuted, tried or punished, for any crime or offense not capital, unless the indictment is found or the information is instit-uted within two years next after such offense is committed.

That no person shall be deprived of life, liberty or property without due process of law is guaranteed to every person by both the Federal and State Constitutions. In re Application of Ward, 46 Del. 430, 84 A. 2d 598 (Super. Ct. 1951).

See Ex Parte Bain, 121 U.S. 1. 6. 7 S.Ct. 781, 28?, 30 L. Ed. 849 Rule 7a of the Fed. R. Crim. P. Specifically provides that "[a]n offense which may be punished by imprisonment for a term exceeding one year.... shall be presented by indictment." The requirement of prosecution by indictment is included as a personal right in the Fifth Amendment to protect a presumably innocent defendant. During the seventeenth century the English Crown Prosecutor had enormous power in a criminal case, while the person charged had few rights. For example, a defendant had no right to testify on his own behalf, to call witnesses or have counsel. See Radcliffe & Cross, The English Legal System, 341 (5th ed. 1971). As a result, the Founders insisted insisted that the bulwark of a grand jury be interposed between the government as accuser and the citizen as the accused to serve as a necessary shield for the innocent.

In People ex rel. Battista v. Christian 249 N.Y. 314, 164 N.E. 111, 61 A.L.R. 793, the court held that the constitutional requirement that 'No person shall be held to answer for a capital or otherwise infamous crime *** unless on presentment or indictment of a grand jury' is jurisdictional and cannot be waived.

United States v. Gill 55 F.2d 399 D.C.N.M. 1931.

'We are unable to find in the decisions any convincing ground for holding that a waiver is effective in the case of felonies. Misdemeanor cases, but not effective in the case of felonies. In most of the decisions no real attempt is made to establish a distinction, beyond the assertion that public policy favors the power of waiver in the former, but denies it in the latter because of the more serious consequences, but denies it in the because of the more serious consequences in the form of punish--ment which may ensue. But that suggested differentiation, in light of what has now been said, seems to us more fanciful than real. The Schick Case, it is true, dealt with a petty offense, but, in view of the conclusions we have already reached and stated, the obser--ations of the court pages 71, 72 of 195 U.S., 24 S.Ct. 826, 828 have become equally pertinent where a felony is involved:

"Article six of the amendments, as we have seen, gives the accused a right to a trial by jury. But the same article gives him the further right 'to be confronted with the witnesses against him**

and to have the assistance of counsel. Is it possible that an accused cannot admit, and be bound by the admission, that a witness not present would testify to certain facts? Can it be that if he does not wish the assistance of counsel, and waives it, the trial is invalid? It seems only necessary to ask these questions to answer them. When there is no ~~public policy prohibiting~~, constitutional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy."

It would seem that the reasoning of the court in the Patton Case should apply with equal force to the first of the two questions here presented, and that the provision of the Fifth Amendment requiring an indictment in capital or other infamous cases creates a personal privilege which the defendant may waive. II. If an indictment by a grand jury is waived, the only other method of accusation is by information. The question remains: Is the United States Attorney authorized to file an information where the offense charged is above the grade of misdemeanor?

[2] Criminal procedure in Federal courts, in the absence of statue, is in accordance with the common law. Zolene's 'Federal Criminal Law and procedure,' vol. 1, sec. 10; United States v. Maxwell, 3 Dill. 275, Fed. Cas. No. 15, 750; United States v. Reid, 12 How, 361, 13 L. Ed. 1023; United States v. Baugh (C. C.) 1 F. 784, 788. Section 555, title 18, USCA, provides for the charging by information of certain offenses which are not infamous. There is no other express statutory authority for the filing of an information by a United States Attorney. Storey's commentaries on the Constitution, vol. II, sec. 1780; United States v. Maxwell, Fed. Cas. No. 15, 750; Weeks v. United States (C. C. A. 2) 216 F. 292, 295 L. R. A. 1915 B, 651, Ann. Cas. 1917C, 524; United States v. Shepard, 1 Abb. N.S 431, Fed. Cas. No. 16, 273. His authority is drawn from the common law under which the Attorney-General of England was authorized to file infor- -mations in the name of the King. Weeks v. United States, supra; United States v. Shepard, supra; United States v. Thompson, 251 U.S. 407, 40 S. Ct. 289, 64 L. Ed. 333.

In United States v. Shepard, supra, the Court said:

'At the time of the revolution and of the adoption of the constitution, it was the practice in the court of King's bench for the King's attorney-general to file informations in the name and behalf of the King, in a class of cases not above the grade of misdemeanors, without any previous showing to the court, but in the discretion of *404 that officer. This discretion was not, however, exercised, except in cases where the offense tended to disturb or danger the King's government, or to molest him in the regular discharge of his royal functions, and where delay would be dangerous.

'There was another class of offenses of the same grade, which could be proc-eeded against by information filed by the master of the crown office —a person appointed as the King's attorney to prosecute in behalf of the public, on complaint made by a subject or by a common informer. This officer could not substitute an information for the indictment of a grand jury, unless upon a showing and leave of court. The practice was to present affidavits of the offense, and move the court for a rule on the accused to show cause, and if the affidavits were not sufficiently answered leave was granted to file a criminal information in cases below the degree of felony. 4 Bl. Comm. 308, 309, 311; 1 Chit. Cr. Law, 845, 846, 849, 856.

'Now what changes have been produced by the constitution or laws of the United States, affecting the practice in form or substance, so far as regards the question at bar? Congress has passed no law on the subject, and the only constitutional provision affecting the question is the fifth amendment, proposed the same year that the original instrument went into operation—1789. It declares:

'No person shall be held to answer for a capital or otherwise infamous crime, unless upon a presentment or indictment of a grand jury,' etc.

'Congress by proposing, and the state by ratifying that amendment, left all offenses not capital or infamous to be prosecuted by information or by indictment, as the circumstances of each case should seem to require, and as the common law would sanction. Indeed, this constitutional provision produced no change in the practice or law, except, perhaps, as regards a class of misdemeanors regarded as infamous crimes, and which might, before the amendment, be prosecuted by information.

The amendment, however, fixed the matter, beyond the power of congress or the courts to alter the course proceeding in bringing forward a charge of crime, in the class of cases embraced by the provision.

"We regard the converse of the fifth amendment to be that persons may be held to answer for crimes other than such as are capital or infamous, upon information or indictment, according to the course of the common law. We have examined all the cases referred to by counsel, and find no well considered decision which conflicts with the views we have expressed, and therefore we conclude that, so far as the question rests on the common law, it is the right of the government, by its proper law officer, the district-attorney, to charge offenses against individuals through the forms and mode of informations."

At common law accusations by information were confined to misdemeanors. B.1. Comm, Book IV, P. 310; 31 C.J. 564; United States v. Shepard, supra; Weeks v. United States, supra.

[3] Since the authority of the United States Attorney to charge by information is derived from the practice at common law, and since the common law did not recognize such accusation where the offense was above the grade of misdemeanor, it follows that the United States Attorney is without authority to charge by information where the offense amounts to a felony.

## IN CONCLUSION

IN Closing, arguendo, even if the Court would consider the State's view that displacement of the waiver document does not prohibit prosecution. In light of the defendant's "right to a fair trial" under the Sixth Amendment and the subsequent Due Process Clause of the Fourteenth Amendment. His conviction cannot validated absent reasonable grounds For some type of meritorious-jurisdictional argument. Note the State admits to not being able to find the waiver document until 2 years 9 months after it conviction of the defendant. However, in order to maintain a valid conviction, there _must_ be at the time of conv- -iction a valid waiver in the court's record of the same. It cannot be said to have been said that being in the possession of the arm of State's judicial system is the same.

The State had the opportunity to either re-indict or charge information to cure its deficiency when the error was first learned. However, doing so as argued above would have shown that they were without adequate jurisdiction to conviction the defendant initially, some 2 years 9 months later. Wherefore, by and through one or all arguments raised herein. This case must be vacated and reversed with instructions for the defendant's Freedom should be mandated.

Date: __April 9, 2008__

Thomas R, Miller
Thomas R, Miller
DCC
1181 Paddock Rd
SMyrna, Del 19977

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS R, MILLER
    appellant,

    V.

STATE OF DELAWARE
    appellee.

Cr. A. NOS. S92-12-0044 THRU S92-12-0047

1:08-CV-137(GMS)

## MEMORANDUM OF LAW PETITION TO GROUND TWO.

FILED

APR 11 2008

U.S DISTRICT COURT
DISTRICT OF DELAWARE

Thomas R. Miller
THOMAS R, MILLER
DCC
1181 PADDOCK RD
SMYRNA, DEL 19977

DATED: April 9, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS R, MILLER,
    Appellant,

    Cr. A. NOS. S92-12-0044 THRU –
    S92-12-0047
    1:08-CV-137 (GMS)

V.
STATE OF DELAWARE
    Appellee.

## GROUND TWO
## FBI FORENSIC REPORT THAT SHOWS APPELLANTS INNOCENCE FROM THE USI CHARGES.

Appellant claims during his (3) day trial on May 23, 24, 25 1994 an FBI Forensic report was presented for defense to Superior Court which concluded that there was no physical evidence implicating miller in an sexual assault to Ms. pederson. The deputy attorney general James Adkins withheld, and kept reports of important exculpatory information from the jury, which proven appellant's innocence to the charges of unlawful sexual intercourse the State placed on him. This resulted in abuse of discretion on Superior Court for not releasing appellant from incarceration once the Court had knowledge and results of forensic analysis report that came back. The Court allowed prosecutor adkins to keep important exculpatory report from the jury, Malicious prosecution which violated appellant 6th amendment for not recieving a fair trial, 8th amendment of cruel and unusual punishment from both Superior Court and state, and 14th amendment for not recieving due process of law, and being deprived of life, and liberty.

# TABLE OF CONTENT

Delaware cases ————————————————— 3
351 A.2d 84 State v. Doe (Del. Super 1976 ——
Deberry v. State Del. Supr, 45 A.2d 744 1983 ——————— 5
Hammond v. State Del. Supr, 569 A.2d 81 1989 ——————— 5
Hughes v. State Del. Supr, 490 A.2d 1034 (1985) —————— 10
Sexton v. State, Del. Supr, 397 A.2d 540 (1979) ————— 13
Edward v. State Del. Supr, 320 A.2d 701 (1974) —————— 13
Bennett v. state 3 storey 36 Del. Supr, 164 A.2d 442, 446 (1960) ———— 13
Hooks v. State, Del. Supr, 416 A.2d 189, 204 (1980)
Bennett v. State, Del. Supr, 3 storey 36, 164 A.2d 442, 446 (1960) ——— 15
Jenkins v. State Del. Supr, 413 A.2d 874 (1980) ——— 16

U.S. Cases
in Mooney v. Holoham 294 U.S. 103, 112, 55 S.C. 340, 341, 79 L.Ed 79 1935-4
Arizona v. Youngblood 488 U.S. 51 109 S.Ct 333, 102 L.Ed 2d 281 1988 —— 5-6
Brady v. Maryland 83 S.Ct 1194 ——— 6
Batson v. Kentucky 106 S.Ct. 1712 (1986) ——— 10
Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) — 15

N.J. Cases
State v. Markus cite as 683 A.2d 221 N.J. Super. A.D. 1996 ——— 9
in State v. Thomas 586 A.2d 250 1991 ——— 12
State v. Mayberry, N.J. Supr, 52 N.J. 413, 245 A.2d 481 (1968) cert. den.
393 U.S. 1043, 89 S.Ct 673, 21 L.Ed 593 (1969) ——— 15

Connecticut cases
Ibid, N.104 See also Johnson Hartford March 29, 1990 ——— 8
See Exhibit (B-1) one page supplement report ——— 1
See Exhibit (B-2) search warrant application and affidavit ——— 1
See Exhibit (B-3) continuation sheet ——— 1
See Exhibit (B-4) Front page of police report (Box 32) ——— 1
See Exhibit (B-5) 3 page Hospital report ——— 1
See Exhibit (B-6) one forensic analysis ——— 1
See transcript page 2 ——— 2
See transcript page B-115 ——— 2
See Exhibit (B-7) A letter from counsel Beauregard ——— 3
See transcript page B-153 thru B-157 ———
See transcript page A-128 and A-129 ———
See Exhibit (B-8) one certified report ———

See transcript A-77 and A-80 _____     4
See transcript of opening argument page B-27, 28, 32, 33 _____     4
See Exhibit B-9 one statement affidavit _____     4
See transcript page B-113 thru B-117 _____     5
See Exhibit (B-10) one certified juror sheet _____     7
See transcript page B-190 thru B-203 _____     8
See transcript B-197 line 12 _____     8

State and Federal Constitutional Amendments
6th, 8th, and 14th Front page _____
6th, 14th _____     4
14th _____     10
6th, 14th _____     11
ABA standards Approval Draft 1971 1.1 _____     13
6th, 8th, 14th _____     16

On November 29, 1992, appellant was arrested on false charges of unlawful sexual intercourse, unlawful sexual penetration, Burglary, and criminal tresspassing. On November 30, 1992, See Exhibit (B-1) one page supplement report (Quoting) At 1816 hrs writer executed a search warrant signed by Judge Boddy(a) J.P. Court #3 writer picked up def (Miller) at SCI and Transported same to Beebe Medical Center in ref to having samples of Hair, Saliva, and blood taken from the def (Miller) and sent to the FBI lab at a later date and time for analysis.

Dr. Angel MD, and Amy Register R.N. of Beebe Peformed the combings and gathering of evidence. Also see Exhibit (B-2) search warrant application and affidavit 2 containers of Blood, 1-seaman sample, 1 Saliva sample, sample of head hair, Samples of pubic hair, and finger nail samples. Exhibit (B-3) continuation sheet) writer obtained the clothing that victim was wearing during the assault, bed liners, pillow cases, the tools that the Def left behind and rape kit that was completed at the hospital and place same in the evidence locker for processing. See Exhibit (B-4) Front page of Police report Box(32) natures of injuries to Martha Pederson (none). See Exhibit (B-5) 3 page Hospital report shows no physical evidence, or any physical damage done to Martha Pederson. All the samples from both Miller and Pederson was sent to the FBI lab in Washington D.C., 11 months later results where back. Exhibit (B-6) one forensic analysis. The specimens K-1 Pederson results PGM 2#, Hp 1, Gc 1F-1S; specimen K-4 Miller results "Hp 2-1 Gc 1F No blood or seaman was found on specimen 01 through 09, 011, or 012 no hairs like pubic hairs of the victim were found on specimen 014 which shows no physical signs of rape, proves his innocence and exonerates him from the charges the State placed on him. The forensic analysis was ordered by the State for the sole purpose, to see if a rape had occurred,

1

once the return of the forensic analysis, Appellant miller should have been released from custody of the Department of Correction.

The trial judge had knowledge of the forensic analysis in the early stages of this case. It would rather be a large stretch of the amagination for the not to have knowledge that the forensic report did not exist. See Transcript pg B-115 The Court: In other words, I think they stipulated that there was no semen. MS. Beauregard: The entire FBI report. The Court: no semen was located. That would be the most favorable inference that could be deemed for the defense. In otherwords, if there was semen, it could be potentially.... MS. Beauregard: Culpatory. The Court: If there is not semen it is exculpatory and they are saying they cannot find any semen You think about your position on that, Right here Judge Graves understands the probative value of the forensic analysis along with Counsel Beauregard and in her position she should have asked for an acquittal of the charges of Unlawful Sexual intercourse that were placed on appellant to dismiss that particular charge, the Court is giving her the lattitude to her position, but she fails to do so. At this crucial point in case the Court was supposed to have stepped in and asked both sides of their position in this case on the forensic analysis that was in favor of the defense that would exonerate him, right then; but the Court failed to do so.

This resulted in an abuse of discretion. Please see Transcript pg. 2 this proceeding was held during appellants First sentence of July 16, 1993. Prosecutor James Adkins drops penetration in the second degree, but places an unlawful Sexual intercourse in the First degree, and second degree on appellant, after having Knowledge of the forensic report. Without penetration you cannot establish or place an unlawful intercourse charge of any degree on an individual.

351 A. 2d 84 State v. Doe (Del. Super (1976) Despite the general broadening of the statutory definition of rape, the term as used in the Delaware statue is deemed to retain some of its original connotation and rape will be regarded as having taken place only if there is a penetration into the victim's body by a penis. See Exhibit (B-7) A letter from Counsel Beauregard (quote) It is my understanding that the Forensic report has found that there was no evidence of semen presence on Ms. pederson and there is inconclusive evidence medically as to whether penetration occurred. Please be advised that an inconclusive report does not indicate that you did not have intercourse with Ms. Pederson, it merely states there is nothing medically evident to indicate that you did. She is absurd, the FBI report does not lie, why is she not sure of the report that would exonerate her Client. See Transcripts pg B-155 Thru B-157 during trial both counsels approach the bench on side bar, where prosecution doesn't know how to handle this matter because he instructed his witness nurse Morin not to mention rape or sexual assault kit infront of this jury, she was not to blurt it out infront of this jury. See transcripts pg A-128 and 129 The prosecutor with the Courts permission Keeps one side medical report out, important exculpatory information from the presence of the jury. See Exhibit (B-8) one certified report that was not mention infront of the jury. why not? this is a rape case, Prosecutor led the jury to believe that a brutal rape occurred against her will. The only logical reason is there was no physical evidence to a rape, inwhich he could not prove beyond a reasonable daubt. Defense supponed Dr. Angel for trial but the State Prosecution said he was on vacation, so there was no doctor present during trial, again there was no Physical evidence. See Transcripts A-79 and A-80)

3

This brings the question into play, why all of a sudden Dr. Angel could not be available to testify to the medical records and diagnosed, again this an rape case, his expertise would been needed the trial date could been scheduled for another date and time, when Dr. Angel would be available. (Reason) the prosecution was in a hurry to get an illegal conviction, without any physical evidence thats required in rape cases. This is Malicious prosecution that violated appellants 6th and 14th amendment of his Constitutional rights. In Mooney v. Holohan 294 U.S. 103, 112, 55 S.C. 340, 341, 79 L. Ed 79 (1935) due process prohibits "deliberate deception of Court and jury" by prosecution's Knowing use of perjured testimony. Such as this case before you, not presenting the truth to the jury. See Transcripts of opening arguments pg. B-27, 28, 32 B-33. Prosecution fabricated about having physical evidence, such as penetration, and that a rape so brutal occurred, during opening arguments, He led the jury to believe that a rape was committed, after he had Knowledge that the forensic analysis report showed no physical evidence, to an rape, sexual assault during the First Sentencing phase. This is malicious prosecution. See Exhibit (B-9) one statement sheet wanting Miller Free from incarceration, Alledge victim Martha Pederson wanted Miller free from prison a fact set forth in Affidavit Exhibit (A9) The alledge victim did state before her death her desire was to see Miller free from incarceration. A conflict arose which the defense alledgly found exculpatory evidence in the form of defendant underwear

✓

4

5

# 6

had the Lewes police officer Bruce Ritter retrieved said evidence from Sussex Correctional Institution. Upon disclosure of this broken chain of evidence counsel failed to voice her client's right to the trial Court. Instead she counsel (?) was allowed to digest these findings for 30 Minutes with her client. See trans pg B-113 thru B-117 where the underwear became missing along with 10 page preliminary report the defense never had a chance to review prior to trial except during the Middle of trial which counsel notice through her investigation but she failed to voice her client's right to the trial Court upon disclosure to the broken chain of evidence. This underwear would be relevant to the defense (reason) This is a sexual assault case and the underwear were defendants which would have proved his innocence. Please see trans B-115 prosecutor Adkins trying to cover up for officer Ritter as well as himself (By quoting begin at line 14 end at line 23) Mr. Adkins: There is one thing that you have not been told so far. Yes, there is one supplement report that mentions back on December 1st, Office Ritter getting a call and going out to prison and getting this pair of briefs, we can put him on the stand maybe sometime this hour. This can all be explained so that you know this underwear has nothing to do with this case, It's totally absurd for the prosecutor to say something like this, It's also evident proof that he was not going to mention anything about missing reports or underwear. In this appeal from the Superior Court we again confront the question of the evidentiar effect of the states failure to collect and/or retain allegedly exculpatory evidence. The State argues that we should abandon the analysis crafted by our rulings in _Deberry v. State_ Del. Supr. 45 A.2d 744 (1983) and _Hammond v. State_ Del. Supr. 569 A.2d 81 (1989) In favor of a standard which turns on the good faith of the

6

33. 102 L.Ed 2d 281 (1988). We reaffirm our adherence to the more exacting standard based on Delaware Constitutional norms and conclu the Superior Court erred in instructing the jury on the effect to according missing evidence in this case. Accordingly we reverse appellants conviction and remand for a new trial. In Deberry this court ruled that the state, including it's police agencies, is obligated to preserve evidence which is material to a defendant's guilt or innocence as a matter of federal and state due process. In fashioning the relief to be afforded a defendant who claims to have been prejudiced by the states omission, the Deberry Court fashioned a multifaceted analysis which in effect, examines the type of evidence, the conduct in Deberry, and later in Bailey State Del. Supr. 521 A.2d 1069, 1090 (1987) We emphasized the need the state and law Enforcement agencies to adopt procedures for the gathering and preserving of evidence that could be favorable to the defendant. First under a bad faith standard the defendant required to prove police and prosecution were. (1) Yes, in defendants miller's case, the both of them was aware of the significance the evidence. (Such as underwear) (2) and in question and prosecutor Adkins back on Dec. 1st sent officer Ritter to retrieve the underwear which became lost afterwards (3) Once after being lost they failed to disclosure this information to the defense until middle way during trial, preliminary reports and underwear defense never had a chance to review prior to trial (See trans. pg B-113) The record clearly shows that they refused to mention this crucial information to the defense, the prosecution along with Office (Ritter) was aware of this, this is the states negligence to the loss of favorable Material evidence, to the defense. In Brady v. Maryland, 83 S ct 1194. "a criminal defendant is denied due

**7**

process of law when the government knew of material which would be exculpatory but failed to disclose to defendant in time for trial. The Court, state and Counsel already had jurors picked in this case and jury selection process, by picking all elderly white females to be triors of this case. (See exhibit B+C) one certified juror sheet and one jury selection sheet with race and age of the jurors rather than members or jurors from a cross-section of the community, shows bias, prejudice and races in this jury selection towards defendant Miller. Its evident proof that their minds were already intentionally made up, to put elderly white females to be the triors of this case. A Black man in his thirties rapes an elderly white english female. Right here alone is prejudice (reason) the jurors could not possibly have tried this case with an honest open mind to actually hear and weigh the case out to the charges of sexual assault, rape, and unlawful sexual intercourse that were placed on the defendant. Their minds were already made up and set with no hesitation to convict Miller without looking at the probative value of the D.N.A. which showed no match to a rape from either Miller and pederson, or even the inconsistencies and perjured testimony which came from the state witnesses which is on record. Miller did not recieve a fair trial, with impartial jurors, the jury selection process has been tainted, Miller honestly believes that if there were a fair section of the community trying his case, such as black jurors among other mixed races then outcome would have been different. Especially when probative value of the D.N.A. which showed no match to a rape from either Miller and pederson, exonerates Miller from the charges the state placed on him, again shows and proves his innocense. Miller contends the state and Court were bias, prejudiced

against him. Also the state used once a attack to obtain an conviction that was not justified by law. Appellant Miller's FBI Forensic Analysis have already been tested to produce the results back in 1983 that exonerates him. Alledge unfairness to criminal defendants critics also contend that the introduction of DNA test results in criminal proceedings has the potential to under mine defendants rights to a fair trial. They point to several considerations. First DNA test results are both impressive and complicated this, there is a risk that juries will be unduly impressed with and swayed by DNA results. Of course DNA proponents point out that juries should be impressed with DNA test results given their reliability and their ability to make a near positive identification. Proponents also juries have independent discretion. In a recent Connecticut rape trial, for instance the jury ignored DNA evidence exculpating the defendant and convicted him based upon the victim's eye witness identification. Ibid, n.104, See also Johnson DNA defense rejected: jury convicts in rape, Hartford currant, March 20, 1990 P.A. FBI forensic scientist testified for the defense in this case the victim's clothes did not match the test results from the defendant's DNA and hence the semen could not have come from the defendant. In appellant Miller case the jury was presentedd with fabricated testimony from state witnesses, and prosecutor, when the expert witness testified on behalf of defense, on FBI forensic analysis which showed no match to either Miller and pederson to an sexual assault. The Jury then already had their minds made up. Please see transcripts pg. B-190 thru B-203 defense presented expert testimony to show his expertise and technique on how to prove or disaprove penetration to the charges of Unlawful Sexual intercourse in the first Degree. See Swain direct transcript (B-197) line 12) Q. So all of the specimens that the FBI chose to examine pubic hair combings from both Miller and Pederson and the search for blood or semen all of those came back Negative is that correct? A. That's correct. Q. You made a statement earlier that alot of times in a case like this there is a transfer of evidence? A. I am just going by all cases I am invo-ved in.

8

There is alot of times when there interpret alot of times there is? I guess I am asking you to interpret? A: It just depends on what extent the activity continued, how long. The longer it occurred the more evidence you would have. Q: Based on the FBI report that you have just testified from, There is no objective evidence, as far as the samples submitted that would indicate that any contact occurred? A: BY "objective" do you mean -- you said "object" evidence. what do you mean? Q: objective a samples that were submitted, the hair fibers and those type of things? A: There was none located to connect, thats correct. Mr. Swain testified that there was no match and connection to penetration and that transfer of hair fibers from one person to another. The purpose of the defense to produce an expert witness was to prove his innocence as well as the truth. State v. Markus cite as 683 A.2d 221 N.J. Super. A.D. 1996) In New Jersey the results of scientific test are admissible at a criminal trial only when they are shown to have sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of truth. <u>Mr. Swain also proved that the conducting of the FBI testing was correctly done and used.</u> The FBI report showed no match to a rape, sexual assault to exonerate Miller from the charges that where placed on him by the state, which proved his innocence aswell.

Category 1. These are cases in which biological evidence was collected and still exists. If the evidence is subjected to DNA testing or retesting, exclusionary results will exonerate the petitioner.
- The other evidence in the case – everything was tested 1992-1993.
- Whether conviction was based on a guilty plea, a no contest plea, or a trial. both a no contest plea in 1993, and trial in 1994.
- The availabity of DNA testing at the time of trial. Yes, exonerated no match to a sexual assault. 11-29-92 - 7-93.
- The type of DNA technology available at the time of trial. DNA and its potential for identification. DNA testing methodologies.

9

In Sussex County prosecutors are barring many black people from juries in a county where large numbers of defendants are black. A survey has been conducted and shows it, the equal protection clause of the Fourteenth Amendment of the Constitution forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group could not impartially weigh cases.

In Batson v. Kentucky cite as 106 S. Ct. 1712 (1986) A State denies a black defendant equal protection when it puts him on trial before a jury from which members of his race have been purposely excluded. U.S.C.A. Const. Amend. 14. Determinations of juror impartiality are the responsibility of the trial judge who has the opportunity to question the juror, observe his/her demeanor and evaluate the ability of the juror to render a fair verdict. Hughes v State Del. Supr. 490 A.2d 1034 (1985) Not only did she fail to invoke the Batson Challenge to refute the makeup of the Sussex County jury pool (see Batson V. Kentucky 106 S. Ct. 1712) which Miller clearly states he was devoid of African American members; she failed to object throughout the process that Miller's jury makeup was devoid of any color whatsoever. To deprive a defendant of a jury of his peers, to make the same defendant go through the trial as though under a microscope is barbaric.

The framers of the Constitution did not have this in mind when they transferred their combined wisdom into written word.

In the case at hand Miller was at the hands of a jury which the prosecution knew it could easily bend and maneuver but the counsel for the defense did nothing about it. Her job was to object to certain jurors through the selection pool to makeup of her clients jury.

Mrs. Beauregard could have cared less that Miller did not have the jury of his peers at least to have a fair trial with impartial mind jurors instead allowing the selection from the State to go unchallenged by picking elderly white females to hear the nature of this case with their minds already being prejudiced, races toward Miller he never had a fair chance or trial. Miller did not recieve a fair trial which violated his 6th Amend, and 14th Amendment equal protection clause of the jury selection.

## ON THE DNA FORENSIC ANALYSIS

In State v. Thomas, 586 A. 2d 250 (1991), the Court rejected latenes arguments from the prosecution and held that DNA evidence is such a potentionally powerful tool demonstrate actual innocense that even the most unyielding procedural bars must give way: If the testing Ultimately exonerates a person who has been wrongly incarcerated, it is in the interests of the prosecution and in the interests of justice to release that person. If the results exonerate (are inconsistent with all theory of guilt), the prosecutor should immediately take the neccessary steps to have the inmate released. This Petition was never argued on the Probative value, If this was so as Judge Graves (stated) Previously Presented, why wasn't the neccessary steps taken to release defendant Miller to honour the return of the DNA Forensic Analysis that exonerates and proves his innocense to the charges the State placed on him Which was the Sole purpose of the DNA testing either guilt or innocense. In Respect to this Court on the petition on the DNA forensic Analysis, only alternative is to order the (State) prosecution to immediately release (Def) miller from present custody which should have been taken place in 1993. Due process is not a technical conception with a fixed content unrelated to time, place and circumstances. It is Flexible and calls for such procedural protections as the particular situation demands. To deny defendant his freedom after the return of the forensic Analysis that Proved his innocence is untenable. T

Miller, stated the State made improper statements in opening arguments as through out the entire trial which was highly prejudicial to his right to a fair trial. <u>Hughes v. State</u> 437 A.2d 559 on at least two occasions in recent years this Court has discussed the permissible bounds of comment by the prosecution in Summation arguments. Sexton v. State, Del. Supr., 397 A.2d 540 (1979), was the first of these. There the Court said this: "Not every improper remark by a prosecutor requires reversal, but only that which prejudicially affects rights of the accused. Super. Ct. Crim. R. 52(a); Edwards v. State Del. Supr., 320 A.2d 701 (1974).

Although the prosecutor operates within an adversary system, his duty is to seek justice, not merely convictions.

'A prosecuting attorney represents all the people, including the defendant who was being tried. It is his duty to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done by giving defendant a fair and impartial trial.' Bennett v. State. (3 storey 36) Del. Supr., 164 A.2d 442, 446 (1960). That same duty requires the prosecutor to refrain from legally objectionable tactics calculated to arouse the prejudices of the jury." 397 A.2d at 544.

In Sexton we also quoted, with tacit if not express approval, the following ABA standards, the prosecution and Defense functions (Approved Draft, 1971); 1.1 The functions of the prosecutor. (a) The office of prosecutor is an agency of the executive branch of Government which is charged with the duty to see that the laws are faithfully executed and enforced in order to maintain the rule of law.

(b) The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions.

(c) The duty of the prosecutor is to seek justice, not merely to convict.

13

5.5 Opening statement.

567 In his opening statement the prosecutor should confine his marks to evidence he intends to offer which he believes in good faith ill be available and admissible and a brief statement of the issues n the case. It is unproffesional conduct to allude to any evidence unless there is a good faith and reasonable basis for believing that such evidence will be tendered and admitted in evidence.

5.6 Presentation of evidence.

(b) It is unprofessional conduct for a prosecutor knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury to offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.

5.8 Argument to the jury.

(a) The prosecutor may argue all reasonable inference from evidence in the record. It is unproffesional conduct for the prosecutor intention-ally to misstate the evidence or mislead the jury as to the inferen-ces it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

5.9 Facts outside the record.

It is unproffesional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice."

The second and more recent case is Hooks v. State, Del. Supr, 416 A.2d 189, 204 (1980), in which this Court wrote as follows:

"The prosecutor in his final summation should not be confined to a repition of the evidence presented at trial. He is allowed and expec-ed to explain all the legitimate inferences of the appellant's guilt that flow that evidence. State v. Mayberry, N.J. Supr,

19

52 N.J. 413, 245 A.2d 481 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). The prosecutor, nevertheless, must remember his unique position within the adversary system. "It is fundamental that his obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public." ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, and the Defense Function, The Prosecution Function, s 1.1 Commentary at 44 (Approved Draft, 1971)(herein ABA standards). Over forty years ago, Justice Sutherland in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) spoke of the prosecutor's duty:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor - indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

This Court has expressed similar sentiments in Bennett v. State, Del. Supr, 3 Storey 36, 164 A.2d 442, 446 (1960):

*568 "A prosecuting attorney represents all the people, including the defendant who was being tried. It is his to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done by giving defendant a fair and impartial trial."

These general comments extend to the propriety of the content of closing argument as well as to the other aspects of a criminal trial. Closing argument is 'an aspect of a fair trial which is implicit in the Due Process Clause of the Fourteenth Amendment by which the states are bound.'

Appellant Miller argues that the Trial Court erred in permitting and allowing the prosecution to lie and fabricated of physical evidence to the jury in his opening arguments, misleading them, when he already had Knowledge of the Hospital record, and FBI forensic analysis report that showed no physical evidence, Plus allowing prosecutor to keep an important exculpatory report from the jury, Trial Court abused its discretion which resulted and had a prejudicial affect on appellant for not recieving a fair trial.

As a general rule, however, not only must there be an abuse of discretion when that is the scope of review, but a defendant must show that the error actually had a prejudicial effect in order to Constitute reversible error. Jenkins v. State Del. Supr; 413 A. 2d 874 (1980). (Such as this case before you) -(emphasis added)

In Closing, arguendo, the Court allowed the prosecutorial Misconduct behaviour of the prosecution, to go on by not stopping him, and to take action on withdrawing and dismissing the charges against appellant Miller, behind the FBI forensic report that proved his innocence to the charges that where placed on him; violated his rights to a fair trial Under the sixth Amendment, and the Eighth Amendment From l of Cruel and unusual punishment From both Court and State, through every stage of this case. And the Subsequent Due process Clause of the fourthteenth Amendment. This case must be vacated and reversed with instructions for the appellant Freedom to be mandated.

DATED: April 9, 2008

Thomas R. Miller
THOMAS R. MILLER
DCC
1181 PADDOCK RD.
SMYRNA, DE 19927

CERTIFICATE OF SERVICE

I Thomas R, Miller hereby certify that on this date, I served on parties below in the manner indicated, memorandum of law in support of #2254 Habeas Corpus.


TO: Honorable Gregory Sleet
    Office of the Clerk
    United States District Court
    844 N. King Street, Lockbox 18
    Wilmington, Delaware 19801-3570




TO: Joseph Biden III
    Delaware Department of Justice
    Carvel State office Building,
    820 N. French St,
    Wilmington Delaware 19801



Dated: April 9, 2008

FM: THOMAS R, Miller
SBI: 144108 UNIT 22 A-U-5
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



TO: Honorable Gregory Sleet
Office of the clerk
United States District Court
844 N. King Street Lockbox 18
Wilmington, Delaware 19801-3570

Legal Mail