IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS R. MILLER
    Petitioner,

V.

PERRY PHELPS
    Warden.

STATE OF DELAWARE
ATTORNEY GENERALS
OFFICE.

Civil Case NO. 1:08 CV 137 (GMS)
ON HABEAS CORPUS PETITION:

AMENDED PETITION TO GROUND ONE
FOR RELIEF #2254 HABEAS CORPUS, MEM-
ORANDUM OF LAW RULE 15.1

FILED

JUL – 1 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PD scanned

DATE: June 26, 2008

Thomas R. Miller
THOMAS R. MILLER

1181 PADDOCK ROAD
SMYRNA, DE 19977

# TABLE OF CITATION

| | PAGE |
|---|---|
| **Cases** | 2 |
| Skinner v. State, Del. Supr; 575 A. 2d 1108 (1990). | 2, 7, 8, 10, 11, 12 |
| Barker v. Wingo, 407 U.S. 514, 33 L. Ed 2d 101, 92 S. Ct, 2182 (1972. | 3 |
| Barker, Id. at 117. | 4 |
| See Skinner, Id. at 116 | 45 |
| See Barker, Id. at 118. | 7 |
| Doggett v. United States, 112 S. Ct. 2686, 2691 N. 1 (1992). | 8, 19 |
| See Moore, Supra; 414 U.S. at 26, 94 S.Ct. 189 | |
| United States v. LOUDHAWK 474 U.S. 302, 312, 106 S. Ct 648, 654, 88 L.Ed. 2d 640 1. 1986. | 8 |
| Middlebrook v. State 802 A. 2d 268 Del. Supr; (2002). | 9, 11 |
| See Administrative Directive Number 82 May 16, (1990). | 9 |
| Administrative Directing Number 128 (April 10, 2001) | 11 |
| Speedy Trial Guidelines (Nov. 1, 2000) | 11 |
| Criminal Justice Policy Committee (Dec. 28, 2001) | 11 |
| Pierson v. State Del. Supr; 311 A. 2d 854, 338 A. 2d 571 (1973) | 12 |
| United States v. Green cite as 305 F. Supp. 125 (1969) | 14 |
| U.S. EX REL. Wheeler v. Flood cite as 194 (1967) | 15 |
| In re Millers Del. Super; Def. ID# 9 2 S05488 Graves J. Oct, 11, 1995 at 5-6 | |
| 1995 WL 656783, app. disp Del. Supr; No. 342 1996 Berger; 1996 WL 526164 August 28, 1996) | 17 |
| See Johnson v. Zerbst 304 U.S. 458, 58 S. Ct. 1019 | 18, 19, 28 |
| Frank v. Mangum, Supra; pages 330, 331, 35 S. Ct. page 588 | |
| Mooney v. Holohan 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed 791, 98 A.L.R. 406, | 19, 20 |
| Ex parte Haus Nielson, petitioner 131 U.S. 176, 9 S. Ct. 672, 33 L. Ed. 118. | 19 |
| Steigler v. Superior Court 252 A. 2d 300 Del. (1869) | 19 |
| United States v. Aogeublick, 393 U.S. 348, 89 S. Ct. 528, 21 L. Ed. 2d 537 (1969). | 20 |
| U.S. ex rel. Turner v. Rundle, 438 F. 2d 839 C.A. 3. Pa 1971 | 20 |
| In Commonwealth v. Phillip 208 Pa. Super. 121, 220 A. 2d 345 1966; | 20, 27 |
| In Commonwealth v. ex. rel. Ross v. Botula, 206 Pa. Super. Ct. 1. 211 A. 2d 42 1965 | 20 |

# TABLE OF CITATION

|  | PAGE |
|---|---|

CASES

Moran v. Brubine, 475 U.S. 412, 421 106 S.Ct 1135, 1141, 89 L.Ed.2d 410 (1985).    21

US. v. Frank, 956 F.2d 872 (9th cir. 1991)    21

State v. Williams, 87 Wash.2d 916, 921 557 P.2d 1131 (1976)    21

In re petition of Jessup, 50 Del. 530, 136 A.2d 207 Super Ct. 1957)    22, 29

See Commonwealth v. Brown 247, Pa. Super. 401, 372 A.2d 887 (1977)    24, 25

Commonwealth of Pennsylvania v. Alfred Earl Webster Supreme Court of Pennsylvania 426 Pa. 125, 337 A.2d 914, 1975 Pa Lexis 841.

In shoemaker v. State 375 A.2d 431 Del. (1977).    26

"Adams v. United States Supra; 63 S.Ct at 242; Faretta v. California Supra; Miranda, Supra; 86 S.Ct. at 1630.    26

Harris v. State supra; Wing v. State, Del. Supr; 690 A.2d 921 1996; Coffield v. State, Del. Supr; 794 A.2d 588, 591 (2002) and Summers v. State, Del. Supr; 854 A.2d 1159 (2004).    26

In United States v. Goldstein, 502 F.2d 526, 527 (3rd cir. 1974 –    27

William v. United States, 289 F. Supp. 730, 731 D. Del. (1968)    27

Smith v. United States 304 A.2d 28, 31 (D.C. 1973); State v. Hastings N.H. Super; 417 A.2d 7, 8, 1980; Davis v. State, Del. Supr; 809 A.2d 565 (2002); United States v. Jimenez, 54 Fed. Appx. 369, 370 (3rd cir. (2002); United States v. Simms, 69 Fed. Appx 524, 526 (3rd cir. 2003) and United States v. Rafaela-Morales 30 Fed. Appx. 634, 636 (7th cir. 2002). 28

In Ex Parte McClusky (C.C. Ark) 40 F. 71, 74    29

In Cane v. State Del. 560 A.2d 1063)    30

Johnson v. State cite as Del. Supr; 711 A.2d 18 1988    31

6. Ex parte Bain 121 U.S. 7, 11, 7 S.Ct 781, 30 L.Ed. 849 (1887).    32, 34, 43

7. Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406 100 L.Ed. 397 (1956). 32

8. Costello v United States 350 U.S. at 361, 62, 76 S.Ct 406    32

9. Costello v. United States, 350 U.S. at 362, 76 S.Ct 406.    32

10. Costello v. United States, 350 U.S. at 362 76 S.Ct 406.    32

11. Barron v. Baltimore, 32 U.S. 7 (Pet) 243, 8 L.Ed 672 (1833)    32

12. See McCool v. Gehret, Del. Supr; 657 A.2d 269, 281 (1995)

13. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).    32

## TABLE OF CITATION

### CASES                                                                      PAGE

15. See Hurtado v. California, 110 U.S. 516, 538, 4 S.Ct. 111, 28 L.Ed 232 (1884). 33,34
    Alexander v. Louisiana, 405 U.S. 625, 635, 92 S.Ct 1221 31.L.Ed.2d 536 (1972)   34

16. Campbell v. Louisiana – U.S. – 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998.    34,40

18. See Stivone v. United States, 361 U.S. 212, 218 80 S.Ct.270, 4 L.Ed 2d 252 (1960). 34,43

    See Kipp v. State, Del. Supr, 704 A.2d 839,842 (1998).                       35

26. Delaware Bench and Bar 77 (1963).                                           38

27. Claudio v. State Del. Supr, 585 A.2d 1278, 1295 (1991).                   38,40

28. Claudio v. State, 585 A.2d at 1298.                                         38

29.  1 Debates, at 563 –64, 580.                                               38

30.  1 Debates at 587.                                                         38

31.  1 Debates, at 588                                                         39

    See People v. Carter 77 N.Y. 2d 95, 564 N.Y.S. 2d, 992,997, 566 N.E.2d 119,
    124 (1990).                                                                39

32.  81 (Randy J. Holland et al. eds (1997).                                   39

    Powers v. Ohio, 499 U.S. 400, 411 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).  40

    In re opinions of the Justices, Del. Supr, 88 And 128, 131 (1952), quoting
    States v. Lyons, 5 A.2d 495, 497 (1939).                                   40

36.  State v. Blendt, Del. Super, 120 A.2d 321, 324 (1956).
                                                                              40,41,42,43

### Statues and Rules

    Superior Court criminal rule 5. 3. C. Ann. Rule 48(b)
    5(d), 7a(b).                                                              12,
    Fed. Rules. Crim.proc. Rule 5(c)                                          14.
    5(d), 7a(b)                                                               15
    5, 7(d)  7(e),(b).                                                        15
    5-7.                                                                      16
    39 AM. Jur. 2d                                                           17,30
    7(b) (a)                                                                  19
                                                                              22

### Delaware, Federal Constitutional Amend.

| | | |
|---|---|---|
| Article IV, Section 13 | 6th | 9 |
| Article 1 Section 7 | | 9 |
| Article 1 Section 7 | | 10 |
| Article 1, section 8 | 6th, 14th | |
| | 5th | 15, 30, 44 |
| | 4th, 6th | 18 |
| Article 1, section 10 | | 20 |
| Article section 8 | | 21 |
| one Article 1, section 8 | | 22 |
| Article 1 section 8 | | |

# TABLE OF CITATIONS

### CASES                                                        PAGE

#### STATUES AND RULES
7(a) (b)                                                          23
7 (a) (b)                                                         25
7(a)(b)                                                           26,28
7(b)                                                              27
2205, 205 (b)(1) 11 Del.C. 207, 208                              29
11. Del.C. 205,
7(e)                                                              41

### DELAWARE, FEDERAL CONST. AMEND.

Article I, section 10, Article I, Section 8                      23
Article I, section 10                                            25
Article I, section 10, Article I, 8                              26
Article I, section 8.                                            27,29,39,43
                                    5,6,14 th                    31,33,37
                                    5,                           32,33
                                    14
/

## ARGUMENT SECTION ONE

THE TRIAL COURT'S DENIAL OF MILLER'S MOTION TO
DISMISS INDICTMENTS DUE TO A LACK OF SPEEDY
TRIAL WAS AN ABUSE OF DISCRETION AND ERROR
AS A MATTER OF LAW.

### A.    Standard and Scope of Review

The Standard and Scope of Review is whether the trial Court
abused its discretion in denying the Motion to  Dismiss for Lack of Speedy
Trial.

### B.    Argument

Miller was arrested and incarcerated for lack of Bond on
November 29, 1992. (A-68) On February 23, 1993, Miller filed a Motion to
Dismiss for Lack of Speedy Trial. (A-65)  The initial trial date of March 8,
1993, was continued by mutual request of the State and Miller. (A-69)
Miller filed a second Motion to Dismiss for Speedy Trial violations of June 4,
1993. (A-17 thru A-21)    This Motion was re-noticed on May 18, 1994. (A-
64)

On June 14, 1993, Judge Lee accepted a Robinson Plea that was
proffered by the State. (A-70) Miller moved to withdraw this plea on June
17, 1993, this motion being denied on June 18, 1993. (A-70)  Miller was
sentenced on the improper plea by Judge Graves on July 16, 1993, to
twenty-two (22) years. (A-5 & A-6)  On August 12, 1993, Miller filed a Rule
61 Motion seeking the withdrawal of the June 14, 1993 plea. (A-7 thru A-
12).

No further action was taken in the case until December 16, 1993,
when present counsel was appointed to represent Miller on Postconviction
Relief. (A-22)  A hearing was set for February 17, 1994. At the February
hearing Judge Lee recused himself. (A-27)  The matter was rescheduled to

March 11, 1994, before Judge Graves. On March 11, 1994, Judge Graves ruled that the June 14, 1993, Robinson plea was defective in that it had never been accepted by Miller. (A-71) Judge Graves increased Miller's bond at that time from one hundred eighty thousand dollars ($180,000.) secured to three hundred thousand ($300,000.) with surety insuring Miller would remain incarcerated pending trial. (A-39) Trial was held May 23, 1994.

Whether a violation of Miller's Speedy trial rights occurred depends on balancing various factors in which the conduct of the defendant and the government are weighed. *Skinner v. State,* Del.Supr., 575 A.2d 1108 (1990). This Court must examine the length of the delay, the reasons for the delay, the assertion of the right to a speedy trial, and the prejudice to the defendant caused by the delay, *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed 2d 101, 92 S.Ct., 2182 (1972).

## LENGTH OF DELAY

In reviewing the length of the delay, the Court ruled that eighteen (18) months from arrest to trial was presumptively prejudicial to Miller. (A-73) This finding triggered further inquiry by the Court as to the reasons for delay in this case.

## REASONS FOR DELAY

The initial trial date of March 8, 1993, was continued by mutual request. Neither Miller nor the State should be penalized for this delay. Subsequently, Miller appeared on June 14, 1994. At that time a guilty plea was tendered to the Court but subsequently withdrawn by Miller. (A-46) Despite Miller's rejection of the plea, the Court accepted a Robinson plea with no acknowledgment from Miller that he desired to tender such plea. (A-46 thru A-49) In his ruling on Miller's Motion for Speedy Trial, Judge Graves acknowledged that Miller had never accepted the plea. (A-71)

-2-

However, in the next breath, the Court found that the reason for the delay from June 14, 1993, to trial on May 23, 1994, was because Miller had accepted the Robinson plea. (A-72, A-73 & A-76) The Court weighed that factor against Miller. (A-73) In fact, that factor should have been weighed against the Government based on the improper acceptance of a Robinson plea that had never been tendered nor accepted by Miller. The Court cannot find that Miller did not accept the June 14, 1993 plea and then weigh that factor against him in stating that he caused delay by accepting the plea.

The gap of time from Miller's filing for Postconviction Relief on August 12, 1993, to December 16, 1993, when counsel was appointed, was also attributable to the government. The Court ruled that it was an unreasonable time and assessed it to the Court. (A-74)

The gap of time from December 16, 1993, to the March 11, 1994, Postconviction hearing was also attributable to the government based on the improper scheduling of the Rule 61 motion before the Judge whose acceptance of the Robinson plea was being attacked. (A-71)

Miller does contend that the Prosecutors were responsible for the delay. Miller does contend that the substantive delays were caused by the court. Nevertheless, these delays cannot be attributed to Miller, but must be assessed against the State, as the Court in *Barker* noted:

> A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker, Id.* at 117.

- 3-

Miller asserts that but for his continuance request for the March 8, 1993, trial date, all the delay in the case must be assessed against the State. The primary burden to insure a speedy trial rests with the Court and the State.

## Defendant's Assertion of Right to Speedy Trial

Miller asserted his right to a speedy trial on three occasions. A request for speedy trial was made to the Court on February 23, 1993. (A-74) Another request in Motion form was filed with the Court on June 4, 1994. (A-17 thru A-21) A third request was made to re-notice the motion on May 18, 1994 (A-64) Although the Court stated that Miller had no right to file these motions pro se, the Court noted the requests. Certainly, Miller's repeated request for a speedy trial cannot be deemed a nullity based on the fundamental nature of this constitutional right. See *Skinner, Id.* at 116 where defendant also filed pro se Motion for Speedy Trial.

## Prejudice to Defendant

The final area of analysis is whether Miller was prejudiced by the delay. It is uncontroverted that Miller remained incarcerated throughout the nineteen (19) months delay from arrest to trial. (A-75) In fact, Judge Graves insured that pretrial incarceration would continue when he increased Miller's Bond from one hundred eighty thousand dollars ($180,000.) to three hundred thousand dollars ($300,000.). (A-39) Miller's incarceration resulted in a loss of employment. (A-67) Furthermore, Miller's ability to contact witnesses and prepare his defense was hampered by the incarceration. See *Barker, Id.* at 118. Miller had to rely on Dr. Roy Smith to gather information for him. (A-87) Smith was not permitted to testify at Miller's trial. (A-91 & A-92)

- 4 -

Finally, there is no question that Miller's defense was impaired by the delay. The alleged victim of the Unlawful Sexual Intercourse charge died on September 16, 1993. (A-77) Miller lost the ability to question his accuser regarding statements she made to Roy Smith pertaining to her familiarity with Miller and her belief that he should not be in jail. The Court ruled that these circumstances had some prejudicial effect against Miller. (A-75) See *Barker v. Wingo* at 118.

In its final analysis, the Court again emphasized that Miller caused the delay by entering a guilty plea. (A-76) That fact was persistently raised and weighed against Miller in the Court's balancing analysis of the factors set forth in *Barker, supra.* and *Skinner, supra.* As stated previously, the Court's ruling of March 11, 1994, stating that the Robinson Plea was never accepted by Miller cannot now be considered as an affirmative action on Miller's part in delaying the proceedings.

Under the Skinner analysis, when all factors are weighed, it is evident that Miller was denied his right to a speedy trial.

## CONCLUSION

For the reasons stated above, Thomas Richard Miller respectfully requests this Court to reverse his conviction in Superior Court and to remand this case for a new trial.

Respectfully Submitted,

**BETTS & BEAUREGARD, P.A.**
15 South Race Street
P. O. Box 770
Georgetown, DE  19947
(302) 856-7755

Rosemary B. Beauregard, Esquire
Attorney for Appellant

Dated: November 14, 1994

- 6 - -

IN THE STATE's answering brief to (Def) appellant's opening brief on appeal to argument one speedy trial violation, see exhibit (B-1) page 23, to 32. The state is arguing that Miller did not prove prejudice under the three Barker analysis. In opening brief of appellant page 18-19 prejudice to the Defendant, Right here appellant Miller shows prejudice do to delay for speedy trial. See exhibit (B-2) Delaware Supreme Court decision on speedy trial violation page 8-10.

The Court is quoting the same thing as in the State's answering answering brief which is prejudice to appellant Miller, (Reason set forth) The Court did not meet the threshhold to examining the Barker, or the faot factor inquiry In Miller case as it quotes in Doggett v. United States, 112 S.ct. 2686, 2691 N.1 (1992). In Doggett the United States Supreme Court lays it out in plain language (1) The Sixth Amendment guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial on its face, the speedy trial clause is written with such breadth that taken literally, it would forbid the Government to delay the trial of an "accused" for any reason at all. Our cases, however, have qualified the literal sweep of the provision by specifically recognizing the relevance of four seperate enquiries: whether the government or the criminal defendant is more to blame for that delay whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delays result. See Barker supra; 407 U.S., at 530, 92 S. Ct, at 2192. (2)(3)(4)(5)(6) The first of these is actually a double enquiry.

Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed *625 threshhold dividing ordinary from presumptively prejudicial delay 407 U.S., at 530-531, 92 S.ct, at 2192, Since by definition he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary **2691 promptness. If the accused makes this showing, the Court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.

see id, at 533-534, 92 S.Ct, at 2193-2194. This latter enquiry is signif-
icant to the speedy trial analysis because, as we discuss below, the
presumption that pretrial delay has prejudiced the accused intensifies
over time. Such as Miller's case over one year and half later (end of
emphasis). See Moore, supra; 414 U.S. at 26, 94 S.ct at 189; Barker supra;
407 U.S. at 533, 92 S.ct, at 2193. Barker explicitly recognized that impair-
ment of one's defense is the most difficult form of speedy trial prejudice
to prove because time's erosion of exculpatory evidence and testimony
"can rarely be ** 2693 shown. 407 U.S. at 532, 92 S.ct, at 2193. And though
time can tilt the case against either side, see id, at 521, 92 S.ct at 2187;
Loud Hawk Supra; 474 U.S. at 315, 106 S.ct, at 656 one cannot generally be
sure which of them it has prejudiced more severely. Thus, we generally
have recognize that excessive delay presumptively compromises the realiab-
ility of a trial in ways that neither party can prove or, for that matter
identify. On Febrary 23, 1993 Miller filed a Motion to Dismiss for lack of speedy
trial, Miller filed a second motion to Dismiss for speedy trial violation of June 4
1993. He suffered a tremendous amount of anxiety throughout this period, as well as
From the arrest until second sentence trial. Through out this time miller
was never indicted by the grandjury in which he falls within the speedy
trial clause. United States v. Loud Hawk 474 U.S. 302, 312, 106 S.ct 648, 654 88
L.Ed.2d 640 1,(1986). Whenever a criminal trial takes place long after the events
at issue, the defendant may be prejudiced in any number of ways. But the
speedy trial clause does not purport to **661 protect a defendant from all
effects flowing from a delay before trial." Id, at 311 106 S.ct at 654. The
clause is directed not generally against delay-related prejudice, but
against delay-related prejudice to a defendant's liberty. Loud Hawk,
supra, 474 U.S. at 312, 106 S.ct at 654. A lengthy pretrial delay of
course, may prejudice an accused's ability to defend himself. But we
have explained prejudice to the defense is not the sort of impairment
of ** 2696 liberty against which the clause is directed. Passage of time,
whether before or after arrest, may impair memories cause evidence

to be lost ~~Opening the order about Documents and other Jurisprudence with~~ 50 s
ability to defend himself.

In reviewing the length of delay, the Court that (18) months from arrest to trial was presumptively prejudicial to Miller. This finding triggered further inquiry by the Court as to the reasons for delay in this case.

Although being "accused" is necessary to trigger the clause protection, it is not sufficient to do so. The touchstone of the speedy trial right, after all is the substantial deprivation of liberty that typically accompanies an "accusation" not the accusation itself. That explains why a person who has been arrested but not indicted is entitled to the protection of the clause. See Dillingham supra, Middlebrook v. State 802 A.2d 268 Del. Supr; 2002.

The right to a speedy trial attaches as soon as the defendant is accused of a crime through arrest or indictment, whichever occurs first. In the Delaware Supreme Court decision in Middlebrook, clearly this lapse of time is inconsistent with well established speedy trial guidelines. The chief Justice, with unanimous approval of the Supreme Court, pursuant to Article IV, section 13 of the Delaware Constitution, has issued administrative directives, directing the Superior Court to dispose of all criminal cases generally with one year. See Administrative Directive Number 82 May 16, (1990) imple menting recommendations of the speedy trial Goal Committee dated April 18, 1990 and directing the Superior Court that "at least 90% of all criminal cases be adjudicated as to guilt or innocence or otherwise disposed of short sentencing for those to be sentenced after a presentence investigation within 120 days from the date of arrest, 98% within 180 days, and 100% within one year)

Miller claims that the 18 months delay from arrest and trial violated his constitutional right to a speedy trial as provided by the sixth Amendment of the United States Constitution [F10] and Article I section 7 of the Delaware Constitution. [F11] [FN12]. The sixth Amendment to the United States, in relevant part: In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State

and district wherein in the crime shall have been committed, U.S. Const. amend. VI. FN11. Article 1, section 7 of the Delaware Constitution provides. "In all criminal prosecutions, the accused hath a right to.... a speedy and public trial by an impartial jury;... "Del. Const. art. 1, § 7.

As far back as the magna carta in 1215, a defendant's right to swift justice was fundamental to the concept of fairness in the English legal system. FN12. Early in our nation's history, a number of the original states, such as Delaware, Virginia, Maryland and Pennsylvania, guaranteed the *273 right to a speedy trial in their constitutions FN13. The Federal government also recognized the right to a speedy trial in the Bill of Rights through the Sixth Amend, to the United States Constitution. The United States Supreme Court subsequently held that the sixth Amend right to a speedy trial is "fundamental and is imposed by the Due Process Clause of the fourteenth Amend on the states." FN14

## DEFENDANT'S ASSERTION OF THE RIGHT TO A SPEEDY TRIAL.

9.10) "If and when a defendant asserts his rights are factors of considerable significance in determining whether there has been a speedy trial violation". FN38 Furthermore, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial," FN39 FN38. Bailey, 521 A2d at 1082. FN39. Barker, 407 U.S. at 532, 92 S.Ct. 2182.

First lengthy pretrial incarceration "has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult. FN44 In addition

time spent in jail awaiting trial by one presumed innocent until proven guilty often means loss of a job, disrupts family life, and enforces idleness.[FN45] Imposing these consequences on anyone who has not yet been convicted is serious." [FN46] FN44. Barker, 407 U.S. at 520, 92 S.Ct. 2182 (internal quotation omitted).[FN45] Id at 532, 92 S.Ct. 2182. FN46. Id at 533, 92 S.Ct. 2182. We note also the public interest not only in the trust and confidence in our court's duty to provide swift and fair justice, but also in the cost to the tax payers of pretrial detention. The courts are addressing this issue. See Administrative Directive Number 118 (Dec. 2, 1999) creating the committee on speedy trial Guidelines chaired by Justice Walsh to recommend new guidelines to accelerate the adjudication of criminal cases in the Delaware Court system; Administrative Directive Number 128 (April 10, 2001) creating the Delivery of criminal justice Policy Committee chaired by Justice Walsh to formulate statewide criminal Justice policy facilitating the adjudication of all criminal cases at the earliest feasible stage); Final Report of the Committee on speedy trial Guidelines (Nov. 1, 2000) (stating that "it is essential to the administration of justice and public confidence that criminal cases move through the system as expeditiously as possible"; Final Report of the Delivery of criminal justice policy Committee (Dec. 28, 2001) (detailing recommendations implemented by the committee to accelerate case processing and to benhance individual court and agency responsibility for detetioners).

An indictment is to be handed down by the Grand Jury within 2 terms and the case is to be within one year. See Middlebrook v. State Del. Supr; 802 A.2d 268, 273 (2002). Our Supreme Court has stated that a 75 day delay following an arrest without

either a preliminary hearing or indictment violates one's Rights. Pierson v. State Del. Supr, 311 A.2d 854 appeal after remand 338 A.2d 571 (1973) Dismissal is required where such a delay is attributal to the State Super; Ct. Crim Rule 5.3, C. Ann. Rule 48(b). Miller does Cont end that the prosecutors were responsible for the delay. Miller does Contend that the substantive delays were caused by the Court.

Nevertheless, these delays cannot be attributed to Miller, but must be assessed against the State, as the Court in Barker noted: A more nuetral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstance must rest with the gover nment rather than with the defendant. Barker, Id. at 117.

Miller asserts that but for his continuance request for the March 8, 1993, trial date, all the delay in the case must be assessed against the State.

The primary burden to insure a speedy trial rests with the Court and state.

Finally, there is no question that Miller's defense was impaired by the delay.

<u>CONCLUSION OF SECTION ONE TO GROUND ONE:</u>

For the reasons stated above, Thomas Richard Miller respectfully request this Honorable Court to reverse and remand an order to dismissal of all charges against him due to delay of speedy trial violation.

Dated: _____

Section II and III TO GROUND ONE OF AMEND COMPLAINT

DEFENDANT MILLER WAS ARRESTED ON NOVEMBER 29, 1992, ON (5) SERIOUS FELONY CHARGES THAT SHOULD HAVE BEEN SENT TO THE DELAWARE GRAND JURY, FOR AN EXAMINATION TO BE INDICTED ON. HE CONTENDS THE CHARGES WAS NEVER SENT, NOT EVEN WITHIN THE (5) YEAR STATUE OF LIMITATIONS, WHICH WAS UP ON NOVEMBER 29, 1997. ALL FELONY CHARGES IN DELAWARE ARE INDICTABLE, BY THE GRAND JURY TO THE PRESENT DAY. THE ATTORNEY GENERALS, AND DEPUTY ATTORNEY GENERALS, AND SUPERIOR COURT OF DELAWARE LOST ALL SUBJECT MATTER JURISDICTION, OVER THE CASE, AND MILLER. THE PERSON OF PETITIONER.

ON November 29, 1992, MILLER was arrested on (5) serious felony charges (includes)

Charge "1  S92120044 I  UNlawful sexual Intercourse First degree.

Charge "2  S922120045 I  Burglary 1st degree.

Charge "3  S92120046 I  Unlawful Sexual Penetration 2nd degree.

Charge "4  S92120047  criminal tresspassing 1st degree

Charge "5  S92120044  UNlawful sexual Intercourse 2nd degree

See Exhibit (B-2) one original court docket As of 6-28-93.

ON December 3, 1992 Miller was to have scheduled for a preliminary hearing, instead he was tricked and coerced involuntarily of understanding the nature of the Preliminary

<u>Section II</u> TO GROUND ONE A FRAUDENTLY WAIVER
hearing as well as signing an waiver of the Preliminary
hearing in the court of common pleas, for a copy of the
Police report, and filing of information in Lieu of Present-
ing it to the Grand Jury for indictment. This WAIVER
form comes from the Public defenders office, of Sussex
County. Public defender Karl Haller and presentence investi-
gative officer Pam Darling, rushed Miller into signing the
waiver without the truth and understanding, inwhich
he was coerced by both individuals again without any
true meaning of either rule 5(d) and 7(b) proceedings.
Miller contends, that preliminary hearing would been
crucial, and in favor to him On December 3, 1992. (Reason
set forth) Miller should beenon the indicted date of his arrest
with serious felony charges that were placed on him.
Or prior from a preliminary hearing, into scheduling grand
Jury investigation and examination of the (5) felony
charges. Miller could not be tried off of information, or
even tricked or coerced into signing a waiver of such,
in this case, a fraudently prepared waiver of indictment,
Because the charges are (felonies). <u>United States v.</u>
<u>Green cite as 305 F. Supp. 125 (1969) 12. Criminal Law 228-</u>
239. Where defendants had been denied timely preliminary
examination according under both rule requiring hearing
within reasonable time and statue requiring hearing
within (20) days for released defendants, and government
<u>had relied on belief that statue was, not in effect</u>

-19-

in the district and speedy determination of probable
cause was necessary to protect defendants First amendment
Freedom of expression, complaint would not be dismissed
and Government would be required to afford preliminary
examination prior to sheduled grand Jury investigation of
defendants or complaint would be dismissed. Fed. Rules Crim.
Proc. Rule 5(c), 18 U.S.C.A., 18 U.S.C.A. & 3060; U.S.C.A.
Const. Amend 1. Certainly the primary interest of Justice
in both the preliminary examination and the grand
Jury investigation, is the determination of probable cause
to believe that the defendants are guilty of some crime.
U.S. EX REL. WHEELER Y. FLOOD cite as 194 (1967) Rule 5
Preliminary hearings require the Government to produce
evidence - although it is not clear whether it must be
admissible at a trial. Miller contends this is a Mandatory
procedure Under Delaware law and rules, even if the
grand jury was still investigating the probable cause, that
May lead to evidence or indictment for a future trial date,
he would still be required to an preliminary hearing
examination, Delaware Superior Court Criminal rule 5.
In which Miller was intentionally denied an presentment
to the grand Jury for an indictment and preliminary hearing
by the state attorney generals office, and public defenders
office. Which is in violation of his 5th amend and
rule 5(d) and 7(a), aswell as Article I, section 8 of the
Delaware Constitution. At this critical stage

TO SHOW THE DIFFERENCE OF BOTH WAIVERS OF AN INDICTMENT AND PRELIMINARY HEARING, ALSO THIS IS A FRAUDENTLY PREPARED WAIVER OF INDICTMENT

Delaware Superior Court criminal Rule 5. Initial appearance before the committing Magistrate See Exhibit(B4) one Superior Court rule 5. (d) scheduling preliminary Examination. A defendant is entitled to a preliminary examination, unless waived, when charged with any offense that is within the exclusive jurisdiction or that the attorney general chooses to prosecute in Superior Court. If the defendant waives preliminary examination, the Committing Magistrate shall forwith hold the defendant to answer in Superior Court. If the defendant does not waive the preliminary examination, the committing Magistrate shall shedule a preliminary examination. See Exhibit (B-5) one Superior Court criminal rule 7.(a) & (b). The Indictment and the information. (b) waiver of Indictment. An offense within the exclusive jurisdiction of Superior Court other than a capital crime may be prosecuted by information if the defendant, after having been advised of the nature of the charge and of the rights of defendant, waives in writing or open Court prosecution by indictment. Right here shows and distinguish the difference of each waiver which is Constitutional in nature. The waiver of the preliminary hearing, and waiver of indictment are two seperate rules which are not the same. To sign (2) rules seperate rules in one waiver is unconstitutional

In re Miller, Del. Super; Def. ID# 92505488, Graves J October 11, 1995 at 5-6 1995 WL 656783, app. dism Del. Supr; No. 342 1996 Berger), 1996 WL 526164 August 28, 1996. (Quote) The long standing practice in Sussex County has been for a defendant to waive his or her preliminary hearing and right to be indicted in exchange for a copy of the police report, Any person who stumbles in the hands of the judiciary Court System in Delaware is suppose to recieve his copy of police report from his attorney, public defender in preparation of his or her defense; Judge Graves also quoted in Re Miller's police reports are not normally discoverable under rule 16 (End of Quote). As Judge Graves quoted that its been a long standing practice to have an individual waive his preliminary hearing for a copy of police report, this is an illegal practice, with no fixed rules exist. Neither Rule 5 or 7 states anywhere that an individual have to waive his rights away inorder to recieve a copy of police report See Exhibit (B-6) 3 page preliminary sheet from public defender Karl Haller on page (2) 4 paragraphs down (Quote) Your preliminary hearing waived for a copy of the police report, is absurd, Right here alone in Delaware individuals Constitutional rights are being violated, by the public defenders office, deputy attorney generals office and Superior Court in just to recieve your copy of police report. Infact your free copy suppose to be given to you (defendant) when it comes available through counsel

in a week or two in preparation of his case, and not through the office of the prosecutor for that erroneous practice in exchange of giving up your rights, which violates the 4th amendment upon probable cause, and the 6th amendment to be informed of the nature and cause of the accusation. (emphasis added) Miller explains he was informed on December 3, 1992, but the truth was held from him, inorder to waive his constitutional rights For a copy of police report and two seperate constitutional rights at the same time. See Johnson v. Zerbst 304 U.S. 458, 58 S.Ct. 1019) "There being no doubt of the authority of the congress to thus liberalize the common law proced- ure on habeas corpus in order to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the sections cited a prisoner in custody pursuant to the final judgement of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgement against him.***

it is open to the Courts of the United States, upon an appli-
cation for a writ of habeas corpus, to look beyond forms and
inquiry into the very substance of the matter.xxx FN20
FN20 Frank v. Mangum, supra, pages 330, 331, 35 S.ct. page 588,
cf; Moore v. Dempsey, 261 U.S. 86, 43 S.ct. 265, 67 L.Ed. 543;
Mooney v. Holohan 294 U.S. 103, 55 S.ct. 340, 79 L.Ed. 791, 98
S.ct. 672, 33 L.Ed. 118. Steigler v. Superior Court 252 A.2d 300
Del. 1969[6] The appellant thus invoked a comparatively lesser-
known element of Jurisdiction. In addition to well-known
elements of jurisdiction over the subject matter and over the
person jurisdiction of the Court to enter a particular order
or judgement is deemed equally essential to its validity.

    And an order may be void for want of Jurisdiction by
reason of extreme irregularities in the proceedings, other than
lack of Jurisdiction over the offense and the person, as where
Fundamental constitutional rights have been violated during
the course of the proceedings leading to the order. See 39 AM.
Jur.(2d) Habeas Corpus'ss 29, 30. This element of jurisdiction is
demonstrated in Johnson v. Zerbst 304 U.S. 458, 58 S.ct.
1019, 1024, 82 L.Ed. 1461, 146 A.L.R. 357(1938). There, the United
States Supreme Court stated that compliance with a consti-
tutional mandate is an essential jurisdictional prequisite
to a Court's authority to deprive a defendant of life, or liberty,
that a court's jurisdiction, though existent at the beginnings
of a proceeding may be "lost" in the course of the proceedings
by deprivation of Constitutional rights and, thereafter, the
Court "no longer has jurisdiction to proceed.

"See also United States v. Augenblick, 393 U.S. 348, 89 S.ct.528, 21 L.Ed. 2d 537 (1969). In Mooney v. Holohan, 294 U.S. 103, 113, 55 S.ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406 that it falls with the premise: To deprive a citizen of his duty only effective remedy would not only be contrary to the "rudimentary demand of Justice FN21 but destructive of a constitutional guaranty specifically designed to prevent injustice.

U.S. ex rel. Turner v. Rundle, 438 F.2d 839 C.A.3. Pa 1971 Ignorance cannot constitute a knowing and conscious waiver by a suspect of a constitutionally protected right. Miller had the right to be indicted by a Grand Jury with serious felony charges, he could not waive this Constitutional right personally, nor by his attorney (end of emphasis)

In Commonwealth v. Phillip 208 Pa. Super. 121, 220 A.2d 345 1966.1. Indictment and information 210-5 210 1 necessary of indictment or presentment, 210 K 5 K. Waiver. Most cited cases Constitutional guarantee that no person shall for any indictable offense, be processed against criminally by information except in cases arising in land or Naval forces, or in Militia, when in actual service, in time of war or public danger, or by leave of Court for oppression or misdemeanor in office can be waived, so long as waiver is knowingly and intelligently made. P.S. Const. art. 1 sec 10, The pennsylvania art 1 section 10 of their constitution is identical to art 1 sections of the Delaware Constitution. In Commonwealth ex rel. Ross v. Botula, 206 Pa. Super, Ct. 1.211 A.2d 42 (1965) that a signed written statement, in which a defendant Pleads guilty,

-20-

Waives presentment of the indictment to the grand jury, waives appointment of counsel and consents to the pronouncement of sentence, cannot alone establish an understanding and intelligent waiver of the right to counsel. Miller explains such as the waiver he signed without intelligent understanding of the (2) different rules of constitutional rights in one waiver from the public defenders office makes illegal and unconstitutional. (end of emphasis) Moran v. Brubine, 475 U.S. 412, 421 106 S.ct. 1135, 1141, 89 L.Ed.2d 410 (1985). U.S. v. Frank, 956 F.2d 872 (9th civ. 1991) Waiver of a defendant's protection against self incrimination at one stage in a pretrial proceeding is not a waiver of that right at other stages. (Different proceedings, produce different waivers).

A defendant should not be bound by the decision of his attorney at a time when he did not fully understand his rights. State v. Williams, 87 Wash.2d 916, 921 557 P.2d 1311 (1976)

Miller wants to bring to the attention of the court, the arguments was fairly presented to the State Courts, and thus the exhaustion requirement is satisfied. Moreover, the arguments was adjudicated on the merits by the state Courts. There fore, it is subject to the strictures of #2254).

1) Denigrating Petitioner's Constitutional Rights through out every proceeding, the case at whole. Miller argues the state attorney Generals, Deputy attorney general's office, Public defenders office, and superior court "denigrated" and "ridiculed" his assertion of Constitutional Rights. See Exhibit (B-7) One Delaware Constitutional Article I section 8) "no person shall for any indictable offense" be

proceeded against criminally by information. Also see Superior Court criminal rule 7. The Indictment and the information Section (b). 7(b) waiver of indictment. The Superior Court criminal rule 7(b) contradicts and is in total oppossition to Article1, section8 of the Delaware Constitution. which makes rule 7(b) illegal and unconstitutional, because it was not enacted into the Delaware Superior Court criminal rules to make law.

To the person subject to trial by Delaware Courts for an indictable offense, the right to grand jury presentment is enshrined in Del. Const, Art.1 sec 8; and the powers and attributes of the Grand Jury are as they were at Common law. In re Petition of Jessup, 50 Del. 530, 136 A.2d 207 super. Ct. 1957, (Emphasis added) meaning, person with Felony charges placed on, either him or her, are indictable and presentment of the charges must be sent to the Grand Jury in Delaware. The same person cannot waive or be forced to waive indictment inorder to be tried off of information. in Delaware. The Courts in Delaware practice there own way of procedure forcing people to waive their preliminary hearing and indictment, or in lieu of indictment presentment to a Grand Jury. This is an unconstitutional practice the Delaware Courts are getting away with; (1) They are going against article1, section8 of the Delaware Constitution(2) The judges are making their own rules up, and adding with the law and making seems legitimate such as Rule 7(a)(b). which is not enacted to the Superior Court criminal rules.

The Constitution in Delaware that was enacted at the Constitutional Convention back in 1897 by the Founding fathers ten lawyer delegates at Delaware Constitutional Convention, made it forever to be carried out, not eliminated or taken from, the Delaware Constitution. Such as the law makers, Judges are erroneously practicing, are forbidden to incorporate Rule of law within their own meaning of personal or professional gain, to stand as law, without an Delaware Convention, This is over-riding and above the law. (Emphasis) If this type of illegitimate practice continues, Peoples rights will continue to be violated, the Delaware Constitution will be meaningless, disregarded, intentionally by the law makers, and Judges whom is to carry out, and above the law. In order amend or enact a rule of law within the Delaware Constitution by the law makers and Judges, there must be an Delaware Convention to enact Rule 7(a) & (b) of Superior Court Criminal rule into the Delaware Constitution article I, section 8 on waiver of indictment to make it an legitimate Rule 7(a) & (b) into the Superior Court Criminal rules. of the Delaware Courts. The people of Delaware must vote to enact Rule 7(a) & (b) add to the language of article I section 8 of the Delaware Constitution through and by the legislation, with the approval of the Delaware Supreme Court. This have not been done at this point of the present day, Which makes Rule 7(a) & (b) of Superior Court Criminal rules is unconstitutional.

Please see Exhibit (B-8) one Pennsylvania Constitution. Article I, Section 10 (Quote) Except as hereinafter provided no person shall for any indictable offense be proceeded against criminally by information (End of Quote). Again Identical to Article I, section 8 of the Delaware Constitution (Language same)

Exhibit (B-2) see Commonwealth v. Brown 247, Pa. Super, 401, 372 A.2d 887 (1977). Page(2)1. Pa. amended its constitution so it could enact the statues and court rules governing prosecution by information. In brown [1] Appellant first contends the grand jury had no power to issue an indictment in his case and that proceeding could only be instituted by information. Prior to November 6, 1973, Article I section 10 of the Pennsylvania Constitution prohibited the initiation of criminal prosecution by information. On November 6, 1973, Pennsylvania voters approved a constitutional amendment which provided, in pertinent part: "Each of several courts of common pleas may, with the approval of the Supreme Court, provide for *404 the iniation of criminal proceedings therein by information filed in the manner provided by law." On December 17, 1973 the president judge of the Court of Common Pleas of Philadelphia County petitioned the Supreme Court for permission to replace the system of grand jury indictments with a system of instituting proceedings by information. This change would be effective on January 1, 1974. The Supreme Court granted this petition. During the month of January 1974, an indicting grand jury continued to function in Philadelphia [FN4] and on January 24, the grand jury indicted appellant.

On February 27, 1974, the president judge petitioned the Supreme Court for permission to postpone the effective date of iniation of criminal proceedings by information; the Supreme Court granted this petition. On October 10, 1974, the pennyslvania legislature passed legislation imple-menting a system of iniating prosecutions by information in counties which had recieved the supreme court's permission

-24-

to institute such a 889 system. [FN5] The legislative specified the procedures to be followed in Prosecutions iniated by information. On October 22, 1974, the president Judge once again petitioned the Supreme Court to permit the use of informations instead of indictment by grand Jury, once again, the Supreme Court granted the petition, effective January 1, 1996. On December 23, 1974, the Supreme*405 court issued the following final order which terminated the the Parade of Petition and post-ponements:

   This is how article 1, Section 10 of Pennsylvania Constitution used to read before and after the people of Pennsylvania, voted to amend or add the Underlined Language to Article 1, section 10 as seen above. CommonWealth v. Brown, 372, A.2d 887, 888 (Pa) 1977, Shows that on November 6, 1973,

   The people of Pennsylvania held a constitutional convention inorder to Amend the Language of Pennsylvania Constitution Article 1, Section 10, so the Supreme Court and the Pennsylvania legislature could then enact its Court rules and statues permitting waivers of indictments an allowing prosecution of indictable offenses [Felonies] by informations. See CommonWealth v. Brown, (attached). Delaware must do the same to enact 7(a) 8 (b) an identical process to be made as its neighboring state Pennslyvania

into the Superior Court criminal rules, to be amend and enacted into Article I, section 8 of the Delaware Constitution. See Commonwealth of Pennsylvania v. Alfred Earl Webster Supreme Court of Pennsylvania 426 Pa 125, 337 A.2d 914, 1975 Pa Lexis 841, Opinion of the Court the prior Article I, Section 10 prior to 1973, and present rules implementing amended section 10. Act of October 10, 1974, PL,– NO. 238 §§ 1-6 (to be codified as 17 PS, § 271-276) Pa. R. Crim. P. 3, 225-32, 240, 19 PS Appendix EXHIBIT B-9)

In Shoemaker v. State 375 A.2d 431 Del. (1977) while definitions of waiver are, the classic view is that a waiver is an"·····intentional relinquishment or abandonment of a known or privledge. Id. at 1023. In recent years, the Supreme Court has somewhat simplified the concept, noting that an election to forgo a known right will be binding as long as the elector "knows what he is doing and his choice is made with eyes open. "Adams v. United States Supra; 63 S.Ct. at 242; Faretta v. California supra; but the State has the burden of showing that such waiver is made knowingly and intelligently Miranda, Supra; 86 S.Ct. at 1630. Del. Const. Article I, section 8 Super. Ct. Crim. Rule 7(a)&(b) Harris v. State, supra; Wing v. state, Del. Supr; 690 A.2d 921 (1996); Coffield v. State, Del. Supr; 794 A.2d 588,591 (2002) and Summers v. State, Del. Supr; 854 A.2d 1159 (2004). Del. Const. Article I, section 8 provides: no person shall for any indictable offense be proceeded against criminally by information." no waiver exception to this express prohibition can be found in Article I, Section 8 or anywhere else in Delaware's Constitution, which makes Superior Court. Criminal Rule 7(a)&(b) inconsistent and unconstitutional.

A Final note before closing Section II on Fraudulently prepared waiver of indictment. I want to quote a small portion of third circuit Court's opinion in United States v. Goldstein, 502 F.2d 526, 529 (3rd Cir. 1974) "Two Functions of an indictment are to apprise the defendant of the charge of which he is accused and to provide protection against re-prosecution should an acquittal result... But there is a third and very important aspect of the indictment process, where the duty of the Grand Jury is to shield a citizen from unfounded charges and to require him to appear in Court in defense, only if probable cause has been found by the independent body. Until that prequisite has been met, the accused is not properly before the Court. This screening process of the Grand Jury is a substantial benefit to an accused person and in this case of serious crimes it is Constitutionally guaranteed. Without going further into the Supremacy clause argument and how Crim Rule 7(b) is unconstitutional because it is Contrary and repundant to the clear express language in <u>Del. Const. Article I, Section 8</u>, which prohibits prosecution of indictable offenses (Felonies) by information; for a waiver of indictment to be valid and binding under <u>Rule 7(b)</u> it must be made "Knowingly and intelligently," after the defendant has been advised of his rights and nature of the charges, and he waives in-writing or in open <u>Court</u> prosecution by indictment." This is well established under both state and Federal law. See Commonwealth v. Phillips, 220 A.2d 345, 346-47 Pa (1966); William v. United States, 289 F.Supp. 730, 731 D.Del. 1968)

-32-

Smith v. United States 304 A.2d 28, 31 (D.C. 1973); State v. Hastings, N.H. Super, 417 A.2d 7, 8 (1980); Davis v. State, Del. Supr, 809 A.2d 565 (2002); United States v. Jimenez, 54 Fed. Appx. 369, 370 (3rd cir. 2002); United States v. Simms, 69 Fed. Appx. 524, 526 (3rd cir. 2003) and United States v. Rafaela-Morales 30 Fed. Appx. 634, 636 (7th cir. 2002).

"A waiver is an intentional relinquishment or abandonment of a Known right or priviledge" Johnson v. Zerbst, 304. U.S. 458, 464, 58 S.Ct 1019, 1023 (1938), also "A defendant's right to waive grand jury indictment is his exclusive right and should not be recommended or insisted upon by either the Court or prosecution" Hastings, 417 A.2d at 8. Also the Fraudently prepared waiver of indictment, that Miller was coerced into signing on the Date of December 3, 1992 that came from the public defenders office, is illegal and unconstitutional for waiving two seperate rights at the same time, one waiver form at a sheduled preliminary hearing, which Superior Court Criminal Rules 5(d) and 7(v&(b) are two different express waivers. This is grounds for reversal. End of Section II to ground one amended petition On Fraudently prepared waiver of indictment.

Appellant Miller contends the Five (5) Felony charges that the state placed on him upon his arrest on November 29, 1992 are Serious Felonics, inwhich the state Deputy attorney generals office used and gotten a conviction on the three (3) main Felonies. At this point of case, Miller had to be indicted on the felony charges, he could not waive indictment or in lieu of presenting it to the grand jury for indictment, to be tried off of information either voluntarily or involuntarily in the state of Delaware. (Reason The Grand Jury is to examined all Felony charges.

Section III begins

To the person subject to trial by Delaware Courts for an indictable offense, the right to grand Jury presentment is enshrined in Del. Const, Article I, Section 8 and the powers and attributes of the Grand Jury are as they were at Common law. In re Petition of Jessup, 50 Del. 530, 136 A.2d 207 Super. Ct. (1957) Emphasis Miller cannot be held responsible for the wrongs that came from the public defenders office, nor the deputy attorney generals office. End of Emphasis). In Ex parte McClusky (C.C. Ark) 40 F. 71, 74 the Court said that the provisions of the Fifth Amendment that no person shall be held to answer for capital or otherwise infamous crime unless on a presentment or indictment of a grand Jury provides for a requisite to Jurisdictional and that a party cannot waive a constitutional right when it effect is to give a court jurisdiction. (Emphasis) Such as having the full absolute right to be indicted) Section 205 is jurisdictional in Nature). Section 205(b)(1) 11 Del. C. States in unequivocal terms that prosecution for any felony except for Murder must be commenced within the (5) years after it is committed."

Miller explains that the statue of limitation started from his arrest on November 29, 1992, and ended November 29, 1997 (5) years. Without being indicted by a Delaware Grand Jury. The state Attorney and Deputy attorney Generals office and Superior Court lost subject Matter Jurisdiction over Miller. The State had, but lost the opportunity to indict him within the (5) years statue of limitations of the serious felony charges they placed on him. From November 29, 1997 up to the present day, the prosecution is barred to indict or prosecute Miller; 11 Del. C. 207 and 208 describe those situations where a Prosecutor is barred by a former prosecution

-29-

For the same and different offenses respectively; That also precludes the prosecution for a lesser included offense, May not commence outside the time limits for a prosecution on that offense by original indictment or information, 11 Del. C. §205.

Miller contends that his state and Federal Constitutional rights to be free from illegally being detained was violated, and that he is still being illegally detained by the state with serious felony charges from a fraudently prepared waiver of indictment, from the public defenders office, dated December 3, 1992, of two seperate rights in one express form at an scheduled preliminary hearing. (See Exhibit B Fraudulent waiver (B-1)) This violates his constitutional rights to the (5th amend) for not being indicted by a Grand jury. 6th amend for not recieving a fair proper trial, and 14th amendment Section 1. nor shall any state deprive any person of life or liberty, without due process of law. The Deputy attorney General's office, Public defenders office, and Superior Court violated their very own procedures of Superior Court criminal rule 5 and 7 whom gotten an conviction thats not justified by Delaware law behind their erroneous practice where no fixed rules exist. In Cane v. State Del. 560 A.2d 1063) As is aptly stated in the Commentary to the Delaware Criminal Code:

Several important policies underlie a statue of limitations in criminal cases. The most persuasive is the fact that after a certain time, evidence tending to prove or disprove criminal liability becomes stale. Witnesses die, move away, or forget, physical evidence disintergrates, and it becomes impossible to ascertain what actually happened. Statues of limitations may also be viewed as statue of repose.

(Foot note) In Cane v. State Del. 560 A.2d 1063) As is aptly stated in the commentary to the Delaware criminal Code:

-30-

## THE RIGHT TO AN INDICTMENT

The Fifth amendment states that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a Grand Jury..... In an early case the Supreme Court made clear that an indictment was an indispensable jurisdictional ingredient of the Court's power to try a defendant. Miller argues that the Felony charges the State placed on him, and convicted him are in the highest degree, of what the charges carry in a Felony prosecution, is only upon an indictment by a grand jury.

Johnson v. State cite as Del. Supr. 711 A.2d 18 (1998)

### History and Origin Grand Jury Indictment

The institution of the grand jury has a venerable history in England. For centuries, when conflicts arose between the powers of the English monarchs and the rights of the subjects, the grand jury was a barrier against persecution in the sovereign's name. Over time, the grand jury "came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the crown".[6] The English grand jury system has been an integral part of America's jurisprudence ab initio.[7] The Fifth amendment to the United States Constitution provides that Federal prosecution for serious crimes must be iniated by a grand jury indictment.[8] The perpetuation of the grand jury's historic function in the United States Constitution as the sole method for preferring charges in serious [Federal] Criminal cases shows the higher place it held as an instrument of Justice."[9] Like its English progenitor, the Fifth Amendment grand jury provision was intended to operate as an

independent and objective method for commencing a serious criminal proceeding.[10]

5. Del. Const. art 1,¶8.

6. Ex parte Bain 121 U.S. 1, 11, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

7. Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406 100 L Ed 397 (1956).

8. Costello v. United States, 350 U.S. at 361-62, 76 S.Ct. 406.

9. Costello v. United States, 350 U.S. at 362, 76 S.Ct. 406.

10. Costello v. United States, 350 U.S. at 362, 76 S.ct 406.

11. Barron v. Baltimore, 32 U.S. (7 pet) 243, 8 L.Ed 672 (1833).

12. See McCool v. Gehret, Del. Supr, 657 A.2d 269, 281 (1995) For the discussions regarding the incorporation of the Federal Bill of Rights into the Due Process clause of the Fourteenth Amendment thereby making them applicable to the states, see Louis Henkin, "Selective incorporation in the Fourteenth Amendment, 73 Yale L.J. 74 (1963). See Richard C. Cortner, the Supreme Court and the second Bill of Rights: The Fourteenth and the Nationalization of Civil Liberties (1981), Akhil Reed Amar, The Bill of Rights and the Fourteenth Amendment 101 Yale L.J. 1193 (1992); Michael K. Curtis, The Fourteenth Amendment and the Bill of Rights, 14 Conn. L. Rev. 237 (1982); Charles Fairman, Does the Fourteenth Amendment Incorporate The Bill of Rights? 2 Stan. L. Rev. 5 (1949).

13. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed. 2d 491 (1968).

14. Minneapolis & St. Louis R. R. v. Bombolis, 241 U.S. 211, 36 S.Ct 595, 60 L.Ed. 961 (1916). See McCool v. Gehret 657 A.2d at 281-82.

## GRAND JURY INDICTMENT STATE CONSTITUTIONAL PROTECTION:

When the Federal Bill of Rights was originally adopted in 1791, those first ten amendments to the United States Constitution

were only a protection against action by the Federal Government.[11]

As a consequence of the adoption of the Fourteenth Amendment to the United States Constitution, many of the guarantees found in the Federal Bill of Rights have been deemed incorporated by the Due Process Clause to provide protection against infringement by state action.[12] The United States Supreme Court has held for example, that the right to trial by jury in a criminal proceeding in state Courts is guaranteed to defendants by the Fourteenth Amendment.[13] Conversely, the seventh amendment guarantee of jury trials in a civil proceeding has not been held to be binding upon the states by incorporation through the Due Process Clause of the Fourteenth amendment.[14]

The Fifth Amendment provisions relating to the grand jury have always been binding upon the Federal Courts. The United States Supreme Court has never held, however, that the Fifth amendment concepts of a grand jury" are applicable to the States by virtue of the Fourteenth amendment incorporation doctrine.[15] In an opinion released only five days after Johnson's case was argued before this Court, The United States Supreme Court reiterated its 1884 holding in Hurtado v. California, noting that the "Fifth amendment requires the Federal Government to use a grand jury to iniate a prose-cution and 22 states adopt a similar rule as a matter of State Law."[16] Therefore, Johnson Constitutional challenge to the Superior Courts amendment of the indictment is based exclusively upon the grand jury protections in the Dela-ware Constitution.

DELAWARE CONSTITUTION 1897 GRAND JURY DEBATE

(FOOT NOTE) Delaware Constitution 1897 grand Jury debate).

- 33 -

At common Law, both in England and in Colonial America, no one could be proceeded against in a criminal prosecution, for an indictable offense, unless a true bill was returned by the grand Jury.[17] That common law right was preserved in the Original Delaware Constitution of 1776. It has been set Forth explicitly in every subsequent Delaware Constitution. The Purpose of requiring indictment by a grand Jury in the 1776, 1792, and 1831 Delaware Constitution, and specifically prohibiting proceeding by an Attorney General's information, was to limit a person's jeopardy for criminal offenses to those felony charges

15. See Hurtado v. California, 110 U.S. 516, 538, 4 S.Ct. 111, 28 L.Ed. 232 (1884). Alexander v. Louisiana, 405 U.S. 625, 635, 92 S.Ct 1221, 31 L.Ed. 2d 536 (1972) (Douglas J. Concurring).
16. Campbell v. Louisiana, — U.S. —, 118 S.Ct. 1419, 140 L.Ed. 2d 551 (1998).

17. See Ex parte Bain, 121 U.S. 1, 7 S.Ct 781, 30 L.Ed. 849 (1887) 4 William Blackstone, Commentaries **299-303; 1 Holdworth, History of English Law 312-323 (1927).
18. See Stirone v. United States, 361 U.S. 212, 218 80 S.Ct. 270, 4 L.Ed 2d 252 (1960).

that are brought by a group of his or her fellow citizens, who are acting independently of the prosecuting attorney.[18]
During the Delaware Constitutional Convention of 1897 there was a proposal by Edward G. Bradford Jr.[19] to eliminate the right to indictment by a grand Jury for certain felonies.
One of the delegates who spoke in opposition to that suggestion was William C. Spruance (Spruance) a prominent

lawyer from New Castle County,[20] Spruance acknowledged the history of integrity established by prior Delaware Attorney Generals.[21]

Nevertheless, in urging the 1897 Convention not to remove the grand jury protection that had existed in the Delaware Constitutions of 1776, 1792 and 1831 Spruance stated: But I want this Convention to know, and the people of Delaware to know, that I hold my liberties at the mercy of no man. I had my head erect.

I obey the laws of my state and my country, and I want no law to be made—no Constitution made—that shall subject me or put me at the mercy of any Attorney-General.

More than that, I do not want it to be in his power to transfix me before the Public gaze as a violator of the law, and bring me to the bar of public opinion at his own sweet will. I want to put a curb in his mouth that before he shall open it to make a public accusation against me, he shall make it before a grand Jury with his witness there to make out a prima facie case. I want this done before he shall have the power to drag me before the bar of Public Opinion, much less before he shall drag me before the judges for trial as to my guilt or innocence.

19. Bradford served as a Federal District Court Judge for Delaware from 1897 to 1918.

20. Spruance had been the United States Attorney for Delaware from 1876 to 1880. He became the First Superior Court resident Judge of New Castle County after the Delaware Constitution of 1897 was adopted and served until 1909.

21. Those high standards have been maintained by Delaware Attorney Generals to this day. See Kipp v. State, Del. Supr. 704 A.2d 839, 842 (1998). (Prosecutor's confession of error.) And when at last that ordeal has been passed, when having got to a trial—

not by the will merely of the Attorney General or allowed not to be tried by his Forbearance but when I am brought to trial by a Finding of the grand Jury of my state then I want something more.

I want a trial by a jury of my countrymen.[22] Ten of the thirty delegates to the Delaware Constitution Convention of 1897 were lawyers.[23] The debates during the 1897 Convention reflect a depth of scholarly knowledge about the historic evolution of the common law and the role reserved for the states vis a vis the role delegated to Federal government in the United States Constitution.[24]

The 1897 debates discussed the common law role of both the grand Jury and the petit jury. Spruance also read at length from the commentaries on the law of England written by that Country's pre-eminent eighteenth Century legal authority William BlackStone, which states, "The Law has therefore wisely placed this strong and two-fold barrier of presentment and trial by Jury between the liberties of the people and the prerogative of the Crown."[25] The 1897 debates noted that prior to the Revolutionary War, John Dickinson had studied the common law of England at the Middle Temple, making Dickinson a contemporary Colleague of William BlackStone at that Inn of Court in London.[26] This was Significant for two reasons. First, John

22. Comments of William C. Spruance, in 1 Debates and proceedings of the Constitutional Convention of the State of Delaware 1896-1897, at 591 (1958) (hereafter Debates).
23. The ten lawyer-delegates were Edward D. Hearn, Woodburn Martin, and Charles F. Richards of Sussex County; Ezekiel W. Cooper of Kent County; and John Biggs, Edward G. Bradford, Jr, Martin B. Burris,

−36−

Charles B. Evans, Robert G. Harman, and William C. Spruance of New Castle County. See Henry R. Horsey, Henry H. Herndon Jr, of 1897 in The Delaware Constitution of 1897: The First one Hundred years 60 (Randy J. Holland) et al, eds. (1997).

24. See e.g. Comments of William C. Spruance, in 1 Debates, at 586-87 (reading from 3 J. Story, Commentaries on the Constitution of the United States §§ 1772-77, 1780 (1833). Dickinson was elected president of the Delaware Constitutional Convention in 1791." Second, the provision requiring grand Jury indictments were first specifically identified in the Delaware Constitution of 1792, where "all of the fundamental features of the jury system, as they existed at common law [were] preserved for Delaware's citizens."[28] Moreover, the 1897 Delaware Convention specifically addressed the implications of the 1884 holding by the United States Supreme Court in Hurtado v. California, that the Fifth Amendment grand Jury right in the United States Constitution did not apply in state Court criminal proceedings."[29] Further response to the suggestion that grand Jury indictment be eliminated in favor of prosecution by information for certain offenses. Mr. Spruance described presentment of an indictment by a grand Jury before permitting the commencement of a felony prosecution as the "other Palladium of liberty" — the first being trial by petit jury.[30] In support of retaining the grand Jury section in the Delaware Constitution, William C. Spruance argued, in, Part;

I Have had some experience in that business. I have been District Attorney and Assistant District Attorney of the United States, and of Course I never had occasion to go beyond the express provisions

of the Constitution, and never filed an information in my life.

I prepared indictments and sent them before the grand jury...

25. Comments of William C. Spruance, in 1 Debates at 581 (quoting 4 William Blackstone Commentaries *343). See also Comments of William C. Spruance, in 1 Debates, at 587-88.

26. Comments of William C. Spruance, in 1 Debates, at 582; Dudley Cammet Lunt, Tales of the Delaware Bench and Bar 77 (1963).

27. Claudio v. State Del. Supr, 585 A.2d 1278, 1295 (1991).

28. Claudio v. State, 585 A.2d at 1298.

29. Comments of Edward G. Bradford, Jr, in 1 Debates, at 563-64, 580.

30. Comments of William C. Spruance, in 1 Debates at 587.

The Constitution of the United States interposes a bar so far as the District Attorney of the United States is concerned. It imposes a bar between the Executive officers and the citizens in this that they shall not bring this man to trial; they shall not make this charge except through a grand Jury which sits in secret hears one side of the case and does not hear anything for the defense. It hears all the prosecuting witnesses may have to say upon the subject and what the prosecuting attorney may have to say and the Constitution says to him if you cannot make out a prima facie case to the satisfaction of the grand Jury then that man shall never be called upon to answer to that charge.

Our forefathers found that a safe protection; and my forty years and more of experience in the practice of the administration of Justice leads me to give my hearty and unqualified approval to the system I hope never to see it abolished. If the prosecuting officer cannot make out a case to the satisfaction of the grand Jury.... Then the accused should go Free.[31]

The proposal to limit the fundamental rights of a grand Jury indictment and a jury trial was probably the most hotly debated item of the Convention."[32] When the debates ended, the Grand Jury and jury trial protections of the 1776, 1792 and 1831 Delaware Constitutions were retained in the 1897 Delaware Constitutions Bill of Rights.[33]

31. Comment of William C. Spruance, in 1 Debates, at 588. In Contrast, the former chief Judge of the New York Court of Appeals, Sol Wachtler, is reported to have stated publicly that if requested by the prosecutor, a New York grand Jury would indict a ham sandwich. See People v. Carter 77 N.Y. 2d 95, 564 N.Y.S. 2d 992, 997, 566 N.E. 2d 119, 124 (1990) Titone, J, dissenting) (Citing Wolfe, The Bonfire of the vanities, at 603, quoting Chief Judge Wachtler. That disparaging view of the grand Jury was not shared by either the Framers of the United States Constitution, or the authors of the Delaware Constitutions, and has not been shared by any subsequent Delaware General Assembly or this Court.

32. Rodman Ward Jr. and Paul J. Lockwood Bill of Rights Article 1, in the Delaware Constitution of 1897: The First one Hundred years 81 (Randy J. Holland et al. eds; 1997). It is poignant to note that one Hundred years later, the United States Supreme Court has reaffirmed the views expressed by Spruance in 1897, by stating," the grand Jury, like the petit jury, acts as a vital check against, the wrongful exercise of Power by the state and it's prosecutors.[34]

DELAWARE CONSTITUTION COMMON LAW
GRAND JURY

The Delaware Bill of Rights in Article 1, section 8

Of the present Delaware Constitution of 1897 provides: No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the land or Naval Forces, or in the Militia when in actual service in time of war or public danger... The effect of the decision in 1897 to retain this section from the Delaware Constitution of 1792 and 1831 in the present Delaware Constitution is two fold; First" to establish the grand Jury as a Constitutional body." and Second" to preserve the historical and highly prized safeguard of grand Jury action" with its common law powers and attributes except as modified by other provisions of the Delaware Constitution)."[35]

At its common law inception, an indictment could be amended only by the Grand Jury that had returned the true bill.[36]

The Common law evolved to permit Judicial amendments to indictments as to matters of form,

33. Del. Const. art I, §8. See also Claudio v. State, Del. Supr, 585 A.2d 1278, 1297 (1991).

34. Campbell v. Louisiana – U.S. at ___, 118 S.Ct 1419, 140 L.Ed.2d 551 (quoting) Powers v. Ohio, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed .2d 411(1991).

35. In re Opinions of the Justices, Del. Supr, 88 A.2d 128, 131 (1952), Quoting State v. Lyons, 5 A.2d 495, 497 (1939).

36. State v. Blendt, Del. Super, 120 A.2d 321, 324 (1956).

With the concurrence of the Grand Jury.[37] The rationale for the Common law rule consent requirement was that, "Since an indictment was the act of the Grand Jury under oath, the Court could not make alterations without the grand Jury's authorization."[38]

41. See State v. Blendt, 120 A.2d at 324.

42. State v. Blendt, 120 A.2d at 324.

indictments to be amended as to form, but not as to substance.[44]

The right to have the grand jury make the charge on its own judgement is a right that remains guaranteed by the present Delaware Constitution of 1897. If the Superior Court could amend indictments substantively at the prosecutors request, the state would have the power to obtain convictions based on theories or on evidence possible rejected, or not considered, by the grand jury. Justice Miller, writing for the United States Supreme Court, stated: "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it aught to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held answer, may be frittered away until its value is almost destroyed."[45]

For more than two hundred years Delaware's Constitution have afforded its citizens the right of being proceeded against in a felony criminal prosecution only upon an indictment by the Grand Jury. The prejudice caused by the Superior Court's substantive amendment of an indictment is always the same the defendant loses the protection of being proceeded against in a felony prosecution

In Furtherance of the Common law principle, the grand Jury, at the time it was sworn, consented to amendment of its indictments by the Court, with regard to matters of form, but not matters of Substance.[39] This Common law practice has been continued in Delaware. Today "the consent of the grand Jury to amendments of matters of form is obtained. When the grand Jury presents its indictments to the (Superior) Court."[40] In Delaware when indictments are accepted from the fore person in open Court, the grand Jury is assembled and the Prothonotary ask the Following questions:

Do you have any bills or presentments to hand to the Superior Court?

Are you content that the Superior Court shall amend any matter of form without your consent, Providing nothing of Substance is Charged?

If the First question is answered affirmatively, it is routine for any affirmative response to be made to the latter inquiry also.[41] Pursuant to this historic practice in Delaware, by virtue of which the prior consent of the grand Jury is obtained, the Superior Court is authorized to amend indictments as to matters of form only.[42]

Accordingly, Rule 7(e) of the Superior Court Criminal Rules permit an indictment to be amended before verdict if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." This rule reflects the common law grand Jury principles that have been embodied in the Delaware Constitution.[43] The Delaware Bill of Rights permits grand Jury.

37. State v. Blendt 120 A.2d at 324.
38. State v. Blendt 120 A.2d at 324.
39. State v. Blendt 120 A.2d at 324.
40. State v. Blendt 120 A.2d at 325.

— 41 —

Only upon indictment by the Grand Jury that is guaranteed by Delaware Constitution.[46]

43. Del. Const. art. 1 §8.

44. See State v. Blendt, 120 A.2d at 324.

45. Stirone v. United States, 361 U.S. 212, 216, 80 S.Ct. 270, 4. L.Ed.2d 252 (1960) (quoting Ex parte Bain, 121 U.S. 1, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

46. Del. Const. art 1 §8.

## IN CLOSING, ARGUENDO,

The Court and State Attorney Generals office, cannot consider back then, and now that the serious felony charges placed on defendant, that he was not to be indicted by Delaware Grand Jury, The Delaware Constitution Art. 1 section 8 of 1897 to retain this section of 1792 and 1831 in the present Delaware Constitution afforded its citizens the right of being proceeded against in a Felony criminal prosecution only upon an indictment by the Grand Jury. (Def) Miller had the right to be indicted upon his arrest November 29, 1992 on the Felony charges, in which he never been indicted. The Five year statue of limitations was up on November 29, 1997. Miller contends he is being unlawfully detained by the State Attorney Generals office, and Superior Court on bogus charges that he was coerced into signing an illegal, unconstitutional waiver from the Public defenders office, dated December 3, 1992. This is a Fraudently prepared waiver. His State and Federal Constitutional guarantees were violated. The state Attorney General's office, and Superior Court lost subject Matter jurisdiction over Miller, when his (5) Five year statue of limitations was up on November 29, 1997.

His Sixth Amendment, (6th) Fifth Amend (5th), and the subsequent Due Process Clause of the Fourteenth Amendment (14th) of State and Federal Constitutions were violated. Both of Miller's Convictions are illegal, and unconstitutional up to this Present day. The State Attorney Generals, Deputy Attorney Generals office had the opportunity to send the felony charges to the Grand Jury for presentment and examination from arrest on November 29, 1992 To November 29, 1997 within the (5) year statue of limitations, but they failed to do so.

Wherefore by and through one or all arguments raised herein, This case must be reversed, remanded with instructions for the defendant's Freedom must be mandated.

Thomas R. Miller
THOMAS R. MILLER
DCC 1181 Paddock Rd.
SMYRNA, DEL, 19977

DATED: June 26, 2008

I/M THOMAS R. MILLER
SBI# 144108    UNIT 22- B-U-5
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
844 N. KING STREET, LOCKBOX 18
WILMINGTON DEL
        19801- 3570

LEGAL MAIL