IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THOMAS R. MILLER
      Petitioner,

V.

PERRY PHELPS
      Warden.

STATE OF DELAWARE
ATTORNEY GENERALS
OFFICE.

Civil case NO. 1:08 CV 137 (GMS)

ON #2254 HABEAS CORPUS APPENDIX
TO LAW.

APPENDIX TO AMENDED PETITION TO GROUND,
ONE FOR RELIEF #2254 HABEAS CORPUS, MEM-
ORANDUM OF LAW.



FILED

JUL - 1 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

B scanned

DATE:_____

THOMAS R, MILLER

1181 PADDOCK ROAD
SMYRNA, DE 19977

APPENDIX TO AMENDED PETITION TO
GROUND ONE #2254 HABEAS CORPUS
RELIEF.                                        · PAGE

See Exhibit 4 page Documen on Preliminary hearing on criminal
cases in Delaware.                                              1

See Exhibit (A-17 thru A-21) (A-64) (A-70) (A-5-6) (A-22) A-27
For the Court to take notice: (A-68) (A-65) (A-69) (A-71)(A-73)
A-46 thru (A-49) (A-74) (A-72) (A-76) (A-75) These exhibits
cannot be located from Miller. But they will be with record
sent from Superior Court prothonotary's office. Also the
March 11, 1994 Post conviction hearing.

See Exhibit (B-1) state's answering brief to Miller's open-
-ing brief page 23 TO 32.                                        7

See Exhibit (B-2) Delaware Supreme Courts decision on
Speedy trial violation page 8 to 10. -                          7

See Exhibit (B-3) one original Court docket with (5)
Felony charges                                                  13

See Exhibit one Superior Court criminal rule 5 prelim-
inary examination.                                              16

See Exhibit (B-5) one superior criminal rule 7(a)(b)            16

See Exhibit B-6) 3 page preliminary sheet.                      17

See Exhibit B-7) one Delaware Constition Article l
Sec 8.                                                          21

See Exhibit B-8 one Pennsylvania Constitution Article l,
Section 10. Also in conection,                                  23

See Exhibit (B-8) See Common Wealth v. Brown 247, Pa.
Super; 401, 372 A.2d 887 (1977) page 2,83 at 1                  24

See Exhibit (B-9) one Common Weath of Pennsylvania
V. Alfred Earl Webster opinion of the Court on the
prior, and present Article l section 10 of the
pennsylvania Constitution.                                      26

See Exhibit (B-10) one Fraudently Prepared waiver
Form from the public defenders office of two
seperate rights in one express form at a
Scheduled preliminary hearing.                                  30

THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND For Sussex County

THOMAS R. MILLER

Ssex Correctional INSTITUTION

GEORGETOWN, DE 19947

STATE OF DELAWARE

         PLAINTIFF

    VS.

THOMAS R MILLER,

    DEFENDANT

*
*
*
*
*
*
*

Superior CourT OF DELAWA

Sussex County

LAW DIVISIO

IN RE: Cr. A. NOS. S92-12-(

- 0046 DEF. ID# 92s05488

NOTICE OF MOTION TO DISMISS INDICTMENTS

TO: ASSIGNMENT. JUDGE
    Sussex County CourTHouse
    Georgetown, DEL 19947

PLEASE TAKE NOTICE, That on MAY 29th, 1993, or on the First
Motion day as the above entitled matter may be heard, the Defenda:
Thomas R MiLLER, Proceeding pro se, Shall move before this
Court to dismiss The above captioned INdictments on the
-sis of a violation of defendants right to a speedy trial.

The Defendant Shall rely on the attached Supporting Pape.

                        Thomas R Miller
                        Defendant, Pro se.

A-17

```
..omas R Miller              *      Superior Court Of Dela..
-ussex Correctional INST.    *         Sussex County
Georgetown, DEL 19947        *         LAW DIVISION
                             *      IN
  STATE OF DELAWARE,         *      Criminal Action
          PLAINTIFF          *    RE: CR. A. NOS. S92-12-00..
       VS.                   * -0046 Def. ID# 92S05488
THomas R MILLER,
          DeFendant
```

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INDICTMENT

## PROCEDURAL STATEMENT OF FACTS

ON NOVEMBER 29Th, 1992, I The DeFendant was arrested.

The STATE oF Delaware has made no eFFort whatsoev.. .. secure, I The DeFendant' Presence For trial on the .. .stant matter.

## I The DeFendant Has Been DENIED HIS RIGHT TO A SPEEDY TRIAL

The sixth Amendment to the United States Constitut Provides that the accused in a criminal matter sho ave the right to a speedy trial. This right is Funda ental and imposed on the States by the Due proce Lause oF the Fourteenth amendment. KLOPFER V. — oRTH CaroLIna,  386 U.S. 213, 87 S. cT. 988 (1967). N The UNITED STATES supreme Court IN BARKER V. — INGO, 407 U.S. 514, 530, 92 S. CT. 2182, 2191 - 2192 (1972), stablished "a balancing test, in which the Conduct oF th the Prosecution and defendant are weighed." e Barker Court enumerated Four Factors to be cons ed whenever a claim oF a speedy trial Violation aris he Length oF the delay, (2) the reason For delay, (3.) e defendant's assertion oF his right, and (4). the judice to the defendant. The Barker court notec wever, that;

e State's vague commitment to bring the I the DeFenda trial as some point in the Future, as evidenced by s not having made any eFFort whatsoever to secu FENDANT'S Presence For trial, is entirely contrary the basic right to a speedy trial. IT is the State ', "to make a dilligent and good-Faith eFFort to ure the Presence oF the accused From the stodial jurisdiction and afford him a trial.".

IN UNITED STATES V MARION, Supra,

The Supreme Court recognized that intentional Prosecutorial delay could be employed as a dev. for hampering the defense and such would Constitute a denial of Due Process.

THE BARKER Court addressed the problem:
"A deliberate attempt to delay the trial in order to amper the defense should be weighed heavily against the government." Id., 407 U.S. at 531, 2 S.CT. at 2192 (Foot note omitted)

N the, United States V LARA, 520 F. 2d 460 ( D. in 1975) The Court dismissed INDICtments again ertain defendants as a violation of speedy tria l re it was determined the delay was the results vernmental Maneuvering in seeking an advantage ver defendants.

though a great many accused person seek to put F the confrontation as long as possible, the flight to a mpt inquiry into criminal changes is fundamental d it is the duty of the STATE not only to undertak ps to secure a defendant's Presence For trial, when h onfined in another jurisdiction, but as well, it is duty of the Charging authority to provide ca mpt trial. NO valid reason exist For the delay in th : t case and, there fore, said delay, with it's sequent Prejudice is intolerable as a matter of

Constituting a deprivation of defendant's right
a speedy trial. DICKEY V. FLORIDA, SUPRA, 398 (
at 38, 90 sct. at 1569.

The speedy trial Clause serves the public interest
enalizing OFFicial abuse of the Criminal process and
iscouraging OFFicial Lawlessness. the delay herein is
ntolerable, the reason inexcusable and Prejudice
ndefensible. The Manifest injustice which has been ti
ole Product of the STATE has violated the precepts
ie Sixth Amendment's guarantee of speedy trial and
ie due Process clause of the Fourteenth Amendment,
s well as basic notions of Fundamental Fairness.
J light of the policies which underlie the right to
eedy trial, dismissal of the indictment against t
the defendant is the only possible remedy.

### MY Conclusion

or the Foregoing reasons I The DEFENDANT
spectfully requests that the Court grant his
otion to Dismiss the instant Indictments.

Respectfully Submitted

Thomas R Miller
Defendant, Pro se

10

1  my evidentiary matters this week on Friday.  So if

2  there are going to be interesting evidentiary

3  questions, my suggestion is that you all anticipate

4  them as best you can and have some authority as to any

5  respective positions that you will take.

6       MS. BEAUREGARD:  Your Honor, one other

7  matter, now that the Court has denied that motion --

8       THE COURT:  You have at least one judge

9  available.  I cannot speak for Judge Lee.  I know he

10 recused as to the Rule 61.  I do not know if it is once

11 recused, always recused.  I do not know if that is the

12 rule or not.

13      MS. BEAUREGARD:  Mr. Miller, prior to my

14 involvement in this case, filed a motion to dismiss the

15 indictments.  He has asked me to renotice that motion.

16 I have researched the motion that he prepared, and I

17 have told him today that I, in good faith, do not feel

18 that I can renotice that based on my research.

19 Nonetheless, I believe he wants this renoticed.

20      THE COURT:  We will hear it then on Monday.

21      MS. BEAUREGARD:  There is a suppression

22 hearing on Monday, also, Your Honor.

23      THE COURT:  We are going to start on Monday

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

A-64

2

1            P R O C E E D I N G S

2            MR. ADKINS:  Your Honor, would the Court like

3    to take Mr. Barnett's motion on Thomas Miller at this

4    time?

5            MR. BARNETT:  Good morning, Your Honor.

6            THE COURT:  Good morning, Mr. Barnett.

7            MR. BARNETT:  I have filed this motion at the

8    request of my client.  I instructed him, in speaking

9    with him earlier on the day that the plea was entered,

10   that I did not believe that it was in his interest to

11   withdraw the plea, that I did not join in it, and that

12   if, in fact, the Court were to order a hearing on the

13   plea, I would be faced with the prospect of being a

14   witness at that hearing by the necessity of my

15   withdrawal.

16           THE COURT:  I do not intend to have a hearing

17   on this plea.  I am merely interested in the State's

18   position more than anything else.  I am satisfied that

19   the dialogue which was carried on between the Court and

20   the defendant in this case gave him an opportunity to

21   make a choice of whether to enter the plea or not to

22   enter the plea.

23           In this particular case with Mr. Miller,

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

A-70

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE | ✱ | CRIMINAL ACTION NO. |
| | ✱ | S92-12-0044 |
| | ✱ | UNLAWFUL SEXUAL INTERCOURSE |
| v. | ✱ | 2ND DEGREE (LIO UNLAWFUL |
| | ✱ | SEXUAL INTERCOURSE 1ST DEGREE) |
| | ✱ | |
| THOMAS RICHARD MILLER | ✱ | S92-12-0045 |
| | ✱ | BURGLARY 1ST DEGREE |
| D.O.B. 03/25/58 | ✱ | |
| DEF. I.D. 92S05488 | ✱ | SENTENCING ORDER |
| SBI # 00144108 | ✱ | |

## ORDER

NOW THIS 16TH DAY OF JULY, 1993, IT IS THE ORDER OF THE COURT THAT:

As to S92-12-0044:

1.   The defendant having entered a Robinson Plea, is adjudged guilty of the offense charged.

2.   The costs of prosecution are waived.

3.   Effective November 29, 1992, the defendant is placed in the custody of the Department of Correction at Supervision Level 5 for a period of 20 years.  After serving 17 years at Level 5, the balance of this sentence is suspended for 1 year at Supervision Level 4 - Work Release, followed by 2 years of probation at Supervision Level 2, consecutive to any probation previously imposed.

As to S92-12-0045:

1.   The defendant having entered a Robinson Plea, is adjudged guilty of the offense charged.

2.   The costs of prosecution are waived.

3.   The defendant is placed in the custody of the Department of Correction at Supervision Level 5 for a period of 10 years, consecutive to the sentence imposed in S92-12-0044.  After serving 5 years at Level 5, the balance of this sentence is suspended for 5 years probation at Supervision Level 3, consecutive to the probation imposed in S92-12-0044.



Thomas Richard Miller
92S05488
Page 2 of 2


The following special conditions of supervision shall apply:

1.  The defendant shall perform 5 to 35 hours of community service
    work per week while at Supervision Level 3, if not gainfully
    employed.

2.  The defendant shall have no contact with the victim, Martha
    Pederson.

3.  The defendant shall be evaluated for substance abuse and
    follow any directions for counseling, testing or treatment
    made by the probation officer.

4.  The defendant shall be evaluated for emotional and/or
    psychological problems and follow any directions for treatment
    or counseling made by the probation officer.

5.  The defendant shall become and remain gainfully employed.


_____
T. Henley Graves


clj

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | * | |
| | * | |
| v. | * | Cr. A. Nos. CS92-12-0044- |
| | * | 0047 |
| THOMAS MILLER, | * | MOTION FOR POST CONVICTION |
| | * | |
| Defendant. | * | RELIEF |
| | * | |

## MEMORANDUM OF LAW

### STATEMENT OF PROCEEDINGS

Thomas Miller was charged with Unlawful Sexual Penetration, Second Degree, and Burglary, First Degree. On June 16, 1993, defendant entered a plea of guilty to Unlawful Sexual Penetration, Second Degree, and Burglary, Third Degree, as part of a plea agreement. Before sentencing, defendant submitted a motion to withdraw the guilty plea, which was denied by the court. On July 16, 1993, defendant was sentenced to twenty two (22) years incarceration. This is Miller's first post conviction motion.

### STATEMENT OF RELEVANT FACTS

Defendant was represented by Public Defender, Thomas Barnett. Defendant was unhappy with Barnett's representation, and attempted to have him dismissed. The court denied defendant's request to have Barnett dismissed as his attorney. One of the reasons defendant wanted his attorney dismissed was because Barnett refused to communicate with, and keep defendant informed on the status of

his case.  Defendant asked for a copy of the F.B.I. report from his attorney, but his request was never answered.  On the date the guilty plea was entered, 6/16/93, (after the signing of the guilty plea), defendant was then given a copy of the F.B.I. report. Defendant read the report and saw for the first time that there was no evidence in the report, linking him to the crime.  In fact, the report contained exculpatory material.  Upon realizing this, defendant attemped to withdraw the guilty plea (before sentencing) but the request was denied by the Court.

## GROUND I

### INEFFECTIVE ASSISTANCE OF COUNSEL

Defense attorney withheld crucial information, the F.B.I. report, which contained exculpatory material.

The standard of review for ineffective assistance of counsel claims, is the standard set forth in Strickland v. Washington, 104 S. Ct., 2052, and Hill v. Lockhart, 106 S. Ct., 366.  The Hill v. Lockhart, supra, standard applies mainly to guilty pleas, and requires the defendnant to show that counsel's representation fell below objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, result of proceeding would have been different.  In order to satisfy the "prejudice" requirement set forth by the Strickland, supra, standard, defendant must show that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  In this case, if the defendant's attorney had given him the F.B.I. report,

A-8

which shows that there was no evidence linking him to the crime,
defendant would definitely not have pleaded guilty, and would have
insisted on going to trial. Defendant wrote to his attorney, the
Judge, and Deputy Attorney General to obtain a copy of the F.B.I.
report (see exhibits A and B). However, defendant was not
presented with a copy until after he entered the guilty plea.
Defense attorney's actions violated the defendant's state and
federal constitutional right to effective assistance of counsel.


## GROUND II

### COURT ERRED BY ACCEPTING GUILTY PLEA


Before a trial judge accepts a plea of guilty, he must first
determine that such plea was voluntarily and knowingly entered by
the defendant. Boykin v. Alabama 89 S. Ct. 1709. In Boykin, the
High Court ruled that "It was error, plain on the face of the
record, for the trial judge to accept petitioner's guilty plea
without an affirmative showing that it was intelligent and
voluntary." In this case, defendant filed a motion to withdraw
guilty plea before sentencing. Defendant also submitted a letter
from Mr. Roy Smith, a counselor who had been working with the
defendant (see exhibit C), before sentencing. This letter contains
statements made by the alleged victim, during a phone call with Mr.
Smith. The alleged victim's statements raise serious doubts that
any rape was ever committed. The trial judge had this information
available to him when he denied defendant's motion to withdraw
plea. When the trial judge became aware of this information, he

should have allowed defendant to withdraw his guilty plea, and called for further investigation of the alleged incident, to determine if this plea was "intelligent and voluntary." Instead, trial judge denied defendant's motion to withdraw plea, and sentenced him to twenty two years incarceration. Trial judge committed error by violating the provisions of Superior Court Criminal Rule 11, and defendant's due process rights under the state and federal constitutions.

### CONCLUSION

Because of the aforementioned reasons, defendant requests that he be allowed to withdraw his guilty plea, and proceed with trial.

Dated: 8/10/93

Thomas Miller

Thomas Miller
P.O. Box 500
Georgetown, DE  19947

Judge Lee,

I'm writing on behalf of my counsel and to let you k
that I'm not pleased with his assistance.

Your honor, I have sent Mr. Barnett several letters asking
to send me information pertaining to my case.
I want Mr. Barnett off my case or I will sue him in the
District court for ineffective assistance of counsel.
Mr. Barnett has failed to send me copies of paperwork pertaining to m
case such as a copy of the B I test results which is imp
to my defense under Deberry v. state and Rule 16.
and a copy of the victims statements and interviews whi
is ineffective assistance of counsel Strickland v. Washington and
Mr. Barnett haven't informed me of why my trial haven't come u
filed for ~~~ if the case to be dismissed.

Your honor I send this letter with respect, also I will not take
mycological examination I know I don't have a problem I didn't co
his crime the way the police allege I did. If I did why isn't the wit
ing to come forward? I cannot afford a counsel so I ask that you
isn't new counsel under Edward Gibbs v. state (86).

Respectfully submitted.

Thomas Miller

James W. Adkins                    2-23-93                    Richard Mil...
Deputy Attorney General                                      P.o. Box 500
...perior Court                                              Georgetown Del
...orgetown Del, 19947            C.T.A. No.S S92-12-0044 thru 0047

...arl Heller public Defender
...m Barnett
...F. Pine St.
...rgetown Del, 19947

Mr. Adkins

I'm writting in regards of the answer to the motion of discovery. First of all I never received a copy of a motion of discovery. Karl Heller isn't my public defender he don't represent ... and he should of informed you of that.

...lso in your response motion No.2 is incorrect I never gave a taped Statement, you have a copy of the So called police report where do any officer say I gave a taped Statement.

...w could I give a statement and I was Supposed to be intox... which I never was given any tests for.

...want a copy of the Discovery Motion, and the results of the Re. Kit from the F.B.I and the rest of any paper work pertain... my case any Statements from Vic. also, and to examine Vic. ...otes and mine.

I await a response.

Sincerely

Richard Miller

...ard miller

SUPERIOR COURT
OF THE
STATE OF DELAWARE

WILLIAM SWAIN LEE
RESIDENT JUDGE

P.O. BOX 746
COURTHOUSE
GEORGETOWN, DE 19947

December 16, 1993

James W. Adkins, Esquire
Department of Justice
Georgetown, DE  19947

Rosemary B. Beauregard, Esquire
Betts & Beauregard
Georgetown, DE  19947

                    RE:  Cr. A. No. S92-12-0044
                         Def. ID# 92S05488DI
                         Thomas R. Miller

Dear Counsel:

    This will confirm Ms. Beauregard's appointment to represent
Mr. Miller during the postconviction relief proceedings pending in
this Court.

    A hearing on the defendant's Motion for Postconviction Relief
has been scheduled for **Thursday, February 17, 1993, at 9:30 a.m.** in
the Superior Court for Sussex County.  Please notify any witnesses
to be present at that time.

                         Yours very truly,

                         William Swain Lee

WSL:kjt
xc:  Prothonotary
     Thomas D. H. Barnett, Esquire

A-22

SUPERIOR COURT
OF THE
STATE OF DELAWARE

FEB 28 1994
RECEIVED

T. HENLEY GRAVES
JUDGE

February 22, 1994

P.O. BOX 746
COURTHOUSE
GEORGETOWN, DE 19947

James W. Adkins, Esquire
Department of Justice
Georgetown, Del. 19947

Rosemary Beauregard, Esquire
Betts & Beauregard
Georgetown, Del. 19947

Re: **State v. Thomas R. Miller**
**Criminal Action No. 92-12-0044 / Def. ID#92S05488DI**
**Postconviction Relief**

Dear Counsel:

This is to confirm that the hearing set for Thursday, February 18, 1994 was continued due to the fact that Judge Lee has recused himself from the case as his acceptance of the plea is at issue.

Therefore, the case has been assigned to Judge Graves and it has been rescheduled for **Friday, March 11, 1994 at 1:15 p.m.**

Very truly yours,

Joyce M. Collins,
Secretary to Judge Graves

jmc

cc: Prothonotary's Office
    Thomas D. H. Barnett, Esquire
    Case Scheduling Office
    Bailiff's Office
    Karen Taylor

A-27

FOR SUSSEX COUNTY

AMENDED
**COMMITMENT**
3/11/94

STATE OF DELAWARE

vs

THOMAS R. MILLER

AKA: RICHARD T. MILLER   DOB: 3/25/58   B/M

S93-12-0047 - CRIM. TRESS N.P. 12/28

**Criminal Action(s):**

S92-12-0044 - UNLAW. SEXUAL. INTER-
COURSE 1ST DEGREE

S92-12-0043 - BURGLARY 1ST DEGREE

S92-12-0046 - UNLAW. SEX.PENETRATION
2ND DEGREE

**Commitment Date:** MARCH 11, 1994

The above named defendant has been committed by this Court to
the Department of Corrections:

[ ] **SENTENCED:**  DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA IS
GRANTED. BOND IS SET AT $300,000.00 SECURED.
DEFENDANT IS COMMITTED IN DEFAULT OF BOND FOR
TRIAL AT SUPERIOR COURT, GEORGETOWN, DELAWARE ON
MONDAY, MAY 23, 1994, AT 9:30 A.M.

DEFENDANTS VIOLATION OF PROBATION HEARING ON
S91-09-0114 IS CONTINUED TO FRIDAY, JUNE 10, 1994,
AT 9:30 A.M. AT SUPERIOR COURT, GEORGETOWN, DELAWARE.



MAR 14 1994

[ ] **HEARING:**

[ ] **OTHER:**

PER ORDER OF JUDGE ___T. HENLEY GRAVES___

ATTEST _____ PER _____
            Prothonotary                    Clerk

A-39

Smith – Voir Dire    **A-87**

1    really wanted to talk with this lady to find out what

2    was the truth and what wasn't the truth, because I

3    didn't want to waste my time.

4         So I tried to -- I told her who I was.  I

5    told her that I was just calling to get information.  I

6    told her I did not want to waste my time with

7    Mr. Miller if what he was telling me wasn't true.  And

8    then I asked her if I could ask her a few questions,

9    and she told me I could, and then she wanted to know

10   about Mr. Miller.

11        I told her that he was in jail, and that -- I

12   believe I said he was sentenced to ten years, and she

13   said to me, "Oh, that is too long."  And I said to her,

14   "How long do you think he should be in prison?," and

15   she said, "He should be out now," and that was in June,

16   1993.

17        And I personally felt when she said that --

18   because I have dealt with a lot of people.  I have been

19   doing this forty years, and I have dealt with a lot of

20   people in forty years.  And I felt this didn't sound

21   like a rape victim to me.

22   Q    That was your opinion; is that correct?

23   A    That is my professional opinion, yes.

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

LASER STOCK FORM B

THE CORBY GROUP  1-800-255-5040

Smith - Voir Dire          A-98

1      Q     Let's disregard your opinion at this point.

2   The statement she made was that she felt he was in jail

3   for too long and that he should be out?

4      A     He should be out.

5      Q     Now?

6      A     Yes.

7      Q     And did she seem to be familiar with

8   Mr. Miller, as far as --

9      A     She talked to me as if he was her friend,

10  and, I mean, I was sort of a little at a loss, to be

11  honest with you.

12     Q     What did she say that led you to believe that

13  she knew him or she was friendly with him?

14     A     Well, the very fact that she felt he was in

15  prison too long. I mean, if she had been raped by

16  somebody -- I have never met any rape victims yet that

17  think someone is in prison too long. They think he

18  should be in there for life. Here is a woman, I guess

19  a few months later, saying to me that this man should

20  not be in prison, which made me believe that he was her

21  friend or something.

22     Q     That was the extent of her familiarity with

23  him, as you perceived it?

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

Smith - Voir Dire                    **A-91**

1    purpose of the phone call was to find out if I was

2    being told the truth.

3        Q    Then you went and bothered her in person at

4    her apartment two days before her death, didn't you, in

5    September?

6        A    I don't know when she died.

7        Q    September 16, 1993.  You went and saw her in

8    person, didn't you?

9        A    I went to see her in person, but I don't know

10   what the date was.

11       Q    You would not leave her alone, would you?

12       A    I would leave her a loan.  I was very

13   friendly to the lady.  Offered to help her any way I

14   could help her.

15       Q    You were actually barred from the prison

16   because of your meddling in this case, weren't you?

17       A    No, sir.

18            THE COURT:  All right, I do not believe that

19   is relevant.

20            THE WITNESS:  No, sir.

21   BY MR. ADKINS:

22       Q    How do you know this was Mrs. Pederson

23   talking to you on the phone?  Have you ever talked to

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

Smith - Voir Dire                    **A-92**

1    her before?

2         A    No, sir.

3         Q    It could have been her sister, who is also

4    named Pederson; is that correct?

5         A    I met her sister, and I am sure it wasn't her

6    sister.

7         Q    Do you know all of her sisters?

8         A    No, sir.

9         Q    So the only thing you know is you are saying

10   she wanted to have some input on the length of his

11   sentence?

12        A    I only know that I called this lady, she

13   identified herself are as the woman in question, and

14   she told me that she felt that Mr. Miller was in prison

15   long enough.

16        Q    She did not discuss one fact of this case

17   with you, did she?

18        A    No, not on the telephone, she did not.

19             MR. ADKINS:  No further questions.

20                  FURTHER VOIR DIRE EXAMINATION

21   BY MS. BEAUREGARD:

22        Q    Just to clarify.  Your testimony is that you

23   spoke to her in mid-June?

                    EILEEN G. KIMMEL
                  OFFICIAL COURT REPORTER

LASER STOCK FORM B

THE CORBY GROUP  1-800-255-5040

# PRELIMINARY HEARING CAN IMPROVE FINAL RESULTS IN CRIMINAL CASES

## Michael J. Malkiewicz

Now that everyone from politicians to elementary school children has declared war on drugs and crime, being a zealous criminal defense attorney in today's criminal justice system is a very difficult job. Society is screaming out for relief from criminal activity. Laws and court decisions have limited search and seizure issues. Costly forensic experts have become standard fare. Arrest numbers are up and the dockets of every state court are clogged. More than ever the criminal defense attorney's role requires courage, tenacity, common sense, legal competence and imagination. Criminal clients expect their lawyers to be zealous advocates, and both the Delaware Rules of professional Conduct and the American Bar Association Standards for Criminal Justice require it.[1]

A zealous criminal defense attorney defends a client's rights during each stage of the criminal justice system, not just at trial. Every stage in the system is critical to the client. How counsel prepares for each stage means the difference between the client obtaining a proper bail, a dismissal of excessive charges, a reasonable plea offer, a fair trial, or an appropriate sentence.

The focus of this article is limited to the preliminary hearing stage of the criminal justice system in cases where a client has been charged with at least one felony level offense. The preliminary hearing stage, like all others in the criminal system, is critical to the client. If a defendant is unable to obtain bail after being arrested, a preliminary hearing date must be set within ten days of the arrest. Where a defendant has made bail, the hearing date must be set within twenty days of arrest. At a preliminary hearing, the state has the burden of proving to the satisfaction of the judge, that there is probable cause that a crime occurred, and that the arrested party committed the crime. In this writer's opinion, counsel who have reservations about the importance of a preliminary hearing perhaps do not understand the value a hearing can have to the prepara-

tion of the defense.

In the Delaware Court of Common Pleas, in all three counties, it is no secret that approximately ninety percent of the criminal defendants charged with felony level offenses, who are represented by private counsel and the Public Defenders Office, waive their right to a hearing[2]. When one considers all of the benefits that can be gained for the client at a preliminary hearing, the ninety percent waiver factor has to shock the conscience of zealous criminal defense attorneys.

A variety of reasons have been given for the advice to defendants that they should waive their right to a preliminary hearing. Some are legitimate, others are just excuses. For example, it is common knowledge that at a preliminary hearing the permissible scope of cross examination, and the volume of defense evidence that can be introduced, varies between cases and courts. In some courts any inquiry by defense counsel beyond the date and time of the offense often is ruled to be a "fishing expedition" and irrelevant. However, in other courts, defense attorneys are permitted thorough direct and cross examinations, thus fulfilling their ethical obligation of zeal on behalf of their clients.

The main reason relied upon by most defense attorneys when they advise their clients to waive a preliminary hearing is the Department of Justice's practice of providing counsel with a copy of the police report in return for the client's waiver of the hearing. At first glance, obtaining a copy of the police report may appear to be one of the best things that counsel can do in order to prepare a defense. This writer contends that a preliminary hearing properly conducted by a zealous criminal defense attorney, will provide counsel with all the information contained in a police report, and much more. In addition, counsel and client will not have to wait weeks or months to get the information after the client has been indicted.

There are other reasons that have caused criminal defense attorneys to

advise their clients to waive their statutory right to a preliminary hearing, but in this writer's opinion these reasons are not legitimate. They should not be considered part of the process that counsel goes through in weighing the benefits and detriments of having a hearing. These are "excuses", and they are not legitimate reasons for advising a client to waive a preliminary hearing because:

(1) COUNSEL DOES NOT HAVE TIME TO CONDUCT A PRELIMINARY HEARING BECAUSE OF CONFLICTING PROFESSIONAL OR PERSONAL COMMITMENTS. If the hearing conflicts with a professional or personal commitment, a request for a continuance can be made to the court. If the hearing conflicts with counsel's personal plans, and a continuance request is denied, counsel should not accept the case. If counsel is retained and advises the client to waive the preliminary hearing because counsel has either a professional or personal conflict with the scheduling of the hearing, then this fact should be disclosed to the client. This may cause the client to retain another attorney, but there has been full disclosure to the client, and therefore no possible breach of any ethical duties.

(2) COUNSEL HAS NOT RECEIVED A FEE. Counsel either represents the client or does not. If counsel has not been paid a fee, and does not want to go through a hearing before being paid, then counsel should not be advising the client whether to waive or not waive a preliminary hearing. A client should never be advised to waive a preliminary hearing on the grounds that the client cannot afford to pay an attorney at that time. The person should be referred to another attorney, or the Public Defender's office. On the subject of fees, it is also important to explain to the client whether the fee covers all work in the case up through an appeal, or only covers work on the preliminary hearing. This understanding should be memorialized and made part of counsel's file.

(3) THE PERMISSIBLE SCOPE OF CROSS EXAMINATION AND THE AMOUNT OF EVIDENCE THE DEFENDANT IS ALLOWED TO PRESENT TO THE COURT IS SO LIMITED THAT A PRELIMINARY HEARING IS NOT WORTH THE TIME AND EFFORT. The rules set forth the procedure that is to be followed during a preliminary hearing.⁵ The rules include the right to cross examine witnesses, and defense counsel may introduce evidence, subject to reasonable limitations imposed by the court. Furthermore, subject to the discretion of the court, inquiry can be made into the lawfulness of the means by which evidence is acquired for the purpose of determining the weight to be afforded such evidence at the hearing.

(4) THE GOVERNMENT ATTORNEY HAS TOLD COUNSEL THE GOVERNMENT WILL SEEK INDICTMENT OF THE DEFENDANT NO MATTER WHAT THE OUTCOME OF THE PRELIMINARY HEARING. The Delaware Department of Justice's success rate in obtaining indictments from the Grand Jury is unquestionable. This is understandable because only arresting officers can appear in front of the Grand Jury. However, if the government attorney has told counsel that an indictment will be sought no matter what the outcome of the hearing, what do counsel and the client have to lose by going through with the hearing?

(5) THE STATE WILL PROVIDE COUNSEL WITH A COPY OF THE POLICE REPORT IN RETURN FOR THE DEFENDANT'S WAIVER OF THE PRELIMINARY HEARING. If counsel is allowed to conduct a preliminary hearing pursuant to the procedures and scope of inquiry permitted under the court rules, all of the information contained in the police report, and more, will come out in the direct and cross examination of the witnesses. Furthermore, the police preparing the reports know that in the majority of cases the reports are going to be turned over to defense counsel when the hearing is waived. Thus the police have an incentive to prepare bare bones reports. There are also times that the police report has not been prepared at the time the preliminary hearing is held. In these instances, the testimony of the police is critical. The defendant also has the advantage because the facts that are put in the report later should not conflict with the testimony given at the preliminary hearing.

Now I want to suggest some tools or techniques counsel can use at the preliminary hearing stage, and also some reasons why counsel should advise the client to have a hearing. In making that decision he must weigh the benefits of a hearing relative to the advantages of waiver.

Let us now examine some of the tools or techniques a criminal defense attorney can use to prepare for a preliminary hearing. Obviously, the availability and necessity of these tools will be affected by the amount of time the defense attorney has to prepare the case, the seriousness of the charges against the client, and his financial resources. However the skillful use of one or more of these tools or techniques may provide counsel with a wealth of evidence that will be useful not only at the preliminary hearing stage but also at the trial. Just as any skilled craftsman must have knowledge about available tools or techniques, the criminal defense attorney must know what should be used to defend a client. In deciding whether to demand a preliminary hearing, counsel should realize that the following should or could be done:

1. ACQUIRE FROM THE JUSTICE OF THE PEACE COURT AND THE COURT OF COMMON PLEAS COPIES OF ALL PAPERWORK RELATING TO THE CLIENT'S CASE. The importance of these documents should not be underestimated. These documents will not only provide counsel with the date, time and location of the alleged offenses, but also the names and addresses of potential witnesses, and the affidavit of probable cause prepared by the arresting officer. The contents of the paperwork may include information that is useful when examining witnesses.

2. COUNSEL SHOULD CONDUCT A THOROUGH INTERVIEW OF THE CLIENT AS SOON AS POSSIBLE. The client's version of the facts can be compared to the facts set forth in the court's paperwork. Most importantly, counsel is gathering facts shortly after the alleged crime has occurred. The longer the delay before the interview, the more likely the client will forget valuable information.

3. A PRIVATE INVESTIGATOR SHOULD BE RETAINED IN AN APPROPRIATE CASE. Using an investigator to interview witnesses avoids the problem of counsel becoming a witness. Counsel should meet with the investigator and explain details about the facts of the case, and

theories of any defense strategy. The investigator should be instructed to take taped or written statements from witnesses, and follow up any leads provided by witnesses during the investigation.

4. COUNSEL MAY DECIDE TO PRESENT EVIDENCE ON BEHALF OF THE DEFENDANT AT THE PRELIMINARY HEARING. Although the government has the burden of proving that probable cause exists that a crime was committed, and that the defendant committed the crime, the rules of the court permit a defendant to present evidence.⁴ The decision to present evidence on behalf of the client at the preliminary hearing must be weighed very carefully. Defense counsel may not want to expose any theories of defense that will be used later at trial. On the other hand, defense counsel may want to call witnesses or present evidence at the preliminary hearing. Of course, counsel should have a good faith reason to believe that the witnesses who have been subpoenaed by the defense will provide evidence that is relevant to the issue of the defendant's innocence. Finally, the client may be so adamant about his or her innocence that the client insists on testifying.

5. THE COURT'S SUBPOENA POWER CAN BE USED BY DEFENSE COUNSEL. There is nothing in the court rules that prevents defense counsel from subpoenaing the alleged victim of a crime to testify at the preliminary hearing. However, since this is a defense witness, defense counsel may be limited to "direct" examination of the witness rather than being allowed to "cross" examine the witness. Furthermore, there is nothing in the court rules that prevents defense counsel from having the court issue a subpoena *duces tecum* to the arresting officer requiring the officer to bring to court all of the materials the officer will be testifying about at the preliminary hearing. Courts may limit the scope of such a subpoena to items that would be discoverable pursuant to a request filed under Supreme Court Criminal Rule 16.5. For example, this could include a subpoena for copies of the defendant's statements, of defendant's statements, photographs used during a photo line-up, and the results of any scientific tests that may be available at the time the preliminary hearing is conducted. All of the materials will undoubtedly be referred to by the arresting officer during testimony at the hearing, and therefore a

fair game for cross examination by defense counsel. The police officer's ability to paraphrase what the defendant said will be limited if the defendant's statement is brought to court. This principle also applies to testimony about the contents of a scientific report. For example, arresting officers typically assume or estimate the type and quantity of a controlled substance, but the medical examiner's report will accurately reflect the type and quantity of the controlled substance involved in the case. This may be important for having charges dismissed or reduced, and also for setting bail.

6. COUNSEL CAN USE A POLICE REPORT FROM ANOTHER CASE AS A FORMAT TO PREPARE CROSS EXAMINATION QUESTIONS. Most of the law enforcement agencies use similar report forms. Counsel can use a copy of a report from a previous case to prepare questions that will be asked at the preliminary hearing. This may alleviate counsel's concern that some facts will not be discovered at a preliminary hearing, which could have been discovered by getting the police report in exchange for a waiver of the preliminary hearing.

7 THE POLICE OFFICER TESTIFYING AT THE HEARING SHOULD NOT BE A SUBSTITUTE FOR THE CHIEF INVESTIGATING OFFICER. Before the hearing begins counsel should make sure that the government's police witnesses have personal knowledge about the case, and are not simply filling in for someone after they have read the other officer's report. Frequently officers are not available and a continuance of the hearing should be requested until the chief investigating officer is available.

8. ALL GOVERNMENT AND DEFENSE WITNESSES SHOULD BE SEQUESTERED. All witnesses except the chief investigation officer and the defendant's investigator, should be sequestered before the preliminary hearing begins. Furthermore, defense counsel should ask the court to instruct the witness who is on the stand not to talk to anyone, including the government attorneys during any recess at the preliminary hearing.

Keeping in mind the tools and techniques available to the zealous criminal defense attorney, counsel should then weigh the pros and cons of conducting a preliminary hearing on behalf of a client.

A list of some of the reasons germane to that decision include the following:
1. CHARGES MAY BE REDUCED OR DISMISSED. After hearing the evidence in the case, the judge may dismiss a charge or find probable cause for a lesser included crime. This in turn may result in a reduction of the client's bail.

2. THE CLIENT AND COUNSEL WILL BE BETTER INFORMED OF THE EVIDENCE THE GOVERNMENT WILL PRESENT AT TRIAL. After hearing the testimony the client will be in a better position to assist in the preparation of the defense. In some cases it is also important for the client's family and friends to be at the hearing and hear the government's testimony. Family members and friends may also provide counsel with evidence that contradicts the testimony of the witnesses, or aid in preparing the defense.

3. THE TESTIMONY OR PERFORMANCE OF A WITNESS MAY LEAD TO THE REDUCTION OF THE NUMBER AND TYPE OF CHARGES. The government may be inclined to strike a more agreeable plea bargain, or not seek indictment on certain charges after hearing and observing an alleged victim or witness testify. Weaknesses in the government's case may also be revealed during the testimony which may provide greater leverage during plea bargaining negotiations.

4. ALLEGED VICTIMS MAY RECANT THEIR EARLIER STATEMENTS TO POLICE OR AT LEAST GIVE CONFLICTING VERSIONS.

5. CONFLICTS IN TESTIMONY BETWEEN WITNESSES WILL BE DISCOVERED. These conflicts will have an effect on the creditability of the witnesses.

6. A RECORD OF WHAT FUTURE TRIAL WITNESSES HAVE SAID, IS BEING CREATED. Conflicts between what witnesses said at the preliminary hearing and what is said at trial can be used for impeachment purposes.

7. TESTIMONY CAN BE OBTAINED THAT IS RELEVANT TO FUTURE DISCOVERY AND SUPPRESSION ISSUES. Courts will not suppress evidence at the preliminary hearing. However, the court conducting the preliminary hearing has the discretion to determine the weight to be accorded to evidence that may have been unlawfully seized. The court also

can rule that the defendant's constitutional rights were violated so badly that no weight will be accorded to the unlawfully seized evidence. In some cases, if the unlawfully seized evidence is the only basis for the client's arrest, the court may dismiss the charges.

8. BY TRYING TO SHOW THAT PROBABLE CAUSE DOES NOT EXIST, COUNSEL CAN GET AN INDICATION OF THE CLIENT'S CHANCES AT TRIAL BY DISCOVERING AS MUCH INFORMATION AS POSSIBLE ABOUT THE FACTS AND CIRCUMSTANCES IN THE CASE.

9. A CLIENT IS RARELY IMPRESSED WITH THE STATEMENT THAT HE IS GOING TO GET A COPY OF THE POLICE REPORT IN RETURN FOR A WAIVER OF HIS RIGHT TO A PRELIMINARY HEARING. For all of the reasons above, clients want and need to see the zealous criminal defense attorney in action.

Realistically, not all cases can proceed to a preliminary hearing. Some of the reasons counsel may advise the client to waive the hearing may include:

1. COUNSEL MAY NOT WANT TO EDUCATE THE STATE ABOUT THE DEFENSE STRATEGY.

2. A REDUCTION OF THE DEFENDANT'S BOND MAY NOT BE LIKELY AFTER THE COURT HEARS THE FACTS AND CIRCUMSTANCES IN THE CASE.

3. ACQUIRING A COPY OF THE POLICE REPORT IN A TIMELY MANNER WILL PROVIDE THE DEFENDANT WITH MORE USEFUL INFORMATION THAN A PRELIMINARY HEARING. Counsel may know that examination will be extremely limited, or the government witnesses know little about the case. In cases where a waiver is executed in return for a copy of the police report, counsel should require the government to disclose the report as soon as possible after the waiver is executed. Preparation of the defense should begin immediately after the waiver is executed.

4. THE DEFENDANT MAY BE UNDER CHARGED. Counsel may not want to have a hearing because the testimony offered either by the government or the defendant may result in the government increasing either the number or degree of charges that are presented to the Grand Jury

After a preliminary hearing has been held or waived the zealous criminal defense attorney's work has not been completed. Counsel may have been retained to represent the client through to the Superior Court level, and not just at the preliminary hearing stage. Or, counsel may be unclear whether the defendant will retain his services at the Superior Court level. In all cases, counsel should try to assist the client's transition between the preliminary hearing stage and his arraignment in Superior Court.

Counsel should debrief the client after the preliminary hearing or its waiver. The client's views and comments about the testimony at the preliminary hearing should be documented and made part of the file. This information may include the names of witnesses who will refute the testimony that was given, and also may lead to theories of defense that were not considered by the client or counsel prior to the hearing. Counsel should also explain to the client the function of the Grand Jury and the Superior Court Arraignment. Most clients believe they will get an opportunity to appear before the Grand Jury.

If counsel for the preliminary hearing is not retained for further services, the defendant should be instructed to tell the new attorney to contact his predecessor. Counsel should then cooperate with the defendant's new attorney, and make sure the defendant's file is transferred. A brief memo to the new attorney outlining the strengths and weaknesses of the case is appropriate.

If counsel has been retained to represent the defendant throughout the Superior Court proceedings, counsel should not wait until the defendant has been indicted to begin preparation for trial. For example, if an investigator is going to be used, he should begin the investigation into the defendant's case immediately. If the availability of a witness at a later trial is questionable, then a motion should be filed with the court to take

a deposition in order to preserve the testimony. Counsel cannot forget the client if he is incarcerated after the hearing. Counsel should keep the client informed of any progress in the case by visiting the client, by correspondence, or accepting telephone communications from the client. If the client is not incarcerated, then the client should assist with the preparation of the defense as much as possible.

It is expected that the Public Defender's office, which represents the majority of criminal defendants in the State, will contend that it is impossible to have a preliminary hearing in all its cases. This may be true, but there probably could be increases in the number of hearings if the Public Defender's Office was authorized to have more employees. Judges may contend that the dockets are full, and there is no time to get bogged down with preliminary hearings. In addition, judges may have become frustrated knowing that the Delaware Department of Justice on many occasions has sought indictments on charges that have been dismissed for lack of probable cause.

The factors mentioned in this article are not an all inclusive list of the reasons to waive or have a preliminary hearing. However, it is the intent of this writer to remind criminal defense attorneys practicing in Delaware that their recommendation to waive or proceed with a preliminary hearing should be made only after many factors have been carefully weighed, and only after the client has been fully advised. Counsel must carefully think about the decision to advise a client to waive or not waive a preliminary hearing. If counsel does not do so and a client waives this valuable statutory right, counsel is not carrying out his required ethical duty of being a zealous advocate for his client.

When an attorney looks at all of the things that can be accomplished for a client by having a preliminary hearing advising a client to waive a preliminary

hearing should be the exception rather than the rule.

¹ Delaware Lawyers Rules of Professional Conduct Preamble: A Lawyers Responsibilities. American Bar Association Standards for Criminal Justice, Chapter 1 The Defense Function

² There is no constitutional right to a preliminary hearing, and the process is set by statute or court rule in Delaware. Court of Common Pleas Criminal Rule 5 provides that "When a person shall be brought before a Justice of the Peace charged with a crime or a crime under a statute specifically requiring a preliminary hearing" the Justice of the Peace shall schedule a preliminary hearing in the Court of Common Pleas in accordance with the schedule fixed by this Court." Court of Common Pleas Criminal Rule 6 sets forth the procedure to be followed at the preliminary hearing in the Court of Common Pleas.

³ Court of Common Pleas Criminal Rule 6; see also Family Court Criminal Rule 6C.

⁴ Court of Common Pleas Criminal Rule 6 allows for a defendant to introduce evidence "subject to reasonable limitations imposed by the court." But see, Family Court Criminal Rule 6C(c) which does not contain limiting language, and provides "The child charged may cross-examine prosecution witnesses and may introduce evidence in defense."



*Michael J. Malkiewicz is a partner in the law firm of Barros, McNamara and Scanlon, P.A. He is a former Deputy Attorney Genera with the Delaware Department of Justice. He is a graduate of the University of Notre Dame School of Law and a member of the National Association of Criminal Defense Lawyers. His areas of practice include criminal law, administrative law, and personal injury.*

---



## SUBSCRIPTION ORDER FORM

☐ YES! Please enter my subscription for 4 issues at $12.00. My check is enclosed payable to DELAWARE LAWYER.

☐ I would like information about obtaining back issues of DELAWARE LAWYER. Please send me a list of those still available.

☐ I would like to send a gift subscription for 4 issues at $12.00 to a colleague.

Name _____

Address _____

City _____  State _____ Zip _____

Gift from _____  Tel ( ) _____

Mail to *DELAWARE LAWYER* 706 Market Street Mall Wilmington, DE 19801

### III.   MILLER WAS NOT DENIED A SPEEDY TRIAL.

#### A.   Standard of Review

The Superior Court denied Miller's motion that he had been denied a speedy trial.  In doing so, the lower court engaged in a full-blown analysis, using the four factors set out in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972).  97 Tr. B-8 to B-16 (A62-76).  The State believes that because the period of time before trial in this matter did not cross the threshold for "presumptively prejudical" delay, this Court need not make an extensive inquiry into the balance struck by the Superior Court.

#### B.   Argument

In his last challenge, Miller claims the prosecution took too long to convict him.  Op. Br. at 15-19.  The events can be arranged as follows:

**Nov. 29, 1992**

| Miller Found On Top of Ms. Pederson and Arrested for Unlawful Sexual Intercourse in the First Degree |
|---|

↓

**June 14, 1993**

| On Day of Jury Selection, Miller Enters *Robinson* Plea to Unlawful Sexual Intercourse in the Second Degree |
|---|


EXHIBIT B-1



**June 18, 1993**

Superior Court (Lee, J.) Denies Miller's Motion to Withdraw His Plea



**July 16, 1993**

Superior Court (Graves, J.) Sentences Miller on Basis of Plea



**August 12, 1993**

Miller Files Postconviction Motion to Overturn Plea and Conviction



**September 16, 1993**

Martha Pederson, the Victim, Dies



**March 11, 1994**

After Appointing Counsel and Holding Hearing, Superior Court (Graves, J.) Vacates Miller's Plea and Conviction

- 24 -

EXHIBIT B-1

$$\downarrow$$

**May 23, 1994**

Jury Convicts Miller of Unlawful Sexual Intercourse in the
First Degree

Miller argues that the eighteen month gap between his
arrest and the jurors' guilty verdicts was both too lengthy and
prejudicial. Admittedly, the Sixth Amendment to the federal
constitution and its state counterpart do guarantee a criminal
defendant the right to a "speedy" trial. Yet, "'[t]he
essential ingredient" of those guarantees "is orderly
expedition and not mere speed.'" *Ewell v. United States*, 383
U.S. 116, 120 (1966) *(quoting Smith v. United States*, 360 U.S.
1, 10 (1959)). Since 1972, a multi-part balancing test has
been used to determine if a particular defendant's trial came
quickly enough to satisfy the constitutional language. *See*
*Barker v. Wingo*, 407 U.S. 514, 530-32 (1972); *Skinner v. State*,
Del. Supr., 575 A.2d 1108, 1115-17 (1990). But because the
speedy trial guarantees are not meant to grant to appellate
courts general supervisory power over case management
decisions, there exists a threshold before the balancing
analysis is triggered. Unless the length of delay (between
arrest and trial) is "presumptively prejudicial," then the
analysis need go no further. *Scott v. State*, Del. Supr., 521

A.2d 235, 239 (1987). In most cases, the threshold is easily calculated - count the time from arrest to the time of trial and determine if that period is beyond the "norm" for such type of cases. See Doggett v. United States, 112 S.Ct. 2686, 2691 n. 1 (1992) (in major felony prosectuions, delay beyond one year triggers four factor inquiry).

Here, the Superior Court did just that - accepting Miller's premise that the eighteen months between Miller's arrest and his present conviction surmounted the threshold. 97 Tr. B-13 (A73). However, it then went on to find that in the balancing, Miller lost. 97 Tr. B-13 to B-16 (A73-76). The State believes that the Superior Court did not have to go so far - Miller's claim does not surmount the presumptively prejudicial obstacle.

Eighteen months might be presumptively too long to hold one, in jail, before having a fact-finder hear his claim of innocence. But a different conclusion follows when the eighteen month period has been split by a conviction of the defendant which has been later overturned. That is the case here. And the courts have come up with various methods to measure the "length of delay" in those scenarios.

For example, in Ewell, 383 U.S. at 118-22, the Court was faced with facts similar to those here. In mid-December, 1962, the two defendants (four days after they had been charged) had

- 26 -

pled guilty. About one year later, they moved to moved to vacate their pleas, citing new case law. A few months later, the district court granted their applications. Then, six months later (by now July, 1964), the district court dismissed the actions because of inordinate delay. The Court reversed that action. Speaking in a pre-*Barker* world, the Court determined that the nineteen month span, although "substantial," was not too long, given the vacated guilty pleas and the subsequent re-prosecution. *Ewell*, 383 U.S. at 120-21. *See also Harrison v. United States*, 392 U.S. 219, 221 n. 4 (1968) (no violation of speedy trial where over eight year period, three trials held with two reversals). Although *Ewell* preceded *Barker*, it is consistent with the analysis set out in the latter case. If the "threshold" for "presumptive prejudice" turns on the complexity of the case, then *Ewell* suggests that the threshold can be longer if there has been an interviewing judgment of conviction which later has been vacated. And, if, in *Ewell*, nineteen months was not too long, the eighteen months here was also not enough to require further analysis.

In contrast, this Court has devised a differing rule for calculating delay in the instant scenario. Under this Court's alternative, the courts must count from the date of arrest until final conviction. But then, a court must subtract from

- 27 -

that sum the period of time between the prior judgment of conviction and the date it was vacated. *See Bailey v. State*, Del. Supr., 521 A.2d 1069, 1080 & n. 13 (1987). The result is that the period between arrest to the first adjudication is joined with the time between the date of reversal and the last adjudication to determine the "length of delay." But this Court has also said that if that sum is ten months or less, then there has been no presumptively prejudicial delay. *Tramill v. State*, Del. Supr, 425 A.2d 142, 143 (1980). Under such calculation, Miller loses again. Six and one-half months passed between Miller's arrest and the date everyone was ready for his first trial. At that time, Miller forewent a trial and agreed to plea to lesser offenses. That plea (and the judgement later entered uponit) was overturned in March, 1994. Two and one-half months later, Miller was tried and convicted of the original charges. This total of nine months (6 1/2 plus 2 1/2) fell below *Tramill*'s ten month cut-off for presumptively prejudicial delay.

Others have adopted a third approach. Under it, the length of delay is measured soley from the date of the reversal of the prior conviction, regardless of (1) the time period between arrest and first judgment and (2) the time spent between the entry of the first judgment and reversal. *See, e.g., United States v. Robles*, 563 F.2d 1308, 1309 (9th Cir.

- 28 -

1977), *cert. denied*, 435 U.S. 925 (1978); 18 U.S.C. §
3161(e),(i) (Speedy Trial Act); *ABA Standards for Criminal
Justice*, Standard 12-2.2(c) (2d ed. 1980); Unif. R. Crim. Proc.
722(d)(2) (1987). *See also United States v. Bonds*, 956 F.2d
628, 630-32 (6th Cir. 1992) (applying federal Speedy Trial
Act). Under such rules, Miller - for a third time - fails to
meet the threshold. His trial came less than three months
after his earlier plea had been vacated.

Although Miller loses under any of the three alternatives,
the State proposes that for these situations, the Court should
now adopt the third rule as the better measure. *See Stacey v.
State*, Del. Supr, 364 A.2d 819, 820 & n. * (1976) (interpreting
*Barker* in light of ABA Standards). It is not clear why, as
happens under the *Bailey/Tramill* rule, that the time prior to
the first conviction should be added to the calculation of the
length of delay. If the defendant thought the State delayed
too long the first time to bring him to trial, he should have
asserted his speedy trial defense then, at trial, and then on
direct appeal. If successful, then any further prosecution
would be permanently barred. Conversely, if he did not think
that delay was too great, then it is unclear why he can later,
after his conviction is reversed, resurrect that period to add
to the "length of delay." Indeed, to do so, is to accord the
prior conviction, not a presumption of validity, but a

- 29 -

EXHIBIT B-1

presumption of invalidity. The rule transforms the right to a speedy trial into a right to a prompt *perfect* trial. In addition, the *Bailey/Tramill* rule portends some adverse side-effects. If, as here, the defendant instead of proceeding to trial pleads guilty, that plea will generally be considered a waiver or forfeiture of any claimed speedy trial defense, particularly if (again as here) the prosecution grants charge and sentencing concessions as part of a plea agreement. *See, e.g.*, *United States v. Ball*, 966 F.2d 914, 915 (5th Cir. 1992). But if such a defendant is successful years later in vacating his plea on some other ground, why is the speedy trial claim no longer forfeited? Second, the calculation can create problems, and more work, where common sense says no more effort need be expended. For example, during a trial held eleven months after his arrest, a murder defendant chooses to plead guilty. The plea is accepted and he is sentenced. Three years later, he files a postconviction application charging ineffective assistance of counsel. Within three months, the trial court grants him relief. Four and one-half years have now passed since his arrest. Must the prosecution hold a trial within a month if the defendant demands a speedy trial? If a trial does come that soon, must a court still undertake an extended speedy trial inquiry, given the fact the initial eleven month period was close to the "presumptively prejudicial" threshold and is

now pushed over the hurdle by adding the one month until the second trial. And must the court then go back and reconstruct every motion for continuance filed four years earlier?

Rather than become involved in such a scenario, the appropriate rule is to judge delay from the time that the defendant was returned to the status of a pre-trial detainee from that of a person convicted under a presumptively valid judgement. Prior delays should be decided in the prior portion of the proceeding, not in the later proceedings. Under that rule, Miller, who was tried within three months after he had his plea vacated, was not denied a speedy trial.

Miller wants to treat his June, 1993 guilty plea (later vacated) as some mere misstep for which the prosecution bore responsibility. But no one dragged Miller to the podium to plea. The State was willing to try him then and there, with the alive Ms. Pederson waiting in the wings to testify. Miller pled guilty to lesser offenses. He did so, he said, because "I don't want to be facing no thirty, forty years," in a situation where "I don't have a win, it seems like." 44 Tr. 6, 7 (A45, A46). When the court accepted that plea, and sentenced Miller, the prosecution had a right to rely on the presumptive validity and finality of the judgment. It no longer had to continue prepare for trial. Later, a different judge would release Miller from his initial cost/benefit analysis. Yet, until that

happened the prior judgment remained final.

The heart of Miller's claim is that he suffered actual prejudice: that by the time the trial came, the victim had died, hampering his efforts to cross-examine her. Yet, such a showing cannot, in itself, state a speedy trial defense. To succeed under the speedy trial clauses, some unreasonable delay must always exist. If Ms. Pederson had died the night before the scheduled date of the first trial, in June, 1993, Miller would suffer have suffered the same "prejudcie:" the victim would not have been available for cross-examination. Yet, no one would have thought that Miller was denied a speedy trial in that scenario. Actual prejudice must be linked to some inordinate delay. Given that Miller cannot establish the latter, he cannot rely on the former. Indeed, as the courts have recognized, the death of the victim of a crime usually wreaks more havoc with the prosecution's case (which must be established beyond a reasonable doubt) than it does to the defendant's. *See United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).

Here, the two and one-half month delay between the time Miller's earlier conviction was vacated and his later trial does not surmount the initial threshold of an unreasonable delay.

- 32 -

find that the Superior Court did not abuse its discretion in refusing to admit it.

12) Nor do we find merit in Miller's claim that he was denied his right to a speedy trial. "To determine whether a speedy trial violation has occurred, a court must use a balancing test in which the conduct of both the prosecution and defendant are weighed." *Bailey v. State*, Del. Supr., 521 A.2d 1069, 1079 (1987). The United States Supreme Court has enumerated several factors that should be considered, including: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972). This Court adopted the *Barker* approach in *Fensterer v. State*, Del. Supr., 493 A.2d 959, 965 (1985).

13) "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192, 101 L.Ed.2d 117. In most cases, this threshold is crossed when the time period between arrest and trial is greater than normal for such cases. The United States Supreme Court has noted that in major felony prosecutions, delay approaching one year exceeds

-8-



this threshold. *See Doggett v. United States*, 112 S. Ct. 2686, 2691 n.1 (1992). In *Tramill v. State*, Del. Supr., 425 A.2d 142 (1980), in which the defendants were convicted of Robbery First Degree, Conspiracy Second Degree, and Possession of a Deadly Weapon During the Commission of a Felony, this Court determined that a delay of ten months was not presumptively prejudicial.

14)    In calculating the length of the delay, a court will not consider delays that should properly be attributed to the defendant. *See Bailey*, 521 A.2d at 1080-81. Nor will the court count the period of time between a prior judgment of conviction and the date it was vacated. *Id*. at 1080 & n.13. Applying this rule to Miller's period of confinement, we note that he was arrested on November 29, 1992 and that the final conviction was entered on May 23, 1994. Therefore, 17 months and 25 days passed between his arrest and the final conviction. We note, however, that Miller's first conviction occurred on June 14, 1993, when he entered a guilty plea. That conviction was vacated on March 11, 1994 by Judge Graves. This period of 8 months and 24 days should not be considered in determining presumptive prejudice. We, therefore, conclude that for purposes of applying the *Barker* standards, Miller was confined for nine months and one

-9-

B-2
EXHIBIT B

day before the second trial. The Superior Court chose to review the other speedy trial factors outlined in *Barker*. However, because we do not consider Miller's period of confinement to be sufficiently lengthy to create a presumption of prejudice, consideration of the other *Barker* standards by us is not necessary.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is,

AFFIRMED.

BY THE COURT:

Justice

-10-

(EXHIBIT B-2)

EXHIBIT C-1    ORIGINAL

1                              COURT DOCKET

                                                              AS OF 06/28/___

          STATE OF DELAWARE

                    v.

          MILLER, THOMAS R.                      (92S05488DI)    (DOB: 03/25/5___

..f. ATTNY:  BEAUREGARD ROSEMARY BETTS
S:ATE ATTNY:  ADKINS JAMES WILLIAM

CHARGE #1         S92120044I        UNLAWFUL SEXUAL INTERCOURSE FIRST DEGREE
CHARGE #2         S92120045I        BURGLARY 1ST DEGREE
CHARGE #3         S92120046I        UNLAWFUL SEXUAL PENETRATION 2ND DEGREE
CHARGE #4         S92120047         CRIM TRES 1ST
CHARGE #5    *    S92120044         UNLAWFUL SEXUAL INTERCOURSE 2ND DEGREE


TRANSACTION
NBR   DATE      ACTION                                  JUDGE          COS

     11/30/92  BAIL BOND AND COMMITMENT
               03 00180000 100 SECURED
001  12/03/92  CASE FILED
                   (GS)
               COURT COST SC                                           75.00
002  12/04/92  NOTICE OF SERVICE - DISCOVERY REQUEST
               , REQUEST FOR SPEEDY TRIAL AND
               ANSWER TO STATE'S RULE 16 REQUEST
               FILED BY THE P.D.'S OFFICE.   (LM)
003  12/07/92  NOTICE OF SERVICE - DISCOVERY REQUEST
                   FILED BY STATE.(GS)
004  12/28/92  INFORMATION FILED
                   (MB)
005  12/28/92  NOLLE PROSEQUI
                   AS TO 047,REASON #25.      (MB)
006  01/08/93  ARRAIGNMENT BY RULE 10C
                   N.G.J.T FILED BY KARL HALLER.(LM)
007  02/02/93  NOTICE OF SERVICE - DISCOVERY RESPONSE
                   FILED BY THE STATE_____ ____ JM
008  02/24/93  MOTION
                   TO TRANSPORT.   (MB)
009  02/25/93  ORDER                              LEE WILLIAM
                   TO TRANSPORT.   (MB)
010  02/25/93  SUBPOENA(S) ISSUED                                     135.00
                   SUSSEX COUNTY (9) (SRM)
011  03/02/93  SUBPOENA RETURNED
                   SUSSEX COUNTY (8) (SRM)
052  03/02/93  SUBPOENA RETURNED
                   SUSSEX COUNTY (10) (SRM)
     03/03/93  CONTINUANCE REQUEST FORM      (LM)
012  03/05/93  SUBPOENA RETURNED
                   SUSSEX COUNTY (1) (SRM)
014  04/08/93  MOTION
                   TO TRANSPORT,FILED BY DEF.COUNSEL
015  04/12/93  ORDER                              LEE WILLIAM
                   GRANTING MOTION TO TRANSPORT.(MB)

EXHIBIT B-3
ENB  B-
EXHIBIT B3



**C**

West's Delaware Rules of Court Currentness
 Delaware Rules of Court
   Superior Court Rules of Criminal Procedure
    II. Preliminary Proceedings

### →RULE 5. INITIAL APPEARANCE BEFORE THE COMMITTING MAGISTRATE

(a) **In General.** An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unreasonable delay before the nearest available committing magistrate of the county in which the offense is alleged to have been committed or such other committing magistrate as provided by the warrant or by statute, court rule or administrative order. If a person arrested without a warrant is brought before a committing magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause. When a person, arrested with or without a warrant or given a summons, appears initially before the committing magistrate, the committing magistrate shall proceed in accordance with the applicable subdivisions of this rule.

(b) **Offenses Triable by the Committing Magistrate.** If the charge against the defendant is triable by the committing magistrate, the committing magistrate may, with the consent of the attorney general, proceed to try or otherwise dispose of the charge in accordance with the rules of procedure of the committing magistrate's court.

(c) **Offenses Not Triable by the Committing Magistrate.** If the committing magistrate does not try or otherwise dispose of the charge against the defendant under subdivision (b) of this rule, the defendant shall not be called upon to plead. The committing magistrate shall inform the defendant of the complaint against the defendant and of any affidavit filed therewith, of the defendant's right to retain counsel or to request the assignment of counsel if the defendant is unable to obtain counsel, and of the general circumstances under which the defendant may secure pretrial release. The committing magistrate shall inform the defendant that the defendant is not required to make a statement and that any statement made by the defendant may be used against the defendant. The committing magistrate shall also inform the defendant of the right to a preliminary examination. The committing magistrate shall allow the defendant reasonable time and opportunity to consult counsel and shall detain or conditionally release the defendant as provided by statute or in these rules.

(d) **Scheduling Preliminary Examination.** A defendant is entitled to a preliminary examination, unless waived, when charged with any offense that is within the exclusive jurisdiction of, or that the attorney general chooses to prosecute in, Superior Court. If the defendant waives preliminary examination, the committing magistrate shall forthwith hold the defendant to answer in Superior Court. If the defendant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT B-5

DE R SUPER CT RCRP Rule 5                                                Page 2
 Super.Ct.Crim.R., Rule 5


does not waive the preliminary examination, the committing magistrate shall schedule
a preliminary examination.  When the initial appearance is before a justice of the
peace, the preliminary examination shall be held in the Court of Common Pleas if the
defendant is an adult or in the Family Court if the defendant is a juvenile. When
the initial appearance is in the Municipal Court for the City of Wilmington, the
preliminary examination shall be held in the Municipal Court if the defendant is an
adult or in the Family Court if the defendant is a juvenile.  Such examination shall
be held within a reasonable time but in any event not later than 10 days following
the initial appearance if the defendant is in custody and no later than 20 days if
the defendant is not in custody, provided, however, that the preliminary examination
shall not be held if the defendant is indicted or if an information against the de-
fendant is filed in Superior Court before the date set for the preliminary examina-
tion.  With the consent of the defendant and upon a showing of good cause, taking
into account the public interest in the prompt disposition of criminal cases, time
limits specified in this subdivision may be extended one or more times.  In the ab-
sence of such consent by the defendant, time limits may be extended only upon a
showing that extraordinary circumstances exist and that delay is indispensable to
the interests of justice.

Superior Court Criminal Rule 5, **DE R SUPER CT RCRP** Rule **5**

                    Current with amendments received through 5/1/2007

    Copr. © 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


EXHIBIT B-4

Westlaw.

**C**

West's Delaware Rules of Court Currentness
 Delaware Rules of Court
   Superior Court Rules of Criminal Procedure
     III. Indictment and Information

### → RULE 7. THE INDICTMENT AND THE INFORMATION

#### (a) Use of Indictment or Information.

(1) *In General.* An offense which may be punished by death shall be prosecuted by indictment. An offense within the exclusive jurisdiction of Superior Court other than a capital crime shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. An information may be filed without leave of court.

(2) *Transfer Cases.* The prosecution shall proceed on the information filed in the Court of Common Pleas.

(3) *Appeals De Novo.* The prosecution shall proceed on a new information filed in Superior Court charging substantially the same offense as charged by the complaint or information in the court below.

**(b) Waiver of Indictment.** An offense within the exclusive jurisdiction of Superior Court other than a capital crime may be prosecuted by information if the defendant, after having been advised of the nature of the charge and of the rights of the defendant, waives in writing or in open court prosecution by indictment.

#### (c) Nature and Contents.

(1) *In General.* The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the attorney general. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated.

(2) *Harmless Error.* Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice.

**(d) Surplusage.** The court on motion of the defendant may strike surplusage from the indictment or information.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT B-5
B-5

**(e) Amendment.**  The court may permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

**(f) Bill of Particulars.**  The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit.  A bill of particulars may be amended at any time subject to such conditions as justice requires.

Superior Court Criminal Rule 7, **DE R SUPER CT RCRP** Rule **7**

Current with amendments received through 5/1/2007

Copr. © 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

B-5
(EXHIBIT B-6)



### PUBLIC DEFENDER OF THE STATE OF DELAWARE
#### SUSSEX COUNTY OFFICE
#### 12 EAST PINE STREET
#### GEORGETOWN, DELAWARE 19947

**LAWRENCE M. SULLIVAN**
**PUBLIC DEFENDER**

**ANGELO FALASCA**
**CHIEF DEPUTY**

December 4, 1992

**KARL HALLER**
**ASSISTANT PUBLIC DEFENDER**

**TELEPHONE**
**(302) 856-5310**

Mr. Richard T. Miller
Sussex Correctional Institution
Georgetown, DE  19947

RE:  Your Case--What Happens After Preliminary Hearing

Dear Mr. Miller:

This letter is being sent to you to review what has happened in your criminal case, and to explain what will happen in the future.  You were represented by Howard W. Hudson, Jr., Esq. at preliminary hearings on 12/3/92.  He was assisted by Investigator Darling of our office.  I will be your attorney when your case comes up in the Superior Court.

Most typical cases involving felonies (such as your charges) go thru these stages:

1. PRESENTMENT--in JP Court happens immediately after arrest, bond is set.
2. PRELIMINARY HEARING--before Judge Ellis in the Court of Common Pleas, if the police can show any evidence you did a crime your case goes to the Superior Court.
3. ARRAIGNMENT--in Superior Court, you are asked if you are guilty and if you want a jury or judge trial.  About four weeks go by between preliminary hearing and arraignment.
4. CASE REVIEW--in Superior Court, the prosecutor discusses your case with you and me.
5. TRIAL--in Superior Court before a judge or jury.
6. SENTENCING--in Superior Court, you are given probation or jail time.
7. APPEAL - At defendant's request to Supreme Court, decision normally takes months after Supreme Court examines Superior Court records and documents.

Of course, not all cases go thru all of the above steps for example, if you are found "not guilty" at trial you do not go to step 6 - sentencing.  The average time that goes by between


EXHIBIT B-6

preliminary hearing and arraignment is about one month.    Between arraignment and case review usually takes approximately three to four weeks.    Between case review and trial is usually about four to five weeks.    These times are approximate only and are to give you some idea as to what to expect as to the speed with which your case progresses.

Although Attorney Hudson represented you at the preliminary hearing, I was present as I wanted to meet with you as soon as possible about your case.

I am going to proceed forthwith to file a Motion for Discovery in the Superior Court and a Request for Speedy Trial.    When I get the discovery response answers back from the Prosecutor I will supply them to you so you are aware of what the Prosecutor's answer to the Motion is.

Your preliminary hearing was waived for a copy of the police report.    This means I will get a copy of the report the police send to the prosecutor and we will be able to review it when we meet.

Also, I intend to visit the crime scene and take photographs that may be helpful if the matter goes to trial.    It is for this reason that we discussed the crime scene:  Hauling Cove-maybe unit 15.  As you go in this is on the right hand side.  The victim lives alone and is named Martha Renade.

Investigator Darling told me that you signed forms that:   1) requested proceedings by information rather than indictment, 2) stated you were "not guilty", and 3) requested trial by the judge rather than jury of 12 people.  If you desire to plea "guilty" do not want to waive indictment, or request trial by jury rather than by court simply let Investigator Darling or myself know and I will arrange to have your selections changed and noted in the court record.

Also I want to caution you that if the police question you about the offense that went through preliminary hearings on the date above indicated (or any other crime for that matter), that you inform the police that you are represented by counsel, that you do not want to give them a statement, and that you demand to have the right to see your lawyer before talking with them further.    If the police need to question you, they should make arrangements through my office and I will discuss the same with you before any questioning may occur.    Such questioning would only be allowed by our office if it is in your best interest.

It used to be my opinion that it is better to have trial by judge rather than a trial by jury of 12 people.    The judges of Sussex County are known for their fairness and clear thinking. From the close of 1987 thru the summer of 1989 I kept track of all the results I personally had with judge trials and jury trials. The results are as follows:

| DEFENDANT | CHARGE | JUDGE OR JURY | RESULT |
|-----------|--------|---------------|--------|
| Harrison | Rape | Jury | "not guilty" |

B-6

3

| | | | |
|---|---|---|---|
| Reynolds | Murder 1st | Jury | hung jury |
| Feddiman | Rape | Jury | guilty of most |
| E.Polk | Welfare Fraud | Judge | "not guilty" |
| Sowards | Burglary | Judge | "not guilty" |
| Young | Theft felony | Judge | "not guilty" |
| Steen | Employee theft | Judge | ~not guilty" |
| Matthews | Burglary | Jury | guilty |
| Ponder | Cocaine sale | Judge | guilty of simple possessiononly |
| M. Polk | Murder 1st death penalty | Jury | guilty--death penalty defeated |
| Mitchell | Assault | Judge | "not guilty" |
| Lum | Rape | Jury | guilty |
| E. Thomas | Murder 1st | Jury | "not guilty" |
| Webster | Rape | Jury | guilty |
| Risper | Assault | Judge | guilty |
| Walker | R. St. Prop. | Judge | dismissed |

You will note that in six out of eight judge trials I had complete dismissal/acquittals of all charges. In another judge trial there was a reduction of a felony drug sale to a misdemeanor possession charge. In the remaining judge trials the defendant was guilty, but was immediately sentenced to no jail time and probation. It is because of these results and my experience over the years that I, until recently, definitely preferred Judge trials to jury trials.

However, I have had a few experiences in the past six months which disappointed me as regards Judge trials. Because of this, I am less certain as regards my advice generally to have Judge trials rather than jury trials. At the present time I am normally asking for jury trials. If you feel that you would rather have a trial by the Judge alone, inform me of this fact and I will attempt to see that it is arranged.

If you have any questions or desire to discuss your case call (302) 856-5310 or 856-5324 and we will try to answer your concerns. If I am not available, our investigator (Pam Darling) will do her best to help you. You may also write to me at 12 E. Pine Street, Georgetown, Delaware.

Yours truly,

KARL HALLER, ESQ.
Assistant Public Defender

KH/cjw

The occupation of beauty culture is one subject to reasonable regulation by the State under its police power. Hoff v. State, 39 Del. 134, 197 A. 75 (Super. Ct. 1938).

The police power is competent to prohibit the sale and manufacture of an article of commerce which the state believes to be pernicious in its effects. State v. Fountain, 22 Del. 520, 69 A. 926 (Ct. Gen. Sess. 1908).

A state legislature may regulate various professions, occupations and businesses as valid exercises of police power. State v. Danberg, 40 Del. 136, 6 A.2d 596 (Ct. Gen. Sess. 1939).

**The state retains right to impose certain implied limitations on property rights of its citizens.** In re Application of Ward, 46 Del. 430, 84 A.2d 598 (Super. Ct. 1951).

There are certain implied limitations on the property rights guaranteed every person which may be imposed by the State in the exercise of its police power. In re Ceresini, 38 Del. 134, 189 A. 443 (Super. Ct. 1936).

**Private use of property secondary to public interest.** — The state is not helpless when a person uses his private property in a way that is detrimental to the rights of the public with relation to health, morals, safety, order or welfare. Aprile v. State, 51 Del. 215, 143 A.2d 739 (Super. Ct.), aff'd, 51 Del. 364, 146 A.2d 180 (Sup. Ct. 1958).

**Exercise of the police power is very different from the exercise of the right of eminent domain.** Liebig Mfg. Co. v. Wales, 8 Del. Ch. 26, 34 A. 902 (Ch. 1896).

**Citizen's right to livelihood may be abridged by legislature.** — The right of a citizen to earn his living in any legitimate field of industry, submitting himself to all lawful regulations, is one of his most valuable rights and one which the General Assembly may not unreasonably interfere with or abridge. Hoff v. State, 39 Del. 134, 197 A. 75 (Super. Ct. 1938).

**Because it is not an absolute right,** for it may be qualified to the extent the sovereign power may interfere with its enjoyment through necessary and proper regulations for the good of society as a whole. Hoff v. State, 39 Del. 134, 197 A. 75 (Super. Ct. 1938).

**But abridgement must not be arbitrary interference.** — The General Assembly may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. Hoff v. State, 39 Del. 134, 197 A. 75 (Super. Ct. 1938).

**Courts will protect rights from arbitrary interference.** — If the means employed in regulating licensing in lawful occupations are arbitrary and unreasonable and beyond the necessities of the case, the courts will disregard mere forms and will interfere for the protection of rights injuriously affected by such illegal action, for the courts may, and should, look at the substance of things whenever they enter upon the inquiry whether the General Assembly has transcended the limits of its authority. Hoff v. State, 39 Del. 134, 197 A. 75 (Super. Ct. 1938).

**Factors justify state's regulation of licensing.** — To justify the state in interposing its authority in behalf of the public in regulating licensing in lawful occupations, it must appear that the interests of the public, as distinguished from those of a particular class, demand such interference, that the means employed are reasonably necessary for the accomplishment of the purpose and that they are not unduly oppressive on individuals. Hoff v. State, 39 Del. 134, 197 A. 75 (Super. Ct. 1938); State v. Danberg, 40 Del. 136, 6 A.2d 596 (Ct. Gen. Sess. 1939).

**Destruction of property for purpose of abating nuisance** in the public interest is not a taking of private property for public use, but is an exercise of the police power of the State, recognizing the safety of the public as the paramount law. Liebig Mfg. Co. v. Wales, 8 Del. Ch. 26, 34 A. 902 (Ch. 1896).

MHU
Law Library

# § 8. Prosecution by indictment or information; double jeopardy; just compensation for property.

Section 8. No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; and no person shall be for the same offense twice put in jeopardy of life or limb; nor shall any man's property be taken or applied to public use without the consent of his representatives, and without compensation being made.

185

(EXHIBIT B-7)

Westlaw.

Const. Art. 1, § 10

MHU
**Law Library**

Page 1

C

**Effective: [See Text Amendments]**

PURDON'S PENNSYLVANIA STATUTES AND CONSOLIDATED STATUTES
**CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA**
**ARTICLE I.** DECLARATION OF RIGHTS
➡ **§ 10. Initiation of criminal proceedings; twice in jeopardy; eminent domain**

Except as hereinafter provided no person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of the court for oppression or misdemeanor in office. Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law. No person shall, for the same offense, be twice put in jeopardy of life or limb; nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.

Current through Act 2008-12

Copr. © 2008 Thomson Reuters/West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT B-8)



372 A.2d 887                                                                      Page 1
247 Pa.Super. 401, 372 A.2d 887
(Cite as: 247 Pa.Super. 401, 372 A.2d 887)

MHU
Law Library

▷
Com. v. Brown,
Pa.Super. 1977.

Superior Court of Pennsylvania.
COMMONWEALTH of Pennsylvania
v.
Claude BROWN, a/k/a Claudel Smith, Appellant.
Submitted June 28, 1976.
Decided April 19, 1977.

Defendant was convicted in the Court of Common Pleas, Philadelphia County, No. 1435 January Term, 1974, Richette, J., of robbery, and he appealed. The Superior Court, No. 190 October Term, 1976, Hoffman, J., held that: (1) the grand jury did not lack authority to indict defendant, and (2) the lower court erred in allowing the cross-examination of two defense witnesses as to their religious beliefs.

Judgment of sentence vacated and new trial granted.

Van der Voort, J., concurred in the result.

Price, J., dissented and filed opinion.

West Headnotes

[1] Indictment and Information 210 ⬤⬤4

210 Indictment and Information
    210I Necessity of Indictment or Presentment
        210k4 k. Proper Form of Accusation. Most Cited Cases
Grand jury had power to issue indictment for robbery where, although initiation of criminal proceedings by information had been authorized on date indictment was handed down, legislature had not passed implementing legislation and Supreme Court had not issued governing rule of criminal procedure relative to use of information. P.S.Const. art. 1, § 10; Pa.R.Crim.P., Rules 203, 225 et seq.; 17 P.S. § 271 et seq.

[2] Witnesses 410 ⬤⬤340(2)

410 Witnesses
    410IV Credibility and Impeachment
        410IV(B) Character and Conduct of Witness
            410k339 Particular Traits of Character or Habits
                410k340 In General
                    410k340(2) k. Religious Faith or Moral Sense. Most Cited Cases
Trial court in robbery prosecution erred when it allowed prosecution to cross-examine defendant's alibi witnesses on the subject of their religious beliefs and affiliation. 28 P.S. §§ 311, 313; Pa.R.Crim.P., Rule 130.

**887 *402 John W. Packel, Asst. Public Defender, Philadelphia, for appellant.
Steven H. Goldblatt, Asst. Dist. Atty., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.
HOFFMAN, Judge:
Appellant raises the following contentions: (1) the grand jury lacked authority to indict him; (2) he was deprived of his right to challenge the array of the grand jury; (3) the lower court impermissibly condoned the prosecutor's cross-examination of two defense witnesses as to their religious beliefs; (4) the lower court improperly admitted out-of-court statements made by a non-testifying eyewitness; (5) the lower court erroneously allowed testimony concerning appellant's prior criminal record; and (6) the lower court improperly allowed testimony concerning appellant's arrest for an earlier robbery. Because we agree that the lower court erred in allowing the cross-examination of two defense witnesses as to their religious beliefs, we vacate the judgment of sentence and grant appellant a new trial.

On December 27, 1973, appellant was arrested and charged with robbery[FN1] and criminal conspir-

EXBIT B-8)

acy.[FN2] The charges stemmed from a robbery of the Aquarius Bar at 2564 N. 7th Street in Philadelphia earlier that night. After a preliminary hearing, a Philadelphia County grand jury indicted appellant**888 on January 24, 1974. Trial commenced on October 1, 1974, in the Court of Common Pleas of Philadelphia County, but terminated on October 8, when the jury could not reach a verdict. The Commonwealth scheduled a *403 retrial for January 10, 1975. Immediately prior to trial, appellant made an oral motion to quash the indictment because the grand jury had been illegally constituted and because appellant had not been afforded his right to challenge the grand jury array. The lower court rejected this motion, and trial commenced before a jury in the Philadelphia Court of Common Pleas. On January 16, 1975, the jury found appellant guilty of robbery and not guilty of conspiracy. After the lower court denied appellant's post-verdict motions, [FN3] it sentenced appellant to a four-to-ten years' term of imprisonment. This appeal followed.

> FN1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, s 1, eff. June 6, 1973; 18 Pa.C.S. s 3701.

> FN2. The Crimes Code, supra;18 Pa.C.S. s 903.

> FN3. Appellant did not make oral post-verdict motions on the record at the conclusion of trial. See Pa.R.Crim.P. 1123(b); 19 P.S. Appendix. Instead, he filed written post-verdict motions within seven days after the jury returned its verdict of guilty. See Rule 1123(a). However, his written motions were simply boiler-plate challenges to the sufficiency of the evidence. At oral argument, appellant raised more specific contentions; the lower court responded to these contentions in its opinion. On January 27, 1975, our Supreme Court announced that boiler-plate written post-verdict motions would no longer suffice to preserve issues for appellate review. See

Commonwealth v. Blair, 460 Pa. 31, 33 n. 1, 331 A.2d 213, 214, n. 1 (1975). The Supreme Court required that post-verdict motions raise the specific contentions sought to be reviewed. However, in Blair, the Court did consider the appellant's motions raised at oral argument because some courts had engaged in a long-standing practice, upon which counsel relied, of accepting and ruling upon motions raised at oral argument. Because appellant in the case at bar filed his motions before the Supreme Court articulated the rule of Blair and because the lower court specifically addressed the contentions raised at oral argument, we conclude that appellant's claims are properly before us. See Commonwealth v. Bailey, 463 Pa. 354, 344 A.2d 869 (1975).

[1] Appellant first contends that the grand jury had no power to issue an indictment in his case and that proceedings could only be instituted by information. Prior to November 6, 1973, Article I, s 10 of the Pennsylvania Constitution prohibited the initiation of a criminal prosecution by information. On November 6, 1973, Pennsylvania voters approved a constitutional amendment which provided, in pertinent part: 'Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for *404 the initiation of criminal proceedings therein by information filed in the manner provided by law.'On December 17, 1973, the President Judge of the Court of Common Pleas of Philadelphia County petitioned the Supreme Court for permission to replace the system of grand jury indictments with a system of instituting proceedings by information; this change would be effective on January 1, 1974. The Supreme Court granted this petition. During the month of January, 1974, an indicting grand jury continued to function in Philadelphia [FN4] and on January 24, the grand jury indicted appellant. On February 15, 1974, the Supreme Court promulgated Rules of Criminal Procedure pertaining to the filing of informations. See

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Pa.R.Crim.P. 225 et seq.; 19 P.S. Appendix. On February 27, 1974, the President Judge petitioned the Supreme Court for permission to postpone the effective date of initiation of criminal proceedings by information; the Supreme Court granted this petition. On October 10, 1974, the Pennsylvania legislature passed legislation implementing a system of initiating prosecutions by information in counties which had received the Supreme Court's permission to institute such a **889 system.[FN5] The legislature specified the procedures to be followed in prosecutions initiated by information. On October 22, 1974, the President Judge once again petitioned the Supreme Court to permit the use of informations instead of indictment by grand jury; once again, the Supreme Court granted the petition, effective January 1, 1976. On December 23, 1974, the Supreme *405 Court issued the following final order which terminated the parade of petitions and post-ponements:

> FN4. Appellant concedes that the Philadelphia District Attorney had two legitimate reasons for continuing to employ the system of grand jury indictments during January, 1974. First, a challenge to the constitutionality of maintaining an information system in some counties while utilizing a grand jury indictment system in other counties was pending before the Supreme Court at that time. See Commonwealth v. Webster, 462 Pa. 125, 337 A.2d 914 (1975). (In Webster, the Supreme Court ultimately held that a person accused by information instead of by a grand jury was not denied the equal protection of the law.) Second, there were no rules of criminal procedure or statutes in existence at that time to serve as guidelines for the operation of an information system.

> FN5. Act of October 10, 1974, P.L. 713, No. 238, s 1; 17 P.S. s 271 et seq.

'AND NOW, to wit, this 23rd day of December, 1975, our Orders heretofore entered granting ap-

proval to abolish indicting grand juries are amended to provide:

'Approval granted to abolish indicting grand jury, effective January 1, 1976. Effective January 1, 1976, no grand jury shall be empaneled for the purpose of considering bills of indictment, and no grand jury shall be held over from a prior term as an indicting grand jury. In lieu thereof, proceedings against criminal defendants shall be by information.'

We reject appellant's contention that the Philadelphia County Grand Jury lacked power to indict him. We believe that the Supreme Court did not intend to make mandatory the initiation of criminal proceedings by information in Philadelphia County before appropriate rules or statutory provisions governing the information process had been promulgated.Article I, s 10 of the Pennsylvania Constitution provides that courts of common pleas may with the approval of the Supreme Court, 'provide for the initiation of criminal proceedings therein by information Filed in the manner provided by law.'(Emphasis supplied). As of January 24, 1974, the legislature had not passed implementing legislation and the Supreme Court had not issued governing rules of criminal procedure; we will not infer that the Supreme Court meant to require the use of an information when the legal framework of rules mandated by the Constitution had not yet been erected. Cf. In re Investigation of January 1974 Philadelphia County Grand Jury, 458 Pa. 586, 598 n. 5, 328 A.2d 485, 494 n. 5 (1974). It was not until the order of December 23, 1975, after the legislature had enacted an enabling statute and the Supreme Court had created applicable rules of criminal procedure, that the Supreme Court issued a final order which amended all previous orders and terminated the initiation of criminal prosecutions by grand jury indictment in Philadelphia County. Consequently, we *406 conclude that the January 1974 Philadelphia County grand jury had power to indict appellant.[FN6]

> FN6. Appellant also contends that he be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

COMMONWEALTH of Pennsylvania v. Alfred Earl WEBSTER,
Appellant

Supreme Court of Pennsylvania

462 Pa. 125; 337 A.2d 914; 1975 Pa. LEXIS 841

April 11, 1975, Argued
May 13, 1975, Decided

COUNSEL: [***1]

Charles C. Brown, Jr., Dist. Atty., Bellfonte, for appellant.

Robert L. Martin, Public Defender, Bellfonte, for appellee.

JUDGES:

Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ. Jones, C. J., did not participate in the consideration or decision of this case. Manderino, J., concurs in the result. Pomeroy, J., filed a dissenting opinion.

OPINION BY:

ROBERTS

OPINION:

[*126] [**915] OPINION OF THE COURT

Prior to 1973, the Pennsylvania Constitution provided, with minor exceptions, that "No person shall, for any indictable offense, be proceeded against criminally by information [*127] . . . ." Article I, section 10, P.S. On November 6, 1973, the voters of the Commonwealth approved an amendment to section 10. It now reads:

"Except as hereinafter provided no person shall, for any indictable offense, be proceeded against criminally by information . . . . Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law."

The Legislature and this Court have adopted legislation and rules implementing amended section 10. Act of October [***2] 10, 1974, P.L. --, No. 238, §§ 1-6 (to be codified as 17 P.S. §§ 271-276); Pa.R.Crim.P. 3, 225-32, 240, 19 P.S. Appendix. Section 5 of the Act provides that no grand jury shall be impaneled for the consideration of indictments in those judicial districts which have received the approval of this Court to substitute informations n1 for indictments n2 as the method for the initiation of criminal proceedings. n3 In those districts, criminal [**916] proceedings [*128] are henceforth to be initiated by an information prepared by the attorney for the Commonwealth and filed with the court of common pleas. Pa.R.Crim.P. 225.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 See Pa.R.Crim.P. 3(h):

"Information is a formal written accusation of an offense made by the attorney for the Commonwealth, upon which a defendant may be tried, which replaces the indictment in counties in which the indicting grand jury has been abolished."

n2 See Pa.R.Crim.P. 3(g):

"Indictment is a bill of indictment which has been approved by a grand jury and properly returned to court, or which has been endorsed with a waiver as provided in Rule 215."
See also id. 3(c):

"Bill of Indictment is a formal written accusation of an offense made by the attorney for the Commonwealth which has not been acted upon by a grand jury."
[***3]

n3 "No grand jury shall be impaneled in any judicial district where this act is applicable for the purpose of considering bills of indictment: Provided, however, That nothing in this act shall prohibit the impaneling as heretofore of, or affect the

EXHIBIT B-9



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### SUSSEX COUNTY OFFICE
### 12 EAST PINE STREET
### GEORGETOWN, DELAWARE 19947

CERTIFIED
AS A TRUE COPY.
ATTEST
PROTHONOTARY
Per
CLERK

DATE  10/3/92

THIS WILL CONFIRM THAT I WAIVE MY PRELIMINARY HEARING IN THE
COURT OF COMMON PLEAS FOR A COPY OF THE POLICE REPORT AND FURTHER
I AGREE THAT THE STATE CAN PROCEED IN THE SUPERIOR COURT BY THE
FILING OF INFORMATIONS IN LIEU OF PRESENTING IT TO THE GRAND JURY
FOR INDICTMENT.

Richard Thomas Miller
DEFENDANT



EXHIBIT
court
# A
92-12-0044



(EXHIBIT B-10)
EB